IN THE U.S. DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

GARY HAMILTON,

    Plaintiff.

v.

                          CASE NO.: 05-1549
                          (RBW)

JOHN SNOW, Secretary
U.S. Department of the
Treasury

    Defendant.

Washington, D.C.
Friday, August 4, 2006

DEPOSITION OF:

PAUL CARROLL

called for examination by counsel for the plaintiff, pursuant to notice of deposition, in the offices of Neal Gross & Co., 1323 Rhode Island Avenue, N.W., when were present on behalf of the respective parties:

Case 1:05-cv-01549-RBW   Document 28-9   Filed 12/22/2006   Page 2 of 11

17

| | |
|---|---|
| 1 | the IRS, did you receive any type of on-the-job |
| 2 | training? |
| 3 | A    Yes. |
| 4 | Q    Tell me about it? |
| 5 | A    Well, yes, on-the-job training.  I also |
| 6 | received several courses in contract administration. |
| 7 | There were formal GSA courses, IRS Acquisition |
| 8 | Training Institute, I believe it is.  I received |
| 9 | training for negotiation, administration of |
| 10 | architectural engineering contracts, COTR training |
| 11 | course, which is a specific course requirement.  And |
| 12 | a number of others that I can't recall over the |
| 13 | years. |
| 14 | Q    Did you receive any training in |
| 15 | security? |
| 16 | A    In security? |
| 17 | Q    Yes. |
| 18 | A    No formal training in security. |
| 19 | Q    Any formal training in safety? |
| 20 | A    No formal training in safety. |
| 21 | Q    Now when was the first time you met Mr. |
| 22 | Stuart Burns? |

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          www.nealrgross.com

1   management official's position.

2       Q   Okay.  Now at the time that you

3   conducted this ranking in 2003, you testified

4   earlier that you had no formal training in safety or

5   security.  Is that correct?

6       A   Yes.

7       Q   So it would be fair to say that as to

8   that safety health manager position, you were not a

9   subject matter expert.  Is that a fair statement?

10          MR. TRUONG:  Objection; foundation.

11          THE WITNESS:  I was not a subject matter

12  expert.

13          BY MS. GBENJO:

14      Q   In that field.

15      A   In that field.

16      Q   Now at the time that you were asked to

17  rank those candidates, how many candidates were you

18  given packages for?

19      A   In that --

20      Q   For that position, for the Safety Health

21  Manager position.

22      A   I believe 10 to 12, approximately.

1   answered.

2           THE WITNESS:  Ad hoc, as requested.

3           BY MS. GBENJO:

4   Q   Now you have testified that you would give a particular candidate 100 percent based on what they type if it addresses the particular KSA.

7   A   Yes.

8   Q   Is that correct?

9   A   Yes.

10  Q   Okay.  Now if -- is it your testimony, therefore, that so long as a particular applicant addresses the particular KSA, they can get a score of 100 percent?  In other words, the five?

14  A   If the candidate has addressed all or substantially all of the issues listed in that criteria that says this is what it takes to get a five, then I will give them that five.

18  Q   Okay.  What is the cut-off?  In other words, forget about what personnel gave to you in this case, what do you consider sufficient information in when you give them the score?

22  A   It's subjective.

1   Q   Okay. So everything -- the scores that
2   you give them on those KSAs is subjective.
3   A   Yes.
4   Q   Okay. Now in terms of the highly
5   qualified or best qualified cut-off, you said that's
6   done by personnel. It has nothing to do with you.
7   Right?
8   A   That's correct.
9   Q   Okay. So when you receive all of the
10  packages, you return the entire package to personnel
11  as they gave it to you, after ranking all of that.
12  A   That's correct.
13  Q   Okay. And then the personnel or
14  whomever is in charge, takes care of the rest of the
15  matters from that point on.
16  A   That's correct.
17  Q   You play no further role beyond ranking.
18  A   I do not.
19  Q   Okay. Were you given any guidance in
20  terms of how to score those people?
21  A   Generally, or for this specific case?
22  Q   For this specific case we're here for

