**In The United States District
Court For the District of Columbia**

|  |  |  |
|---|---|---|
| Gary Hamilton, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 05-CV-01549 (RBW) |
| v. | ) | |
| | ) | |
| John Snow, | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

**I.    Introduction.**

In this Title VII case, Plaintiff Gary Hamilton alleges that Defendant discriminated against him based on his race (African-American) and gender (male) when Defendant did not select him for a Safety and Health Manager position in August 2003. He also alleges that Defendant retaliated against him for his prior protected activities.

At present, Plaintiff's Motion to Compel (Dkt. No. 28) seeks production of a Personnel Specialist for deposition claiming that this individual can shed light on the ranking process. Plaintiff claims that this deposition is "crucial to this case." Mot. Compel. at 3. Plaintiff, however, fails to show how this deposition is relevant to the underlying claims of this case at all. Specifically, the Ranking Official gave Plaintiff the highest score possible in the ranking process and Plaintiff was one of the four "best qualified" candidates interviewed for the position. Therefore, the Personnel Specialist's deposition will not show how Defendant allegedly discriminated against him. Furthermore, Plaintiff's Complaint only alleges that his non-selection was discriminatory, not his receiving the highest score as part of the ranking process. For these

reasons, the Court should deny Plaintiff's Motion to Compel.

**II.     Background.**

Plaintiff Gary Hamilton's Complaint alleges that Defendant discriminated against him based on his race (African-American) and his gender (male) when Defendant did not select him for a management position ("Safety and Health Manager").  See Complaint, Count I, ¶23.  He also advances a retaliation claim.  Id.

To apply for the Safety and Health Manager position, each applicant was required to submit an application, a response to the Knowledge, Skill and Abilities (KSA) statement for the position, and a performance evaluation.  In all, fourteen individuals applied for this position.  See Defendant's Response to Request for Admission No. 6 (Gov. Exh. A).  The top four candidates, including Plaintiff, were interviewed for the job.  Id.

There is no dispute that Plaintiff submitted all of the required documents as part of the application for this position.  Thereafter, the Ranking Official (Mr. Paul Carroll) ranked each applicant's "application package."  The Ranking Official gave Plaintiff a score of 25, the highest possible score in this ranking process.  He also gave two other candidates (including the selectee) a score of 25, and a fourth candidate a score of 19.  These top four scores, including Plaintiff, comprised the "best qualified" candidates and were interviewed by a diverse panel.

The interview panel was composed of Mr. Mike Huston (Caucasian male), Ms. Tatika Mitchell (African-American female), and Mr. Stuart Burns (Caucasian male).  See Defendant's Responses to Interrogatory No. 6 (Plaintiff's Exh. 3).  Mr. Burns also acted as the Selecting Official.  Id.  All four candidates were individually interviewed by the panel and on the same day.  After the interview, the panel recommended Ms. Annette Burrell (Caucasian female) for

the position.  Thereafter, Mr. Burns selected Ms. Burrell.  <u>Id</u>. (Plaintiff's Exh. 3).  Not satisfied with the non-selection, Plaintiff sued Defendant under Title VII alleging race and gender discrimination.

As part of discovery in this case, Defendant has provided Plaintiff with voluminous documentation in response to his documents requests, lengthy and detailed responses to interrogatories, and responses to his two sets of requests for admissions.  Furthermore, Plaintiff deposed a number of current and former agency employees.  Specifically, Plaintiff deposed Mr. Paul Carroll (the Ranking Official), Mr. Huston (interview panelist), Ms. Tatika Mitchell (interview panelist), and Mr. Stuart Burns (interview panelist and selecting official).  Plaintiff's deposition discovery does not end there.  He also deposed individuals who did not have any involvement in the application, ranking, or selection process.  <u>See</u> Defendant's Response to Interrogatory No. 6 (Plaintiff's Exh. 3) (describing the selection process and the individuals involved in that process).  Specifically, Plaintiff deposed Ms. Annette Burrell (the selectee) and two other "best qualified" candidates who were not selected.  These depositions did not shed any light on Plaintiff's underlying claims of discrimination but imposed unreasonable expenses on the Defendant.  For instance, one of the non-selectees resides in Utah and Defendant was required to fly to Utah to defend his deposition, which lasted no more than one hour.  The non-selectee has no relevant information on the application, ranking, or selection process.

