## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Gary Hamilton**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 05-CV-01549 (RBW) |
| v. | ) | |
| | ) | |
| **Henry M. Paulson, Jr.,** | ) | |
| | ) | |
| Defendant | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rules 7(h) and 56.1, Defendant hereby moves for summary judgment.  In support of the said Motion, Defendant refers the Court to the attached Statement of Material Facts For Which There Is No Genuine Dispute, Memorandum of Law, accompanying exhibits, and Proposed Order.

Dated: August 14, 2007.

Respectfully Submitted,

   /s/  Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

   /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

**UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA**

_____
                                       )
**Gary Hamilton**,                     )
                                       )
              Plaintiff,               )      Case No.: 05-CV-01549 (RBW)
      v.                               )
                                       )
**Henry M. Paulson, Jr.**,             )
                                       )
              Defendant                )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**.

        In this Title VII action, Plaintiff Gary Hamilton (African-American male) claims that

Defendant discriminated against him based on his race and gender when Defendant did not

promote him to a GS-14 position of Safety Specialist.  Plaintiff also claims retaliation when

Defendant did not select him for a 120-day detail position of Safety and Health Manager, also a

GS-14 level.

        As shown below, although Plaintiff can establish a prima facie case of discrimination,

Defendant has legitimate, non-discriminatory reasons for not selecting Plaintiff for the Safety

Specialist position.  Specifically, Plaintiff did not perform well before an interview panel of

diverse race and gender.  All three panelists opined that Plaintiff's responses to the interview

questions were difficult to follow and lacked clarity.  As a result, Plaintiff did not get the job.

        As for his retaliation claim, although Plaintiff knew of the alleged retaliatory conduct

(i.e., Plaintiff's non-selection for the 120-day detail) in January 2004, Plaintiff did not raise a

retaliation claim until January 2005 – approximately 11 months out of time.  Furthermore, Defendant selected Ms. Camille Carraway for the 120-day detail based on a recommendation from Ms. Barbara Cohen and a discussion with another employee, Mr. Ed Crandall.  There was no application process for this detail and no on else was considered for the position.

For the above reasons and those elaborated further below, the Court should grant summary judgment in Defendant's favor and dismiss this case with prejudice.

## II.    Background.

Fourteen candidates, including Plaintiff Gary Hamilton (an African-American male), applied for the position of Safety Specialist (Safety/Occp. Health Manager), GS-0018-14 (vacancy Announcement SSN-OFM03706).  See Vacancy Announcement (Gov. Exh.1); Ranking Chart  (Gov. Exh.2).  The position was within the Real Estate and Facilities Management Division, Safety and Security Branch, of the Internal Revenue Service.  Compl. at ¶ 13.  All candidates were required to submit a written response to the Knowledge, Skills and Abilities ("KSA") questionnaires, an application, and a current job appraisal.  See Vacancy Announcement.

After the personnel office received all of the application packages, the personnel office forwarded them to Mr. Paul Carroll, the ranking official.  Mr. Carroll ranked all of the application packages based on the candidates' responses to the KSAs (Deposition of Paul Carroll ("Carroll Depo.") at p.33:15-34:5 (Gov. Exh.3)), and not against each other.  Carroll Depo. at p. 87:11-17; see also KSA (Gov. Exh.4).

Mr. Carroll gave Plaintiff, Ms. Annette Burrell (selectee), and another female candidate 25 points for their respective applications, the highest possible score.  See ; Declaration of Paul

Carroll at p. 3 (Gov. Exh. 29); Ranking Chart (Gov. Exh. 2). Another white male received a

score of 19. Id. These individuals were the four highest ranking candidates and thus comprised

the "best qualified" list. Id.; see also Promotion Certificate (Gov. Exh.5). The four best

qualified candidates were then interviewed for the vacancy. See Interview Questions (Gov.

Exh.6).

The diverse interview panel included Ms. Tatika Mitchell (African-American female),

Mr. Stuart Burns (Caucasian male), and Mr. Mike Huston (Caucasian male).[1] The panel

interviewed each of the four candidates separately. Deposition of Tatika Mitchell (" Mitchell

Depo.") at p. 59:20-21 (Gov. Exh. 10); Deposition of Mike Huston ("Huston Depo.") at p. 43:22-

44:14 (Gov. Ex.11). The candidates were asked the same questions. See Interview Questions;

Burns Decl. at p. 3; Huston Decl. at p. 2. Each interview panelist took turns asking questions.

