**08/04/06: Hamilton v U.S. Treasury: Depo: Paul Carroll**

PAGE 1 TO PAGE 95

**NEAL R. GROSS & CO., INC.**

(202) 234-4433

**CONDENSED TRANSCRIPT AND CONCORDANCE**
PREPARED BY:

*NEAL R. GROSS & CO., INC.*
*1323 RHODE ISLAND AVE., NW*
*WASHINGTON, DC   20005*
*Phone:   (202) 234-4433*



GOVERNMENT EXHIBIT 3

## Page 1

```
(1)         IN THE U.S. DISTRICT COURT
(2)         OF THE DISTRICT OF COLUMBIA
(3)
(4)
    GARY HAMILTON,
(5)
        Plaintiff
(6)
        v.
(7)                          CASE NO.: 05-1549
                             (RBW)
(8) JOHN SNOW, Secretary
    U.S. Department of the
(9) Treasury
(10)    Defendant.
(11)
(12)            Washington, D.C.
                Friday, August 4, 2006
(13)
(14) DEPOSITION OF:
(15)            PAUL CARROLL
(16) called for examination by counsel for the plaintiff,
     pursuant to notice of deposition, in the offices of
(17) Neal Gross & Co., 1323 Rhode Island Avenue, N.W., when
     were present on behalf of the respective parties:
(18)
(19)
(20)
(21)
(22)
```

## Page 2

```
(1) APPEARANCES:
(2)   On Behalf of the Plaintiff, Gary Hamilton:
(3)      ANNE J. A. GBENJO, ESQ.
         8449 West Bellfort Avenue
(4)      Suite 100
         Houston, TX 77071
(5)      (713) 771-4775
         (713) 771-4784 fax
(6)
(7)   On Behalf of the Defendant, John Snow:
(8)      JOHN C. TRUONG, ESQ.
         Assistant United States Attorney
(9)      Department of Justice
         555 4th Street, N.W.
(10)     Washington, D.C. 20530
         (202) 307-0406
(11)     (202) 514-8780 fax
(12)
(13)
(14)
(15)
(16)
(17)
(18)
(19)
(20)
(21)
(22)
```

## Page 3

```
(1)              CONTENTS
(2) WITNESS:    DIRECT CROSS REDIRECT RECROSS
(3) Paul Carroll
       By Ms. Gbenjo    4           94
(4)    By Mr. Truong           88
(5)
               EXHIBITS
(6)
     NO.    DESCRIPTION                        MARK
(7)
     1    Unsworn Declaration of Paul Carroll   70
(8)
     2A   Rating Sheet for Michael Perkins      72
(9)
(10) 2B-2D Rating Sheets for Annette Burrell,   73
(11)      Camille Carraway, Gary Hamilton
(12)
(13)
(14)
(15)
(16)
(17)
(18)
(19)
(20)
(21)
(22)
```

## Page 4

(1) P-R-O-C-E-E-D-I-N-G-S
(2) (10:36 a.m.)
(3) COURT REPORTER: Mr. Carroll, could you (4) raise your right hand, please. (5) WHEREUPON,
(6) PAUL ALLEN CARROLL (7) was called as a witness and, after having been first (8) duly sworn, was examined and testified as follows:
(9) COURT REPORTER: Thank you.
(10) DIRECT EXAMINATION
(11) BY MS. GBENJO:
(12) Q Please state your full name for the (13) record.
(14) A Paul Allen Carroll, Jr.
(15) Q What's your address, Mr. Carroll?
(16) A 1987 Glencrest, G-L-E-N-C-R-E-S-T Lane, (17) Annapolis, Maryland.
(18) Q Is that home or office?
(19) A That's my home.
(20) Q How long have you lived in the State of (21) Maryland?
(22) A All my life, 52 years.

Page 33

(1) MR. TRUONG: Now that you know she's the (2) Staff Assistant, do you still want to depose her?
(3) MS. GBENJO: Okay.
(4) BY MS. GBENJO:
(5) Q So she is the Staff Assistant.
(6) **A Yes.**
(7) Q She's at ISM.
(8) **A Yes.**
(9) Q She is not with personnel.
(10) **A No.**
(11) Q Okay. Now it's clear. Okay. Now were (12) you given any criteria, ranking criteria for the (13) packages you received?
(14) **A Yes.**
(15) Q Okay. What ranking criteria were you (16) given?
(17) **A I was given a list of five, I believe it (18) was five, KSAs is what they're called - they're (19) knowledge, skills and abilities, and I was given the (20) criteria for what they do is they give me the KSA, (21) which is a sentence or two, and then they give me a (22) short paragraph of these qualifications would denote**

Page 34

(1) - the highest score is a five, so these (2) qualifications would denote a five, these (3) qualifications would denote a three, these (4) qualifications would denote a one. I was given that (5) **to rank it against.**
(6) Q Was there a ranking scheme?
(7) **A That is the ranking scheme.**
(8) Q So the ranking scheme and the ranking (9) criteria are synonymous.
(10) **A My understanding, yes.**
(11) Q Okay. Now who established the cut-off (12) scores for that ranking that you did?
(13) **A Personnel.**
(14) Q And who is that person that established (15) the --
(16) **A The position is the personnel (17) specialist. I don't recall who it was for this (18) package.**
(19) Q Okay. Other than ranking these (20) packages, did you perform any of the role or duties (21) with respect to the case we are here for today?
(22) **A For Gary Hamilton's --**