1    Q    In other words, guidance to say make
2 sure it's done fairly.
3    A    That's right.
4    Q    Prior to ranking these applicants, did
5 you know any one of those applicants that you ranked
6 in this particular case?
7    A    I knew, I believe, two.
8    Q    Which ones?
9    A    I had teleconferences with Camille
10 Carraway on some issues with buildings, and Annette
11 Burrell had been working in the same division and
12 the same office on a detail prior to that.
13    Q    Apart from those two, did you know any
14 other candidates in this particular case?
15    A    Not that I recall.
16    Q    Now you said Annette Burrell had been
17 working on a detail.  Do you recall for which
18 position that she was detailed to?
19    A    I don't recall the title of the
20 position.  It was a Safety and Health position,
21 under that branch.
22    Q    Okay.  Now you indicated -- just strike

1  that. I'll come back to it later. I need to move
2  in order.
3          MR. TRUONG: Anne, we've been going for
4  about an hour. Is this a good time for me to take a
5  break? Is that okay with you?
6          MS. GBENJO: Is it what?
7          MR. TRUONG: Is it a time -- we've been
8  going for about an hour. Can we take a short break?
9          MS. GBENJO: Let me just -- within five
10 minutes we will do that.
11         MR. TRUONG: Okay.
12         BY MS. GBENJO:
13    Q    Is it fair to say, Mr. Carroll, that a
14 candidate can score a five so long as that
15 particular candidate meets the minimum eligibility
16 requirements on the KSA?
17    A    No. They would have to meet the
18 requirements that it would take to get a five on the
19 KSA, not the minimum.
20    Q    Okay. And these requirements, based on
21 what you said earlier as you rank them, is
22 subjective.

1   A    It is subjective to the ranking.

2   Q    Now when -- did you have any
3   communications with either Camille Carraway or
4   Annette Burrell in-between the time that you
5   received the package and the time you handed the
6   package back to personnel?

7   A    No.

8   Q    Did you have any communication with any
9   one of those candidates on the list in-between the
10  time that you received the package from personnel
11  and the time you gave it back to personnel after
12  ranking it?

13  A    No.

14  Q    Were you instructed to refrain from
15  communicating with those individuals?

16  A    I don't recall that I was, but I don't
17  talk to the applicants.

18  Q    Do you recall the scores that you gave
19  Camille Carraway and Annette Burrell on the ranking
20  sheet?

21  A    On the -- I've reviewed the documents
22  recently, and I gave them each 25.

1   Q   Okay. What race is Camille Carraway?

2   A   I don't know.

3   Q   What is Annette Burrell's race?

4   A   She appears to be white.

5   Q   How about Gary Hamilton?

6   A   He is African-American, black.

7   Q   And Michael Perkins?

8   A   I don't know.

9   Q   Now when was the first time ever that
10  you ranked candidates?

11  A   I don't recall.

12  Q   Has it been more than five years?

13  A   Yes. It was at NIH.

14  Q   Oh, prior to IRS.

15  A   Yes.

16  Q   Okay. When was the first time that you
17  ranked candidates at IRS?

18  A   I don't recall.

19  Q   Did you receive any training on ranking
20  the candidates?

21  A   No.

22  Q   Now the first time that you ranked

1      MR. TRUONG:  I have no more questions.

2      MS. GBENJO:  Okay.

3                  REDIRECT EXAMINATION

4      BY MS. GBENJO:

5      Q    It appears that with respect to Camille

6 Carraway and Annette Burrell, you ranked these

7 candidates on the same date.  Is that a fact?

8      A    Yes, it is.

9      Q    And with respect to Michael Perkins and

10 Gary Hamilton, you ranked one before, and the other

11 after the two female candidates.  Is that a fact?

12     A    That's correct.

13     Q    Were you given all the application

14 packages at the same time, Mr. Carroll?

15     A    Yes, I was.

16     Q    You stated that you evaluate the KSAs

17 based on the interpretation you give the data

18 submitted by the applicants.  Is that a fact?

19     A    Yes, it is.

20     Q    You also said that you do not compare

21 these individuals against one another, but against

22 the KSA given to you by personnel.  Is that a fact?

1    A    That's a fact.

2    Q    Is it also a fact that personnel did not
3    tell you to select which one of these candidates is
4    the best candidate for the position?

5    A    That's correct.

6        MS. GBENJO:  I have no further
7    questions.

8        MR. TRUONG:  The witness will reserve
9    its right to read and review.  We are closing this
10   deposition.

11       (Whereupon, the proceedings went off the
12   record at 1:34 p.m.)

13           (Signature not waived.)