Despite having been provided with exhaustive discovery pertaining to his non-selection, Plaintiff  now claims that he must also depose the Personnel Specialist who processed the paperwork pertaining to this management position.  Plaintiff's desire to depose this Personnel Specialist is nothing short of a "fishing expedition" in light of the voluminous discovery in this

case.

## III.    Discussion

### A.    Evidence in The Record Does Not Support Deposition Discovery of the Personnel Specialist.

Plaintiff 's Motion to Compel essentially advances three bases for wanting to depose the Personnel Specialist, whose deposition Plaintiff claims is "crucial" to prove of his discrimination case. In short, Plaintiff maintains that the Personnel Specialist's deposition will answer the following questions: (1) how she determined the cut-off scores that determined which applicants were listed on the "Best Qualified" list, from which the selection was made (Mot. Compel at 8); (2) whether and what guidance on the Internal Revenue Manual ("IRM") did she give to the Ranking Official (Mot. Compel at 9); and (3) whether she worked with the Selecting Official in examining the evaluation criteria and determining the appropriate method to be used to secure needed information in accordance with IRM § 6.335.1.12.10. Id. As shown below, Plaintiff's arguments are meritless.

As a preliminary matter, Plaintiff has not alleged that Defendant discriminated against him during the ranking process. In fact, the undisputed facts show that Plaintiff and two other candidates received the highest possible ranking scores of 25 from the Ranking Official. Plaintiff was one of four candidates on the list of Best Qualified candidates from which the Selecting Official made his selection. Under these undisputed facts, Plaintiff cannot seriously contend that he suffered any discrimination with respect to the application and ranking process which preceded the panel interview and actual selection. Therefore, given these undisputed facts, Plaintiff's claimed need to know how the Specialist determined the cut-off score for the best qualified list, what "guidance" the Specialist gave the Ranking Official and how she gave it

seems not only not "crucial," but also irrelevant.  In short, two of the three bases of Plaintiff's alleged need to depose the Specialist carry no water.  The Court, therefore, should deny the Motion to Compel on these bases alone.  See <u>Prokosch v. Catalina Lighting, Inc.</u>, 193 F.R.D. 633, 634 (D. Minn. 2000)(citations omitted) (noting that courts should not allow Plaintiff to "roam in the shadow zones of relevancy and to explore a matter which does not presently appear germane on the theory that it might conceivably become so.").

     Plaintiff's third basis for the Personnel Specialist's deposition is similarly without merit.  Plaintiff argues that he needs to know whether the Specialist worked with the Selecting Official in examining the evaluation criteria and determining the appropriate method to be used to secure needed information in accordance with IRM §6.335.1.12.10.  <u>See</u> Mot. Compel at 9.

     Citing Section 6.335.1.12.10 out of context, Plaintiff argues that the Selecting Official violated the IRM when he chose to interview the candidates on the best qualified list.  <u>See</u> Mot. Compel at 5.  Specifically, Plaintiff asserts that, "In this case, the vacancy announcement did not reflect anything relating to the interview.  Likewise Defendant admits that the candidates were not informed that the interview was going to be used as a <u>selection tool</u>." Mot. Compel at 5 (emphasis added).

The IRM states, in relevant part:

> Evaluation methods are the sources of information <u>considered by a ranking official or panel… to determine highly qualified and best qualified candidates</u>.  The selecting official in conjunction with the Personnel Office must examine the evaluation criteria, determine the appropriate methods to be used to secure needed information and include them in the vacancy announcement.

IRM §6.335.1.12.10(1) (Plaintiff's Exh. 4) (emphasis added).  In a subsequent relevant section, the IRM also states:

> Interviews - <u>When an interview is being used as part of the promotion ranking process</u>, it must be indicated either as a required method or as an option in the vacancy announcement.

IRM § 6.335.1.12.10(3)(c) (Plaintiff's Exh. 4) (emphasis added).

The clear language of § 6.335.1.12.10 relates to the Ranking Stage, <u>not</u> the Selection Stage. Read in context, IRM clearly relates to the ranking process, not the selection process. Specifically, the IRM § 6.335.1.12.10 requires the Selecting Official to work with the Personnel Office to determine what criteria are appropriately considered to determine fitness for the position and what methods are appropriate to obtain information about the candidates which addresses those criteria. See IRM § 6.335.1.12.10(1) (Plaintiff's Exh. 4). Significantly, the Selecting Official's consultation with the Personnel Office to establish the criteria by which the applicant's suitability to the position will be measured relates to the standard by which the Ranking Official will rate the candidates. <u>Id</u>. Likewise the Selecting Official's involvement with determination of the "appropriate method" to obtain information about a candidate's qualifications concerns how best to secure that information at the application level for the use of the Ranking Official or Panel. <u>Id</u>.

Moreover, the provision relating to the use of interviews pertain to their use "as part of the promotion ranking process." <u>See</u> IRM §6.335.1.12.10(3)(c). This makes clear that if an interview is determined to be the "appropriate method" to furnish information to be used by the Ranking Official, that method must be disclosed on the vacancy announcement. <u>Id</u>.

Here, none of the 14 applicants, including the four best qualified candidates, was interviewed during the ranking process. The interview of the four best qualified candidates – conducted by a diverse panel – relates to the selection process. The interview was used by the

Selecting Official – after the candidates had all been ranked – to refine his assessment of the candidates (including Plaintiff). Therefore, the text of IRM § 6.335.1.12.10 itself negates Plaintiff's claim of impropriety. Mot. Compel at 5. In short, Plaintiff's citation to IRM § 6.335.1.12.10 as evidence that the vacancy announcement and the interview violated agency policy is incorrect.

As another attempt to justify the basis for deposing the Personnel Specialist, Plaintiff construes the consultation between the Selecting Official and the Personnel Office described in IRM § 6.335.1.12.10(1) as relating to the selection stage of the process. Plaintiff misunderstands this provision. The full text of § 6.335.1.12.10(1) makes clear that the consultation pertains to determining the criteria by which the Ranking Official will rate the candidates and identifying the "most appropriate" means of providing him with that information. See IRM § 6.335.1.12.10(1). The outcome of the ranking process is to assign the candidates a score for purposes of identifying the "best qualified" candidates. Since Plaintiff received the highest possible score and made the best qualified list, it would appear that the Personnel Specialist's testimony would not reveal evidence of discrimination in the ranking process and, therefore, the requested deposition discovery is irrelevant, unduly burdensome, and harassing. See Fed. R. Civ. P. 26(b)(2) (limiting discovery "if the burden and expense of the proposed discovery outweighs its likely benefit.").

Finally, Plaintiff's Motion attempts to bolster his alleged need for the "crucial" testimony of the Personnel Specialist by suggesting that the process by which the candidates were ranked was replete with violations of agency policy. Specifically, Plaintiff claims that (1) the Ranking Official was not trained in ranking; (2) the Ranking Official was not instructed to select the best

candidates for the position; (3) the Ranking Official and the Selection Official were "very close," ( they worked in the same department and ate lunch together often);(4) the Ranking Official was not a "subject matter expert"; and (5) the Ranking Official testified that his ranking was subjective.  See Mot. Compel at 6.  Even if Plaintiff's assertions are true – which Defendant disputes –  that the ranking process violated one or more agency policies, Plaintiff  was at best benefitted and at worst unaffected by those violations because he received the highest possible score in the ranking process.  Under these circumstances, Plaintiff has not set forth the bases for imposing additional discovery burdens upon Defendant by requiring it to produce the Personnel Specialist for deposition.  Therefore, the Court should deny Plaintiff's Motion to Compel.

**B.    Plaintiff Cites the Record Out of Context To Suggest Impropriety with the Interview Process.**

Plaintiff cites the Selecting Official's (Mr. Stuart Burns) deposition out of context to assert that Plaintiff's interview was improper.  Mot. Compel at 5.  Specifically, Plaintiff argues that "the Selecting Official testified that he had no reason for conducting the interview…" Id.  In support of this contention, Plaintiff offers the following excerpt from Mr. Stuart's deposition:

> Q.    … Did you have any reason for conducting the interview of the applicants?
>         (emphasis added)
>
> A.    No.[1]
>
> *   *   *
> Q.    Now other than the interview, did you have any other reason for rejecting
>         Mr. Hamilton (Plaintiff) for that position?

---

[1]  Burns's Deposition at 91:9-12 (Plaintiff's Exh. 5).

    A.    No.[2]

Mot. Compel at 5 (citing Burns's Deposition)

These deposition excerpts – which come from pages 91 and 122 of Mr. Burns' 200-page deposition – at first glance seem to corroborate Plaintiff's allegation that the interview was a sham proceeding designed solely to provide cover for Mr. Burns' discriminatory non-selection of Plaintiff.  However, Plaintiff's artful use of the ellipses hides the true testimony.  The entire series of questions posed to Mr. Burns by Plaintiff's counsel clearly referred to something Mr. Burns said earlier in his testimony:

> Q.    <u>All of what you just told a few minutes ago,</u>[3] did you have any reason for conducting the interview of the applicants?
>
> A.    No.

Burns's Deposition at 91:6.

What Mr. Burns "told" Plaintiff's counsel a few minutes earlier explained his reason for conducting interviews for this position:

> Q    Now, you said the applicants were ranked and then you conducted an interview and made a selection, right?
>
> A    Um-hum.
>
> Q    Why did you conduct an interview?
>
> A    Because in my experience, that is standard process.
>
> Q    Was it a standard process in this instance?

---

[2] Burns's Deposition at 122:16-19 (Plaintiff's Exh. 5).

[3] This underlined text was left out and replaced by Plaintiff's use of ellipses.  <u>See</u> Mot. Compel at 5 <u>compare with</u> Burns's Deposition at 91:9.

    A    Was it a standard in this instance?

    Q    You said in your experience, it's standard process.

    A    I have never hired someone without talking to them first, interviewing them first.

    Q    So your normal way of doing it is to interview before you select?

    A    Right.

    Q    Could you have selected without an interview?

    A    I don't know.

    Q    Did you consider selection before interview for this position in controversy?

    A    No.

    Q    Based on it being what you normally do, right?

    A    Right.

    Q    Okay. So you considered the interview an important aspect of the selection process. Is that true?

    A    Yes.

Burns's Deposition at 83:21- 85:6 (Gov. Exh. B).

        As demonstrated by the full record, Plaintiff's selective citation of the record to support his argument borders on purposeful mischaracterization or misdirection. There is no doubt that Plaintiff's goal is to persuade the Court that the Selecting Official's own testimony established that he had no reason to conduct the interview, other than to provide cover for discrimination. However, the selective use of the record is misleading when the full context shows the opposite (i.e., there was a reason the Selecting Official interviewed all of the candidates because it was an

important part of the selection process). See Burns's Deposition at 85:3-6. The Court, therefore, should not countenance this practice and should deny Plaintiff's Motion to Compel.

## IV.  Conclusion.

For the foregoing reasons, the Court should deny Plaintiff's Motion to Compel the deposition of the Personnel Specialist.

Dated: January 30, 2007.                    Respectfully Submitted,


   /s/   Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

**In The United States District
Court For the District of Columbia**

|  |  |  |
|---|---|---|
| Gary Hamilton, | ) | |
|  | ) | |
| Plaintiff, | ) | Case No.: 05-CV-01549 (RBW) |
| v. | ) | |
|  | ) | |
| John Snow, | ) | |
|  | ) | |
| Defendant | ) | |

**ORDER**

Upon consideration of Plaintiff's Motion to Compel, Defendant's Opposition thereto, and the entire record herein, it is this _____ day of _____, 2007,

ORDERED that Plaintiff's Motion to Compel (Dkt. No. 28) be and is hereby DENIED.

SO ORDERED.

_____
U.S. District Judge