Mitchell Depo. at p. 101:21-102:14. The panelists were all present at each of the four

interviews. Mitchell Depo. at p. 86:5-14.

At the end of the interviews, the panelists conferred and discussed each of the interviews.

Deposition of Stuart Burns (" Burns Depo.") at p. 122:7-22, 145:1-15 (Gov Exh. 12); Mitchell

Depo. at p. 65:6-12. Each of the panelists participated equally in the discussion about the

candidates' interviews (Burns Depo. at p. 138:21-139:12; Mitchell Depo. at p. 73:8-11) and had

equal opportunities to express their respective opinions about the four candidates. Mitchell

Depo. at p. 123:17-124:10. Based on the candidates' responses to the interview questions, the

---

[1]    See Declaration of Tatika Mitchell ("Mitchell Decl.") at p. 1 (Gov. Exh.7);
Declaration of Stuart Burns ("Burns Decl.") at p. 1 (Gov. Exh.8); and Declaration of Mike
Huston ("Huston Decl.") at p. 1 (Gov. Exh.9).

panel recommended Annette Burrell and another white female candidate for the position.

Mitchell Depo. at p. 85:1-12; Huston Depo. at p. 68:12-18.  Mr. Burns (selecting official) then

selected Ms. Burrell for the position.  <u>See</u> Promotion Certificate (Gov. Exh.5); Burns Depo. at p.

96:11-16.

     In January 2004, Mr. Burns selected Ms. Camille Carraway for a 120-day detail to the

temporary GS-14  position of Safety and Health Manager.  Declaration of Stuart Burns in

October 2004 ("Burns Second Decl.") at p. 1-2 (Gov. Exh.13).  Mr. Burned needed someone to

develop a training/mentoring plan for Safety Officers.  Burns Second Decl. at p. 1-2.  Based on

Ms. Barbara Cohen's suggestion and on his conversation with Mr. Edward Crandall, Mr. Burns

selected Ms. Carraway for the position.  <u>Id</u>. at 3; Burns Depo. at p. 137:18-138:10.  Mr. Burns

did not consider anyone else (Burns Decl. at p. 137:18-138:10) and there was not application

process for this temporary detail.  Burns Second Decl. at p. 3.  At all times relevant here,

Plaintiff was a GS-12 Industrial Hygienist.  Compl. at ¶ 11.  He is no longer with the agency.

### III.     Summary Judgment Standard.

     Summary judgment is appropriate when the record shows that no genuine issue exists as

to any material fact and the moving party is entitled to judgment as a matter of law.  <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322

(1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986); <u>Tao v. Freeh</u>, 27

F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists,

the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most

favorable to the non-moving party.  <u>Matsushita</u>, 475 U.S. at 587.  The mere existence of a factual

dispute, however, will not defeat summary judgment.  The non-moving party must show that the

dispute is genuine and material to the case.  That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party.  Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" Celotex Corp., 477 U.S. at 323 (citations omitted).

Mere conclusory allegations are not enough to survive a motion for summary judgment. Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997).  Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment.  See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").  As the Supreme Court has instructed:  "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## IV.    Burden-Shifting Framework

Where, as here, a plaintiff offers no direct evidence of discrimination, employment discrimination claims are governed by the familiar framework of McDonnell Douglas Corp. v.

5

Green, 411 U.S. 792, 803-805 (1973). See also Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000). Under this scheme, Plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the Plaintiff is able to establish a prima facie case, then the burden of articulation is shifted to the employer to proffer legitimate, non-discriminatory reasons for the alleged discriminatory conduct. See Brown v. Small, 437 F. Supp.2d 125, 131 (D.D.C. 2006) (Walton, J.) (citing Burdine, 450 U.S. at 253). "The employer is not required to support that reason with objective evidence sufficient to satisfy the 'preponderance of the evidence' standard." Id. at 131 (internal citation omitted). Of course, at all times, the plaintiff retains the ultimate burden of persuasion to demonstrate that he was in fact the victim of intentional discrimination. Burdine, 450 U.S. at 252-53. In this context, in Reeves v. Sanderson Plumbing Products, Inc., Justice O'Connor recognized occasions where summary judgment would be appropriate:

Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

530 U.S. 133, 148 (2000). This case is one of those instances.

## V.     Argument

### A.     Plaintiff's Race and Gender Discrimination Claims (Count I)

#### 1.     Prima Facie Case of Discrimination.

Defendant does not contest that Plaintiff can establish a prima facie case of race and gender discrimination. Namely, as an African-American male, Plaintiff (1) belongs to a protected class; (2) applied and was qualified for the GS-14 Safety Specialist position but was not selected for the position; and (3) the non-selection gave rise to an inference of discrimination. See Jackson v. Gonzales, – F.3d –, 2007 WL 2275215, * 2 (D.C. Cir. Aug. 10. 2007).

#### 2.     Defendant Has Legitimate, Non-Discriminatory Reasons For Not Selecting Plaintiff for the Safety Special Position.

Although Plaintiff can establish his prima facie case of race and gender discrimination, Defendant has legitimate, non-discriminatory reasons for Plaintiff's non-selection for Safety Specialist position. Namely, Plaintiff did not get the job because he did not perform well in his interview before an interview panel of race and gender diversity, as compared to the selectee's performance.

This case is similar to Brown v. Small, 437 F. Supp.2d 125 (D.D.C.) (Walton, J.). In Brown, plaintiff (an African-American female) applied and was interviewed by a diverse interview panel for one of the two Store Merchandiser positions. Id. at 128. Due to her substandard interview the agency did not offer her one of the two positions. Id. The plaintiff then sued claiming that her non-selection was because of her race. Id. at 131.

This Court rejected plaintiff's claims and granted summary judgment in the agency's favor. In doing so, the Court found that plaintiff and other candidates were interviewed by a

diverse panel, which included one Caucasian male, one Caucasian female, one African-American male, and one Asian-male. Id. at 135 n.10. The Court also found that the "same questions were administered and the same four panelists were present at every interview." Id. at 135. This diverse panel found that plaintiff's responses to the interview questions were not adequate. Id. at 132-35. As a result, the panel did not select plaintiff for the vacancies. In granting summary judgment, the Court held that "the diverse composition of the panel bolsters the conclusion that they were seeking 'the candidate who was most qualified for the position and that race and gender were not factors in their decision-making process.'" Brown, 437 F. Supp.2d at 135 n.10 (Walton, J.) (quoting Reid v. Mich Dep't of Corr., 101 Fed. Appx. 116, 120 (6th Cir. 2004)).

Similar to the plaintiff in Brown, the Plaintiff in this case did not perform well during his interview and thus did not get the job. Specifically, like the panel in Brown, the interview panel here was also diverse and included two Caucasian males and one African-American female. See Burns Decl. at p.1, Huston Decl. at p.1, Mitchell Decl. at p.1. Furthermore, this diverse panel administered the same questions to Plaintiff and the other three candidates. See Interview Questions (Gov. Exh. 6); Burns Decl. at p. 3; Huston Decl. at p. 2; Mitchell Depo. at p. 61:1-2; Huston Depo. at p. 43:22-44:4. All three panelists were present for each of the four interviews. See Mitchell Depo. at p. 86:5-14. The panel conferred at the conclusion of all of the interviews. Burns Depo. at p. 122:7-22; Mitchell Depo. at p. 65:6-12. The panelists made their recommendation based on the candidates' responses to the interview questions. Mitchell Depo. at p. 56:7-11

The panelists uniformly thought that Plaintiff's and another Caucasian male's interviews

did not go well.  See Burns Depo. at p. 145:16 -146:12; Mitchell Depo. at p. 81:2-5, 83:16-17,

and 84:6-18.  Specifically, Mr. Burns attested that,

> During the interviews, all candidates were asked the same questions and offered
> the opportunity to ask questions of the panel.  In responding to the interview
> questions, the [Plaintiff] failed to provide clear answers to the questions asked.
> On several occasions, panel members tried to re-phrase the questions to get a
> response that more clearly addressed the issue.  His responses were consistently
> difficult to follow, provided extraneous and irrelevant information, and in some
> cases did not respond the question at all.  Following the interview with the
> [Plaintiff], the interview panel members all remarked that his answers were
> confusing and that, although technically qualified, he may not assist the Program
> as well as the other candidates in terms of interfacing with the Business Units and
> promoting the Program while it was in the developmental phase.

Burns Decl. at p. 2; Burns Depo. at p. 115:5-116:4.  The other two panelists shared a similar

assessment of Plaintiff's interview performance.  Ms. Tatika Mitchell (an African-American

female) attested,

> The [Plaintiff's] paperwork highlighted his knowledge's [sic], skills and abilities
> in the safety program.  I recall the [Plaintiff] was a safety officer and had prior
> leadership experience – on paper the Plaintiff strong skill set and competitive
> paperwork.  Unfortunately, the [Plaintiff's] interview did not go well[.] An
> interview is an opportunity to demonstrate your presentation, sales and verbal
> communication skills to a prospective employer.  The [Plaintiff] did not have a
> good interview.  Some of his answers were unclear he was difficult to follow and
> only elaborated on issues when asked a follow up question. . . . I recall that the
> [Plaintiff's] interview was not nearly as effective as the two others that we held in
> person that day.[2]

Mitchell Decl. at p. 2.  Mr. Mike Huston also remembered that Plaintiff's interview was not as

good as that of the selectee and the other female candidate.  Huston Depo. at p. 68:12-18.

As a result of the interview, the diverse panel recommended Ms. Burrell and another

---

[2]      The other White male candidate's interview was conducted by telephone
conference.

female candidate for the position.  Mitchell Depo. at p. 85:6-12.[3]  Mr. Burns, the selecting

official, then selected Ms.Annette Burrell to fill the vacancy.  Burns Depo. at p. 64:14-19; 96:11-

16; see also Promotion Certificate (Gov. Exh.5).  In short, Plaintiff was not selected because he

did not perform well in his interview.  See Whitener v. England, No. 04-0273, 2006 WL

3755220, * 6 (D.D.C. Dec. 19, 2006) (holding that "[w]hen an agency says that it chose between

a selectee and a non-selectee based solely upon their answers during the interview, such an

assertion, being both reasonable and non-discriminatory is enough to counter an allegation of

employment discrimination.") (internal quotations and citations omitted).  Furthermore, similar

to the Court's ruling in Brown, the diverse panel in this case was "seeking 'the candidate who

was most qualified for the position and that race and gender were not factors in their decision-

---

[3]        Explaining his decision to select Ms. Burrell, Mr. Burns attested,

> The selectee as chosen by the panel for the balance of experience, program
> knowledge, clarity of thoughts and response to questions, and presentation
> of self.  While the selectee was not as qualified as the [Plaintiff] in the
> technical aspects of industrial hygiene and safety, she responded to clarity
> of thought and insight into questions about effective implementation of a
> Safety Program at a National (i.e., Service wide) level.  She also presented
> herself well as a potential "spokesperson" for the Program.  She detailed
> here understanding of Business Unit operations as it relates to the Safety
> Program and experience at effectively interfacing with the Business units.

Burns Decl. at p. 3; see also Burns Depo. at p. 105:4–12; 110:2-7.  Ms. Mitchell
shared a similar view:

> The two [i.e., Ms. Burrell and the other female candidate] who were
> recommended had stronger interviews – they both had program experience
> with safety, in the agency and in other organizations, they both had
>  stronger presentation and verbal communications skills.

Mitchell Decl. at p. 2.  Ms. Mitchell further testified that based on the interview
she believed that Ms. Burrell (selectee) "could do this job."  Mitchell Depo. at p.
83:10-14.

10

making process.'"  Brown, 437 F. Supp.2d at 135 n.10 (Walton, J.)

In fact, other courts confronted with similar circumstances, in which diverse panels interviewed and chose the most qualified candidates for the vacant positions, uniformly found no discrimination.  See Ester v. Principi, No. 99-2681, 2004 WL 83831 (N.D. Ill. Apr. 16, 2004) (holding that given the diverse interview panel involved in the selection, plaintiff failed to offer evidence showing discrimination); Green v. Miami-Dade County, No. 02-22996, 2003 WL 22331877 (S.D. Fla.  Sept. 9, 2003) (in granting summary judgment, the district court found that defendant proffered non-discriminatory reasons for plaintiff's non-selection where an ethnically diverse interview panel rated the two selectees higher than plaintiff); Solorzano v. Shell Chemical Co., No. 99-2831, 2000 WL 1252555 (E.D. La. Aug. 31, 2000) (in granting summary judgment, the court found no discrimination where defendant's evidence established that he interviews were conducted by a diverse panel and based upon well-defined criteria); Jackson v. School Brd. of the City of Richmond, No. 99-642, 2000 WL 34292578 (E.D. Va. March 15, 2000) (in granting summary judgment, the court found no evidence of discrimination where an interview panel of diverse race and gender did not recommend plaintiff for the position). Under the weight of authority on the issue, the Court should grant summary judgment in Defendant's favor on Plaintiff's race and gender discrimination claims (Count I).[4]

---

[4]    Plaintiff's gender discrimination claim particularly lacks merit because the majority of the decision-makers are in Plaintiff's protected class (male).  See Jackson, 2000 WL 34292578, at * 7 (holding that "[p]roof that the decision-maker is a member of the same protected class as [plaintiff] 'weakens any possible inference of discrimination.'").  Here, like Plaintiff, two of the panelists (Messrs. Burns and Huston) are males and, therefore, any inference of gender discrimination motivated Ms. Burrell's selection over Plaintiff is "weaken[ed]."

11

B.      **Plaintiff's Retaliation Claim (Count II)**

1.      **Plaintiff's Retaliation Claim Is Untimely.**

Plaintiff's retaliation claim is at least 11 months out of time.  Plaintiff's Complaint

alleges that "on January 20, 2004, Plaintiff was denied a 120 day temporary promotion or non-

competitive detail to the position of Safety and Health Management . . .when Stuart Burns

selected Camille Caraway (white female) over Plaintiff."  Compl. at ¶ 18.[5]  Plaintiff claims this

non-selection was in retaliation for his EEO complaint, filed on October 21, 2003.  Compl. at ¶

27.[6]  Plaintiff, however, failed to file his retaliation claim within the 45 days of the alleged

retaliatory conduct.

Under rulemaking authority delegated by Title VII, *see* 42 U.S.C. § 2000e-16(b), the

Equal Employment Opportunity Commission ("EEOC") has established "detailed procedures"

and regulatory time limits that govern employees' pursuit of those administrative remedies.

Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal

Sector Equal Employment Opportunity).  The EEOC's regulations require that "aggrieved"

employees consult an agency EEO Counselor within forty-five (45) days of the "matter alleged

---

[5]      It is undisputed that Plaintiff did not even apply for the 120-day detail and did not
even tell Mr. Burns  of his interest in such a detail.  See Burns Second Decl. at p. 3.  In short, Mr.
Burns had no knowledge of Plaintiff's interest in this particular detail, or any other detail
position.

[6]      Plaintiff's Complaint does not claim that Mr. Burns discriminated against Plaintiff
for not selecting him for the 120-day detail.  Even assuming that the Complaint advances such an
allegation, Plaintiff's claim is legally deficient for failure to establish a prima facie of
discrimination.  As an initial matter, to establish his prima facie case of discrimination, Plaintiff
must show that he applied for the 120-day detail but was not selected for the position.  See
Jackson v. Gonzales, – F.3d –, 2007 WL 2275215, * 2 (D.C. Cir. Aug. 10. 2007).  Here, there is
no evidence that Plaintiff even applied for the 120-day detail.

to be discriminatory or, in the case of personnel action, within forty-five (45) days of the

effective date of the action." 29 C.F.R. § 1614.105(a)(1); <u>see also</u> <u>Park</u>, 71 F.3d at 907; <u>More</u>,

480 F. Supp. 2d at 269-70. This forty-five day time limit is not jurisdictional, but operates as a

statute of limitations defense. <u>Zipes v. Trans World Airlines, Inc</u>., 455 U.S. 385, 393(1982);

<u>Armstrong v. Reno</u>, 172 F Supp. 2d 11, 20 (D.D.C. 2001). If an employee fails to contact an

EEO counselor within that time period, her claims will be time-barred. <u>Bowden</u>, 106 F.3d at

437; <u>Park</u>, 71 F.3d at 907 (D.C. Cir. 1995); <u>More</u>, 480 F. Supp. 2d at 270-71; <u>Williams v.</u>

<u>Munoz</u>, 106 F. Supp. 2d 40, 42 (D.D.C. 2000).

If the matter is not resolved through informal counseling, the aggrieved employee must,

within fifteen (15) days, file a written complaint with the agency that allegedly discriminated

against her. 29 C.F.R. § 1614.106(a)-(c). The agency must investigate the matter within one

hundred eighty (180) days or reject the complaint and issue a final dismissal. *Id.* §

1614.106(d)(2). At the conclusion of the agency's investigation, the complainant may request a

hearing before an EEOC administrative judge or an immediate final decision by the agency. *Id.*

§ 1614.108(f). A complainant who receives an adverse final decision from the agency may

appeal that decision to the EEOC within thirty (30) days, or may file a civil action within ninety

(90) days. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; <u>see also</u> <u>Wilson v. Pena</u>, 79 F.3d 154

(D.C. Cir. 1996); <u>Holley v. Dep't of Veterans Affairs</u>, 165 F.3d 244, 246 (3d Cir. 1999). A

complainant generally may file a civil action at any time after a complaint has been pending

before the agency or the EEOC for at least one hundred eighty (180) days. 42 U.S.C. § 2000e-

16(c); 29 C.F.R. § 1614.407.

Here, Plaintiff did not raise a retaliation claim until almost a year after the alleged

retaliatory conduct occurred.  It is not disputed that Mr. Burns selected Ms. Carraway for

the120-day detail in January 2004.  <u>See</u> Burns Second Decl. at p. 2 (Gov. Exh.13).  After

Plaintiff discovered Ms. Carraway's selection for the detail, on February 23, 2004, Plaintiff

contacted an EEO counselor claiming discrimination based on his race, color, and gender.  <u>See</u>

Individual Complaint of Employment Discrimination with Department of Treasury at Boxes 16

and 20 (Gov. Exh.14).  In that complaint form, Plaintiff claimed that he was discriminated

because of his race, color, and gender.  <u>Id</u>. at Box 16.  Nowhere on that complaint form did

Plaintiff indicate that that retaliation was one of the bases for his EEO claim.  <u>Id</u>. at Box 16.  In

fact, the EEO Counseling Report only mentioned race and sex as the bases for Plaintiff's

administrative complaint and did not even mention retaliation as one of the claims.  <u>See</u> EEO

Counseling Report – Individual Complaint at Item No. 6 (Gov. Exh.15).  Thereafter, on August

30, 2004, Defendant received a letter from Plaintiff seeking a "formal request to amend my

second claim allegation to that of my first EEO Claim."  <u>See</u> Aug. 30, 2004 Letter at p. 1 (Gov.

Exh.16).  In this August 30th letter, Plaintiff had an opportunity to raise the retaliation claim but

did not do so.  Specifically, Plaintiff claimed that his "second claim is like the first."  Plaintiff's

first claim is a discrimination claim when he was not selected for the GS-14 position at issue

here.  In any event, by this time, Plaintiff's retaliation claim would have been six months out of

time anyway.

    Mysteriously, on January 4, 2005, almost 11 months after he first contacted an EEO

counselor regarding Ms. Carraway's detail, Plaintiff for the first time advanced a retaliation

claim.  <u>See</u> Jan. 4, 2005 Letter (Gov. Exh.17).  Plaintiff reiterated his retaliation claim in another

letter on January 11, 2005.  <u>See</u> Jan. 11, 2005 Letter (Gov. Exh.18).  In both letters, Plaintiff

claimed that retaliation was a "definite factor in him not receiving the temporary assignment."
Id.  Under these facts, Plaintiff's retaliation was simply approximately 11 months out of time.
Under the law, the Court should grant summary judgment in Defendant's favor on Plaintiff's
retaliation claim (Count II).

### 2.    Plaintiff Cannot Establish A Prima Facie Case of Retaliation.

Even assuming that Plaintiff's retaliation claim was timely, Plaintiff still could not
establish a prima facie case of retaliation because of a six-month lapse between his initial EEO
contact and the alleged retaliatory conduct on January 20, 2004.  To establish a prima facie case
of retaliation, Plaintiff must show that (1) he engaged in statutorily protected activity; (2) that he
suffered from an adverse employment action; and (3) that a causal connection existed between
the two.  See Willingham v. Gonzales, 391 F. Supp.2d 52, 60 (D.D.C. 2005).

Defendant does not dispute that Plaintiff can meet the first two elements of this prima
facie case.  Specifically, Plaintiff made his initial EEO contact on August 28, 2003, (Gov. Exh.
19 at Box 21) when Defendant did not select him for the GS-14 Safety Specialist position, and
that he suffered an adverse employment action when Mr. Burns did not select him for the 120-
day detail on January 20, 2004.  Plaintiff, however, cannot demonstrate causation because there
was a six- month gap between his initial EEO complaint and the alleged retaliatory act (his non-
selection).

To establish causation, a plaintiff must pair knowledge with proximity.  This Plaintiff is
unable to do.  In Willingham, this court observed that "'[C]ourts have not established the
maximum time lapse between [a] protected Title VII activity and alleged retaliatory actions.'"
391 F. Supp.2d at 61 (citing Brodetski v. Duffey, 141 F.Supp.2d 35, 43 (D.D.C.2001)).

15

However, this Court also noted that " when a court is asked to accept mere temporal proximity between an employer's knowledge of [a] protected activity and an adverse employment action as sufficient evidence of causality, the Supreme Court has cautioned that the temporal proximity must be very close." Id. (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)) (internal quotation marks omitted).  This Court found that "[i]n two of the cases the Supreme Court cited to support this proposition, the circuit courts rejected delays of less than 4 months as insufficient to establish causation." Id. (citing See Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month delay insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month delay insufficient)).  The court then concluded that it "has often followed a three-month rule to establish causation on the basis of temporal proximity alone." Willingham, 391 F. Supp.2d at 61-62 (citing Buggs v. Powell, 293 F.Supp.2d 135, 148 (D.D.C.2003); Gustave-Schmidt v. Chao, 360 F.Supp.2d 105, 118-19 (D.D.C.2004) (referring to end of three-month window as "outer limit" of "temporal requirement in a retaliation case")).  Ultimately, in Willingham, the court rejected plaintiff's retaliation claim for failure to establish the temporal proximity element because of a six-month lapse between plaintiff's EEO activity and defendant's removal of plaintiff – the alleged retaliatory act.  391 F. Supp.2d at 62.

        In this case, Plaintiff's retaliation claim suffers the same fate as in Willingham.  Indeed, Plaintiff's non-selection for the 120-day detail took place in January 2004 (Compl. at ¶ 18), approximately six months after Plaintiff contacted the EEO counselor in August 2003 regarding his non-selection for the GS-14 promotion.  See Gov. Exh. 19 at Box 21.  Given the six-month gap, as a matter of established law, Plaintiff cannot demonstrate causation on the basis of

knowledge and temporal proximity.  See Willingham, 391 F. Supp.2d at 62 (holding that

plaintiff could not establish a prima facie case for her retaliation claim because of a six-month

gap between the EEO activity and the alleged discriminatory conduct).  Accordingly, Plaintiff

cannot establish his prima facie case of retaliation and the Court should grant summary judgment

in Defendant's favor on this claim.

### 3.    Non-Retaliatory Reasons For Not Selecting Plaintiff For The 120-Day Detail.

Even assuming Plaintiff can establish a prima facie of retaliation, Defendant has

legitimate, non-retaliatory reasons for giving Ms. Caraway the 120-day detail.

As Mr. Burns (selecting official) explained,

Since my arrival to the IRS in April 2003, the National Office Safety Program had
undergone extensive focus, evaluation and change.  As part of this evaluation and
"needs analysis", we identified a number of gaps in our program and one of the
needs was to revise the Safety Inspection Program.  Another need was to develop
a training/mentoring plan for the field Safety Officers.

For the revision of the Safety Inspection Program, we solicited volunteers
from the field in the fall of 2003.  Mr. Hamilton was one of two field Safety
Officers selected for the position.[7]  The other was Ms. Brenda Goulding. . .

For the second need, and the subject of the Complaint, there was no
formal announcement seeking volunteers from the field.  The decision to select
Ms. Carraway was based upon the relationship of the Safety Program needs at the
time and her skills and abilities.  Ms. Carraway had demonstrated interest,
experience and aptitude in this area in the past.  She had participated, along with
other Safety Officers, in the development of training for the Safety Advisory
Committee (SACs).  Additionally, she had voiced her ideas about standardization
of training and development of the Safety Officers in Safety Officer conference
calls.

Burns Second Decl. at p. 2.  Mr. Burns further explained that he chose Ms. Carraway based upon

---

[7]    Mr. Burns selected Mr. Hamilton for this position.

Ms. Barbara Cohen's recommendation and his discussion with Mr. Ed Crandall:

> Ms. Barbara Cohen [] suggested that Ms. Carraway would be an excellent choice to lead the training/mentoring program. That staff member indicated Ms. Carraway had been very helpful to [the] National Office on other projects and she had skills and interest in Safety Officer training and development. In a separate conversation, another staff member, Mr. Edward Crandall, shared information about Ms. Carraway's frustration with her current work situation. Knowing that the senior leadership in our organization had previously advocated field details as a good method for obtaining temporary resources needed by the National Office and given the other information that I had, I asked Ms. Carraway to discuss a proposed detail. After having a conversation with her and hearing her ideas, I was confident that she was an appropriate choice for the project.

Burns Second Decl. at p. 3; see also Burns Depo. at p. 136:6-138:3. In fact, after speaking with Ms. Cohen and Mr. Crandall, Mr. Burns did not even consider anyone else, including Plaintiff, for the detail. Burns Depo. at p. 137:28-138:10.

This Court has recognized that "[it] is well settled . . . that courts cannot permit themselves to be used as 'super-personnel departments that reexamine an entity business decisions." Brown, 437 F. Supp. 2d at 132 (Walton, J.) (internal citation omitted). The Court also explained that "the question is not the correctness or desirability of the reasons offered . . . but whether the employer honestly believes in the reasons it offers." Id. at 132-33 (internal citation and quotation marks omitted).

Under this standard and based upon the facts described above, the Court should not "second guess" Mr. Burns' selection of Ms. Carraway for the 120-day detail. Accordingly, the Court should find that Defendant had articulated legitimate, non-retaliatory reasons for giving Ms. Carraway's the 120-day detail and grant summary judgment in Defendants' favor on this claim.

**V.    Conclusion.**

For the foregoing reasons, the Court should grant summary judgment in Defendant's

favor and dismiss this case with prejudice.


Dated:  August 14, 2007.                    Respectfully Submitted,


                                            /s/   Jeffrey A. Taylor
                                         JEFFREY A. TAYLOR, D.C. BAR # 498610
                                         United States Attorney


                                            /s/   Rudolph Contreras
                                         RUDOLPH CONTRERAS, D.C. BAR #434122
                                         Assistant United States Attorney

                                            /s/   John C. Truong
                                         JOHN C. TRUONG, D.C. BAR #465901
                                         Assistant United States Attorney
                                         555 Fourth Street, N.W.
                                         Washington, D.C.  20530
                                         (202) 307-0406

                                         Attorneys for Defendant

**UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA**

_____  )
                                   )
**Gary Hamilton**,                 )
                                   )
              Plaintiff,           )      Case No.: 05-CV-01549 (RBW)
       v.                          )
                                   )
**Henry M. Paulson, Jr.,**         )
                                   )
              Defendant            )
_____ )

## ORDER

        Upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's

Opposition thereto, and the entire record herein, it is this _____ day of _____, 2007

        ORDERED that Defendant's Motion for Summary Judgment be and is hereby

GRANTED; and it is

        FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED.

        SO ORDERED.


                                        _____
                                        U.S. District Judge

# Table of Exhibits

| Exhibit No. | Description |
| --- | --- |
| 1 | Vacancy Announcement SSN-OF03706<br>Safety Specialist (Safety/Occp Health Managert)<br>GS-0018-14 |
| 2 | Ranking Chart of All 14 Applicants |
| 3 | Deposition of Paul Carroll (Ranking Official) |
| 4 | Knowledge, Skills, and Abilities ("KSA") |
| 5 | Promotion Certificate |
| 6 | Questions for Safety Specialist Interviews |
| 7 | Declaration of Tatika Mitchell ("Mitchell Decl.") |
| 8 | Declaration of John Stuart Burns ("Burns Decl.") |
| 9 | Declaration of Michael Huston ("Huston Decl.") |
| 10 | Deposition of Tatika Mitchell ("Mitchell Depo.") |
| 11 | Deposition of Michael Huston ("Huston Depo.") |
| 12 | Deposition of John Stuart Burns ("Burns Depo.") |
| 13 | Second Declaration of John Stuart Burns ("Burns Second Decl.") |
| 14 | Individual Complaint of Employment Discrimination With The Department of Treasury |
| 15 | EEO Counseling Report |
| 16 | Letter from Hamilton Received on August 30, 2004 |
| 17 | January 4, 2005 Letter from Plaintiff's Counsel Re: Retaliation Claim |
| 18 | January 11, 2005 Letter from Plaintiff's Counsel Re: Retaliation Claim |

19                    Plaintiff's August 2003 Discrimination EEO Claim

20                    Declaration of Paul Carroll