Page 35

(1) Q For all the --
(2) **A For the package?**
(3) Q For the packages.
(4) **A No.**
(5) Q Now what did you tell personnel after (6) ranking your packages?
(7) **A I had no verbal communications --**
(8) Q With them.
(9) **A -- with personnel after that.**
(10) Q Okay. Did you have any written (11) communication with personnel after ranking them?
(12) **A Other than providing them the ranked (13) list, then that was the extent of my communication.**
(14) Q Now, typically, when you rank candidates (15) for a position, does any other person go over the (16) ranking to be sure that it's appropriately (17) conducted?
(18) **A No.**
(19) Q Have you ever been convicted of a crime?
(20) MR. TRUONG: Objection. I instruct the (21) witness not to answer. This is the subject and the (22) topic that we seek counsel from the Court on; so,

Page 36

(1) therefore, I'm instructing the witness not to answer (2) this question. It is subject to my potential motion (3) for a protective order, and we agreed to call the (4) Judge at the break to resolve this issue.
(5) MS. GBENJO: So you are saying unless --
(6) MR. TRUONG: Yes.
(7) MS. GBENJO: Okay.
(8) MR. TRUONG: We will call the Judge.
(9) MS. GBENJO: Okay.
(10) MR. TRUONG: Thank you.
(11) BY MS. GBENJO:
(12) Q Now we talked earlier about whether you (13) received training and safely and security. You said (14) you did not receive any formal training in safety (15) and security. Did you receive any informal training (16) in safety or security?
(17) **A Yes.**
(18) Q Okay. Tell me the extent of the (19) informal training that you received in safety.
(20) **A My extent of training in safety and (21) health has been as a Facilities Manager. I work (22) with them on indoor air qualities, I work with them**

### Page 85

(1) you competed for is what?
(2) A There was an architect. There were – I (3) think there was one or two engineers.
(4) Q Okay. When did you compete for it?
(5) A For the detail? I just competed for it, (6) because it's a long-term detail, I just competed for (7) it recently.
(8) Q Oh. Was it announced, was the detail (9) announced?
(10) A The long-term detail. I was detailed (11) for 120 days, and then there was an announcement on (12) it.
(13) Q Okay. So a 120-day detail is a long- (14) term detail?
(15) A No. I'm actually detailed for not to (16) exceed one year.
(17) Q One year.
(18) A Yes.
(19) Q So you would consider a one-year detail (20) a long-term detail.
(21) A Yes.
(22) MR. TRUONG: Objection; foundation,

### Page 86

(1) speculation. He's not a personnel specialist.
(2) BY MS. GBENJO:
(3) Q Well, you said you've been with the IRS (4) for how many years?
(5) A Since '91.
(6) Q And you're answering the questions today (7) based on your familiarity with IRS procedures. (8) Isn't that true?
(9) A That's correct.
(10) MR. TRUONG: Ranking procedure.
(11) MS. GBENJO: Objection to that, (12) counsel's testimony.
(13) BY MS. GBENJO:
(14) Q Now let us now focus on the particular (15) ranking before we go into exhibits. Let us now (16) focus on the particular ranking. Out of two (17) individuals, one has 15 years experience, and the (18) other has two years experience in the related field. (19) The one with 15 years experience has education, the (20) one with two years experience has no education. (21) Which one would be a better candidate?
(22) MR. TRUONG: Objection; speculation.

### Page 87

(1) MS. GBENJO: This is a scenario. This (2) is deposition, it's not trial.
(3) THE WITNESS: In this package, or in the (4) ranking.
(5) MS. GBENJO: In the ranking.
(6) THE WITNESS: In the ranking?
(7) MS. GBENJO: Yes.
(8) THE WITNESS: I don't rank them against (9) each other. I rank them against the KSAs.
(10) BY MS. GBENJO:
(11) Q Okay. Now presuming that they satisfy, (12) the two of them satisfy the KSA –
(13) A Then they won't come out equal.
(14) Q Because?
(15) A Because they are not ranked against each (16) other. They are ranked against the ranking (17) criteria.
(18) Q So under your own theory, you would (19) score both of them five. You would give each one of (20) them five points.
(21) A If they were entitled, in my opinion, to (22) the five points that were in the KSAs, yes, I would.

### Page 88

(1) Q Okay. If they are entitled, in your (2) opinion, to what now?
(3) A To the five points. If they met the (4) criteria to get the five points, yes, I would give (5) them each five points.
(6) Q Okay. Based on the way you see it.
(7) A That's right.
(8) Q And not giving any weight to the (9) educational background.
(10) A Unless the educational background was (11) addressed in the KSAs, no, I'm not supposed to give (12) any weight to it.
(13) Q So is it your testimony, therefore, that (14) if their educational background is not a requirement (15) in the KSA, you do not give it any weight.
(16) A That's correct.
(17) MS. GBENJO: I have no further (18) questions.
(19) MR. TRUONG: I have two questions, (20) actually.
(21) CROSS EXAMINATION
(22) BY MR. TRUONG: