**UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
**Gary Hamilton**,                            )
                                              )
                Plaintiff,                    )          Case No.: 05-CV-01549 (RBW)
        v.                                    )
                                              )
**Henry M. Paulson, Jr.**,                    )
                                              )
                Defendant                     )
_____)

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction**.

        Plaintiff's lengthy Opposition fails to point to any evidence in the record showing that

Defendant discriminated against him when Defendant did not select him for a GS-14 Safety

Specialist position in July 2003.  Rather, the evidence remains uncontroverted that Plaintiff did

not get the position because he did not perform well at this interview.

        Unhappy with the non-selection, Plaintiff then advances a retaliation claim alleging that

Defendant retaliated against him when he was not selected for a detail to a higher position in

January 2004.  Unfortunately, Plaintiff did not raise this alleged retaliatory conduct until January

2005, almost 11 months too late.

        For these reasons and those elaborated below, the Court should grant summary judgment

in Defendant's favor and dismiss this case with prejudice.

**II.     Argument**.

1

A.    **Plaintiff Fails to Controvert Defendant's Material Facts Not In Genuine Dispute.**

Plaintiff fails to specifically controvert each of Defendant's material facts not in genuine dispute.  Rather, Plaintiff merely states that "[t]o the extent that the 'Defendant's Statement of Material Facts Not In Genuine Dispute' are inconsistent with Plaintiff's statement of genuine facts listed herein, Defendant's Statement of Material are in serious dispute."[1]  Plaintiff's conclusory statement does not comply with Local Rule 7(h) or Fed. R. Civ. P. 56(e) and, therefore, Defendant's material facts should be deemed admitted.

Under Local Rule 7(h), "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Ganning v. Dep't of Defense, 499 F. Supp.2d 14, 16 (D.D.C. 2007) (citing Local Rule 7(h)).  Indeed, a court "is under no obligation to sift through the record and should instead deem as admitted the moving party's facts that are uncontroverted by the non-moving party's Rule 7(h) statement."  Id. (citing SEC v. Banner Fund Int'l, 211 F.3d 602, 616 (D.C. Cir. 2000) (internal quotations omitted).  Moreover, "[u]nless the opposing party points to affirmative evidence showing disputed material facts, the court shall enter summary judgment, if appropriate, against the adverse party."  Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 150 (D.C. Cir. 1996).

Here, Plaintiff fails to address each of Defendant's material facts not in genuine dispute.  Rather, Plaintiff conclusorily claims that Defendant's material facts are disputed if they are not consistent with his own statement of facts.  Pl. SOF at 3 (Dkt. No. 46-2).  Plaintiff, however,

---

[1]    Plaintiff's Statements of Genuine Issue of Material Facts Necessary to Be Litigated ("Pl. SOF") p. 3.

fails to point out which of his material fact controverts Defendant's material facts. It is not the Court's responsibility to "sift through" Plaintiff's statement of facts to determine which one is "inconsistent" with Defendant's material facts and therefore deems it disputed. Plaintiff has the obligation under Local Rule 7(h) and Fed. Civ. P. 56(e) to point to " affirmative evidence showing disputed material facts." See Jackson, 101 F.3d at 150. However, he simply fails to satisfy that obligation here. Accordingly, the Court should deem Defendant's material facts admitted and grant summary judgment in Defendant's favor.

**B.  Plaintiff Failed To Exhaust Administrative Remedies Surrounding the 2002 Detail.**

For the first time in this litigation, Plaintiff's Opposition argues that the placement of Ms. Annette Burrell on a detail in August 2002 constituted race and gender discrimination against him. See Opp. at 25-30. Plaintiff also claims that the renewal of Ms. Burrell's detail also constituted discrimination against him. Id. at 26-27. Plaintiff inappropriately attempts to sneak allegation into this lawsuit because neither of his two administrative complaints (Gov. Exh. 14 and 19) nor his federal court Complaint (Dkt. No. 1) raise this allegation. Without more, Plaintiff's claim of race and gender discrimination for his non-selection for the August 2002 detail fails for failure to exhaust administrative remedies. It is too late for Plaintiff to raise this issue now.

"The filing of an administrative charge with the EEO is a jurisdictional prerequisite to maintaining a Title VII action in federal district court."  Wiley v. Johnson, 436 F. Supp.2d 91, 95 (D.C. 2006). Indeed, federal employees must exhaust their administrative remedies before filing suit under Title VII. See 42 U.S.C. § 2000e-16(c); Bowden v. United States, 106 F.3d 433, 437 (D.C.Cir.1997). Employees who allege discrimination must consult with an agency EEO

counselor before filing a written complaint with the agency accused of discriminatory practices.

See 29 C.F.R. § 1614.105(a); 29 C.F.R. § 1614.106(a)-(c). Moreover, "[c]omplainants must

timely exhaust these administrative remedies before bringing their claims to court." Bowden,

106 F.3d at 437.

Here, Ms. Burrell was placed on a detail in August 2002 by her former supervisor, Mr.

Reggie McFadden. See Burrell Depo. at 37:14-39-14 (Gov. Reply Exh. 1). Plaintiff's

Opposition is the first time that he claims that Defendant discriminated against him because of

his race and gender for not selecting him for a detail in August 2002. Indeed, his August 2003

contact with an EEO counselor did not include any allegations pertaining to the August 2002

detail. See Gov. Exh. 19 (Plaintiff's 2003 EEO complaint). Moreover, his April 2004 EEO

complaint did not even mention the non-selection for the August 2002 detail. See Gov. Exh. 14

and 15 (copies of Plaintiff's April 2004 EEO complaints). More importantly, his federal court

complaint filed with this Court did not seek redress for any alleged discrimination based on the

August 2002 detail. See Compl. at ¶ 19-29 (Dkt. No. 1). Plaintiff simply failed to raise this

allegation both at the administrative level and in his federal court complaint. The Court should

reject Plaintiff's claim of discrimination based on the August 2002 detail for failure to exhaust

administrative remedies.

In any event, Plaintiff's claim pertaining to the August 2002 is now untimely. Under the

law, Plaintiff must contact an EEO counselor within 45 days of the alleged discriminatory

conduct. The EEOC's regulations require that "aggrieved" employees consult an agency EEO

Counselor within forty-five (45) days of the "matter alleged to be discriminatory or, in the case

of personnel action, within forty-five (45) days of the effective date of the action." 29 C.F.R. §

1614.105(a)(1).  A failure to comply with this time limit bars a plaintiff's discrimination claim.

Bowden, 106 F.3d at 437; see also Adams v. Mineta, 2006 WL 367895, *3 (D.D.C. Feb. 16,

2006) (Walton, J.) (holding that "[t]he result of the holding in Morgan was to prohibit the

plaintiff from pursuing claims of discrete incidents of discrimination unless he had first filed a

complaint with an EEO counselor within the proscribed period") (emphasis added).

Here, to be timely, Plaintiff would have to file his claim surrounding the non-selection

for the August 2002 detail in September or October 2002.  Plaintiff, however, did not raise this

claim until October 17, 2007, when he filed his Opposition to Defendant's Motion for Summary

Judgment.  See Opp. at 25-20 (Dkt. No. 47).  Plaintiff is now five years late.

Under these facts and settled law, the Court should reject Plaintiff's attempt to back-door

any allegations of discrimination pertaining to the August 2002 detail in this case.

**C.    Plaintiff's Retaliation Claim Lacks Merit.**

**1.    Plaintiff's Retaliation Claim Is Eleven Months Out of Time.**

Plaintiff argues that Mr. Burns' selection of Ms. Camille Carraway for a detail in

January 2004 constituted retaliation against him.  Compl. at ¶ 18.  Plaintiff does dispute that he

did not include a retaliation claim until January 2005 – approximately 11 months after the fact.

See Pl. Exh. 9 at ¶ 40.

To save this untimely claim, Plaintiff raises three arguments: (1) Plaintiff's amendment

of his claim in January 2005 some how relates back to this administrative claim filed in February

2004; (2) Plaintiff should be excused for any tardiness because he was proceeding *pro se* at that

time; and (3) Defendant waived any defense of untimeliness.  See Opp. at 32-33.  These three

contentions lack merit.

First, misconstruing 29 C.F.R. § 1601.12, Plaintiff claims that his amendment of his administrative complaint in January 2005 allows him to resurrect his untimely retaliation claim. See Opp. at 32. Contrary to Plaintiff's assertion, Section 1601.12 only provides that "a charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify or amplify allegations made therein." See 29 C.F.R. § 1601.12. Nowhere in this provision does it allow Plaintiff to amend his EEO charge to raise a wholly, new discrete claim of retaliation eleven months out of time. But see Kalinoski v. Gutierrez, 435 F. Supp.2d 55, 75-77 (D.D.C. 2006). In fact, as the Supreme Court stated in Nat'l R.R. Passenger Corp. v. Morgan, "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" 536 U.S. 101, 108 (2002), (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 825, 100 S. Ct. 2486, 2497 (1980)). In construing the holding in Morgan, this Honorable Court dismissed plaintiff's retaliation claim because the plaintiff failed to timely file an administrative charge and held that "[t]he result of the holding in Morgan was to prohibit the plaintiff from pursuing claims of discrete incidents of discrimination unless he had first filed a complaint with an EEO counselor within the proscribed period." Adams v. Mineta, 2006 WL 367895, *3 (D.D.C. Feb. 16, 2006) (Walton, J.) (emphasis added).

Here, as explained in Defendant's Motion for Summary Judgment, Plaintiff had two opportunities to raise his retaliation claim when he filed his EEO complaint in February 2004 (Gov. Exh. 14-15) and when he amended his 2004 EEO complaint in August 2004 (Gov. Ex. 15). Def. Mot. at 14. Plaintiff, however, failed to raise his retaliation claim until January 2005, eleven months out of time. Def. Mot. at 14-15.

Second, without citing a single authority on point, Plaintiff attempts to excuse his

tardiness due to his *pro se* status.  <u>See</u> Opp. at 33.  It appears that Plaintiff attempts to invoke the equitable tolling doctrine to save his untimely retaliation claim.  However, under the law, Plaintiff bears the burden of showing that the equitable tolling doctrine applies to save his unexhausted claims.  <u>See</u> <u>Bayer v. United States Dep't of Treasury</u>, 956 F.2d 330, 333 (D.C.Cir.1992) (holding that a Title VII plaintiff bears the burden of establishing his entitlement to equitable tolling).  Here, Plaintiff simply has not carried that burden.

Furthermore, at a minimum, for the equitable tolling doctrine to apply, Plaintiff must demonstrate that he had been "misinformed or misled by the administrative agency responsible for processing his charge."  <u>See</u> <u>Joseph v. Pac. Bell</u>, 432 F.3d 1006, 1014 (9th Cir. 2005).  Plaintiff's lengthy dissertation on his retaliation claim fails to point to any agency misconduct to allow him to benefit from the equitable tolling doctrine.  <u>See</u> Opp. at  32-33.  Without more, Plaintiff should not be excused for not raising his retaliation claim until 11 months after the fact.

Finally, without citing a single authority, Plaintiff claims that Defendant waived its untimeliness defense.  <u>See</u> Opp. at 33.  Contrary to Plaintiff's assertion, Defendant raised the statute of limitation defense as one of its affirmative defenses in its answer to Plaintiff's Complaint.  <u>See</u> Second Affirmative Defense in Answer (Dkt. No. 2).  Thereafter, Defendant moved for summary judgment on Plaintiff's retaliation claim on statute of limitations grounds.  Def. Mot. at 12-15 (Dkt. No.42).  Under these facts, contrary to Plaintiff's assertion, Defendant did not waive any defenses.  Accordingly, the Court should grant summary judgment in Defendant's favor because Plaintiff failed to file an EEO charge for his retaliation claim within

45 days of the alleged conduct.[2]

###    2.    Plaintiff Fails To Establish A Prima Facie Case of Retaliation.

Even assuming that Plaintiff's retaliation was timely filed at the administrative level,

Plaintiff nevertheless fails to establish a prima facie case of retaliation.

Recognizing that there is a six-month lapse between his protected activity and the alleged

retaliatory conduct, Plaintiff attempts to salvage the temporal proximity prong of his prima face

case of retaliation by arguing that he engaged in a protected activity in October 2003 (when he

filed his EEO complaint) and that he suffered an adverse action in January 2004 (for his non-

selection to a detail to a higher position).  See Opp. at 33-34.  Plaintiff's argument misses the

point.

Plaintiff engaged in a protected activity in August 2003 when he first contacted an EEO

counselor complaining about his non-selection to a GS-14 position at issue here.  See Gov. Exh.

19 (Box 20); see also Richardson v. Guiterrez, 477 F. Supp.2d 22, 27 (D.D.C. 2007) (noting that

plaintiff engaged in a protected activity when "she first contacted EEO counselor."); Bell v.

Gonzales, 398 F. Supp.2d 78, 94 (D.D.C. 2005) (initiating EEO counseling constitutes a

protected activity).  However, the alleged retaliatory conduct did not occur until January 2004,

when Mr. Burns selected Ms. Camille Carraway for a detail.  See Def. Mot. at 15-17.  Therefore,

---

[2]    It appears that Plaintiff is attempting to raise a second retaliation claim with his
Opposition.  See Opp. at 34-37.  Specifically, Plaintiff's Opposition claims that he "endured
antagonism" involving his participation as a detailee in the Revision of the Safety Inspection
Program ("RSIP").  Id. at 37.  To the extent that Plaintiff is alleging retaliation about his
involvement with RSIP, this claim is certainly untimely and Plaintiff fails to raise this claim in
his two EEO complaints and his federal court complaint.  See Wiley, 436 F. Supp.2d at 95
(requiring a federal employee to exhaust administrative remedies prior to bringing a Title VII
claim in federal court).  Also, Plaintiff has not suffered a materially adverse employment action.
Burlington Northern and Sante Fe Railroad Co. v. White, 126 S. Ct. 2405, 2415 (U.S.)

as explained in Defendant's Motion, there was a six-month gap between the two events.  Id.

Under the law, this lapse is too long to demonstrate causation.  See Willingham v. Gonzales, 391

F. Supp.2d 52, 62 (D.D.C. 2005) (rejecting plaintiff's retaliation claim due to a six-month lapse).

Under the law and the facts here, the Court should grant summary judgment in Defendant's favor

on the retaliation claim for failure to establish a prima facie case.

 Plaintiff's retaliation claim also suffers from another infirmity, namely, Mr. Burns was

unaware of Plaintiff's interest in any detail.  See Burns Second Decl. at p. 3 (Gov. Exh. 13); Def.

Mot. at 12 n.5.  Mr. Burns, therefore, did not even consider Plaintiff or anyone else when he

selected Ms. Carraway for the detail.  See, e.g., Jackson v. Gonzales, 496 F. 3d 703, 707 (D.C.

Cir. 2007) (noting that to establish a prima facie case a plaintiff must at least apply for the

position).  Citing to his self-serving affidavit, Plaintiff maintains that he became aware of the

vacancy in December 2003 and inquired from Mr. Burns about that vacancy.  See Opp. at 37

(citing Pl. Ex. 9 at ¶ 37).  Plaintiff's affidavit contradicts his previous deposition testimony, in

which Plaintiff repeatedly testified that he did not recall ever informing Mr. Burns of any interest

in serving a detail.  Plaintiff testified,

> Q.  Did you [make] it to known to Mr. Burns or anyone else that
> you would like to be considered for  the detail that Ms. Caraway
> received?
>
> MS. GBENJO:  Objection.  Assuming that such an opportunity
> was available.
>
> THE WITNESS:  Mr. Burns never told me that it was available.
>
> Q.  Did you [make] it known to Mr. Burns that you would
> like to have [a] detail whenever one was available?
>
> A.  I can't recall.

Q.  Did you tell anyone else that you would like to have a detail whenever one was available?

A.  I can't recall, but I don't think nobody -- rephrase.  Restate the question, please.

Q.  Did you tell anyone that you would like  to have a detail whenever one is available?

A.  I can't recall.

Q.  So as I understand it, as you sit here today, you don't recall whether you told Mr. Burns  or anyone else that you would like to be on a detail?

MS. GBENJO:  Objection.  Asked and answered three times.

THE WITNESS:  No.

Q.  No, meaning you don't recall?

A.  No.  Rephrase your question.

Q.  Is it fair to say as you sit here today you do not recall whether you told Mr. Burns or  anyone else that you would like to go on a detail?

MS. GBENJO:  Objection.

THE WITNESS:  Yes.

Q.  Yes, meaning that you do not recall?

A.  No.

MS. GBENJO:  He said, yes, he does not recall.

THE WITNESS:  I do not recall.

See Hamilton Depo. at p. 106:14-108:9 (Gov. Reply 5).  Mysteriously, almost a year after his

deposition, facing dismissal of his retaliation claim, Plaintiff submits an affidavit claiming that

"he inquired about [the detail] from the Selecting Official."  See Opp. at 37 (citing Pl. Ex. 9 at ¶

37).

Plaintiff cannot be allowed to create a genuine dispute of a material fact by submitting an affidavit that contradicts his previously sworn testimony. See Globalaw Ltd. v. Carmon & Carmon Law Office, 452 F.Supp.2d 1, 6 (D.D.C. 2006). "Courts have long held that a party may not create a material issue of fact simply by contradicting [his or her] prior sworn testimony.... '[T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard [the later statement].'" Pyramid Sec. Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C.Cir.1991) (quoting Martin v. Merrell Dow Pharm., Inc., 851 F.2d 703, 706 (3d Cir.1988)). Accordingly, "a party's affidavit which contradicts [his or her] own prior deposition testimony should be disregarded on a motion for summary judgment." Mack v. United States, 814 F.2d 120, 124 (2d Cir.1987). Under these circumstances, the Court should simply disregard Plaintiff's self-serving affidavit (Pl. Ex. 9). Without more, Plaintiff cannot establish a prima facie of retaliation because he did not even apply for the job by making it known to Mr. Burns that he wished to be considered for it.

As an act of desperation, Plaintiff argues that Mr. Burns retaliated against him when Mr. Burns preselected Ms. Carraway for the January 2002 detail when Mr. Burns informed Ms. Carraway that she did not get the GS-14 position at issue here.[3] See Opp. at 38. Plaintiff then maintains that Mr. Burns' offer to Ms. Carraway was made in July 2003, when the selection for the GS-14 position took place. See Opp. at 38 n.10. This assertion undermines Plaintiff's own causation argument.

---

[3]    Ms. Carraway was one of the four best qualified candidates interviewed for the GS-14 position. Def. Mot. at 2-3.

Specifically, if Mr. Burns preselected Ms. Carraway for the detail in July 2003 (see Opp. at 38 n.10), then the alleged retaliatory conduct (the pre-selection) *preceded* Plaintiff's protected activity – he did not contact an EEO counselor regarding this detail until February 2004 (Gov. Exh. 14).  Based on Plaintiff's assertion, his retaliation claim fails as a matter of law because the selecting official's knowledge of the protected activity did not precede the alleged retaliatory conduct.  See Buggs v. Powell, 293 F. Supp.2d 135, 150-151 (D.D.C. 2003) (Walton, J.) (citing cases).  In short, because Mr. Burns was not aware of Plaintiff's February 2004 EEO complaint (Gov. Exh. 14) when he offered Ms. Carraway a detail in July 2003, Mr. Burns could not have retaliated against Plaintiff for something that did not take place until 7 months after the fact.  Id. at 151 (citing cases that held that to establish a prima facie case of retaliation, a plaintiff must show that the employer had knowledge of the protected activity).

### 3.    Defendant Has Legitimate, Non-Retaliatory Reasons For Selecting Ms. Carraway for a Detail in January 2004.

Plaintiff conclusorily argues that Defendant's proffered reasons for selecting Ms. Carraway are not worthy of credence.  See Opp. at 38-42.  Plaintiff fails to point to any evidence in the record to contradict Defendant's explanations.  Id.  Rather, Plaintiff broadly asserts that his "issue is with the system as a whole" and "white females are routinely detailed to higher positions."  See Opp. at 40; see also Brown, 437 F. Supp.2d at 136 (Walton, J.) (granting summary judgment because plaintiff "has introduced no other evidence which suggests pretexts").

As explained in Defendant's Motion, because of a business need, Mr. Burns selected Ms. Carraway to develop a training/mentoring program for the field safety officers.  Def. Mot. at 17 (citing Burns Second Decl. at p. 2).  Furthermore, Mr. Burns' selection was based on

recommendations from Ms. Barbara Cohen and Mr. Ed Crandall, his colleagues at that time.  Id.
17-18.  Neither Plaintiff nor anyone else was considered for the detail.  See Def. Mot. at 18.

As this Honorable Court pointed out, it is settled law that a court should not act as a
super-personnel department that re-examines an employer's business decision.  See Brown, 437
F. Supp.2d at 132.  This observation squarely applies to this detail selection here.  Accordingly,
the Court should grant summary judgment in Defendant's favor on this retaliation claim.

**D.      Defendant Has Legitimate, Non-Discriminatory  Reasons For Not Selecting
          Plaintiff for the GS-14 Position.**

Plaintiff does not dispute that all three panelists who interviewed Plaintiff for the GS-14
position did not have a favorable opinion of his interview performance.  As explained in
Defendant's Motion, based in large part on Plaintiff's poor interview, he was not selected for the
job.  Def. Mot. at 8-10.  Plaintiff attempts to show pretext by raising peripheral issues and red-
herring arguments.[4]

---

[4]      Plaintiff's Opposition devoted several pages in an attempt to distinguish this case
from the Court's grant of summary judgment in Brown v. Small, 437 F. Supp.2d 125 (D.D.C.
2006) (Walton, J.).  See Opp. at 9-12.  Plaintiff argues that the main difference between Brown
and this case is that Plaintiff here has superior qualifications over the selectee as Plaintiff has a
master's degree.  See Opp. at 10.  Plaintiff's contentions run counter to this Court's observation
that a plaintiff's opinion of the relative merits of his qualifications as opposed to those of the
selectee is irrelevant.  See Buggs, 293 F. Supp.2d at 144 (Walton, J.).

Furthermore, Plaintiff's lengthy argument misses the underlying premise of the
Court's holding in Brown.  At base, as the Court pointed out in Brown and similar to this case,
"the diverse composition of the panel bolsters the conclusion that [the employer was] seeking
'the candidate who was most qualified for the position and that race and gender were not factors
in [the] decision-making process."  Brown, 437 F. Supp.2d at 135 n.10 (internal citation and
quotes omitted).  Here, as explained in Defendant's Motion, the panel that interviewed the
candidates for the job included two white males and one African-American female.  Def. Mot. at
8.  The panelists asked all of the candidates, including the Plaintiff, the same questions.  Id. at 8-
9.  At the end of the interview, all three panelists uniformly agreed that Plaintiff did not perform
well his interview.  Id.  Due to Plaintiff's poor performance at the interview, Defendant did not

1.      The Qualifications of Plaintiff and the Selectee's.

Plaintiff devotes much text to maintaining that he has superior qualifications to that of the selectee, Ms. Annette Burrell, because he has a master's degree and she only has a high school degree.  See Opp. at 13-16.  As this Court pointed out, a plaintiff's opinion of his credentials are not relevant.  Buggs, 293 F. Supp.2d at 144.  In any event, this argument is spurious at best because the OPM for this job does not require that a candidate have a college or a master's degree.  See Burns Depo. at 192:1-8 (Gov. Reply Exh. 2).  Plaintiff then maintains that the selectee did not have a degree for a "managerial position."  See Opp. at 14.  Plaintiff is mistaken.  The position here is not a managerial position and the "Major Duties" do not involve supervisory or managerial responsobilities.  See Pl. Exh. 22 (HAM 1882).

Plaintiff then misrepresents the record by arguing that all of "the panelists agree that, Plaintiff was much more qualified than Burrell in Safety."  See Opp. at 16.  Plaintiff cites the declarations of the panelists to support this argument.  Id. at 16 (citing Pl. Exh. 10-12).  In fact, a review of these panelists' declarations do not support Plaintiff's assertion.

In any event, both Plaintiff and Ms. Burrell received the highest number of points possible in the ranking process and were two of the top four best qualified candidates interviewed for the position.  See Gov. Exh. 2 (Ranking Sheet). Therefore, according to the ranking criteria and the ranking official, both Plaintiff and the selectee are similarly qualified for the job.  Id.[5]

---

select him for the position. The Court should apply its reasoning in Brown to this case and should grant summary judgment on similar grounds.

[5]      Plaintiff attempts to discredit Mr. Paul Carroll, the ranking official, by arguing that he was not a subject matter expert for the position.  See Opp. at 4, 18.  This is a red herring

As the D.C. Circuit recently pointed out, "[r]easonable employers . . . do not ordinarily limit their evaluation of applicants to a mechanistic checkoff of qualifications required by he written job descriptions.  Obviously, they will take additional credentials into account, if those credentials would prove useful in performing the job."  Jackson, 496 F. 3d at 709.  Here, as explained in Defendant's Motion, Defendant took the candidates' interview responses into account.  Def. Mot. at 8-10.  Specifically, the panelists interviewed all of the candidates and indicated that the selectee exhibited stronger verbal skills and that she was thought to be a good potential "spokesperson" for the program.  Def. Mot. at 10 n.3.  The selectee possesses the skill set that Defendant was looking for in a candidate.  Id.; see also Barnette v. Chertnoff, 453 F. 3d 513, 519 (D.C. Cir. 2006) (courts must defer to an employer's decision which qualities required by the job it weighs more heavily).

## 2.    Validity of The Job Description Points.

Plaintiff argues that the panel failed to use the point system in the job description, which the panel "led the candidates to believe would be applied in making the selection."  See Opp. at at 16-17.  Plaintiff, however, fails to cite any evidence in the record to support this contention.  Plaintiff further argues that the Selecting Official admitted to the validity of the points.  Id. (citing Burns Depo. at 183:15-17, 187:5-8) (Pl. Ex. 2).

As a preliminary matter, Plaintiff fails to point to any evidence showing how the panel

---

at best.  Even assuming that Mr. Carroll lacked the expertise, this did not prejudice Plaintiff in any way because Plaintiff received the highest score possible under the ranking system.  See Gov. Exh. 2.  Therefore, Plaintiff seems to benefit from Mr. Carroll's alleged lack of expertise. Furthermore, there is no allegation that Defendant (i.e., Mr. Carroll) discriminated against Plaintiff during the ranking process.  See Gov. Exh. 19 (2003 EE complaint) and Federal Court Complaint (Dkt. No. 1).

"led the candidates to believe" the point system was to be applied.  Indeed, as explained in

Defendant's Motion (and Plaintiff does not dispute this), the panel asked all of the candidates the

same questions and made their recommendation for the selection based on the candidates'

responses to the interview questions.  Def. Mot. at 8-9; see also Brown, 437 F. Supp.2d at 135

(noting that "identical questions were administered").

Second, Plaintiff mischaracterizes the Selecting Official's deposition testimony.  The

cited portion of the transcript (citing Burns Depo. at 183:15-17, 187:5-8) (Pl. Ex. 2)) does not

speak to "the validity of the points" in the job description.  In fact, when shown the job

description as a deposition exhibit, the Selecting Official merely confirmed that the document

presented to him was a job description.  He neither verified nor validated the points on the job

descriptions.  See Burns Depo. at 182-183 (Pl. Ex. 2).

### 3.    The Timing of Ms. Burrell's Application.

Plaintiff insinuates discrimination by arguing that the selectee's application was tardy but

her application was considered any way.  This argument is a red herring and based on Plaintiff's

misreading of the record.  For instance, Plaintiff argues that the selectee's application was not

submitted until June 5, 2003.  See Opp. at 18.  This is simply inaccurate and not supported by the

record that he cited.  See Pl. Ex. 40 (at p. HAM2360) (lower right hand corner).[6]  The "June 5,

2003" dates has nothing to do with the date of Ms. Burrell's application.

Under the National Agreement between the IRS and the National Treasury Employees

---

[6]    The document indicates that Ms. Valerie Brown – a Staffing Consultant in
Oakland, CA (Pl. Ex. 23), sent Ms. Burrell's performance evaluation to Ms. Fannie Braswell on
June 5, 2003.  See Pl. Ex. 40 at HAM 2360.  Ms. Fannie Braswell is the office's liaison to the
HR Office.  Burns Depo. at 90:8-18 (Gov. Reply Exh.2).

Union, an applicant has up to ten days to supplement his or her application.  <u>See</u> Gov. Reply Exh. 4  (Union Agreement at Article 13, Section 4(A)(4)(a)).  Here, Ms. Burrell supplemented her application with her performance evaluation on May 22, 2003, only three days after the vacancy closing date of May 19, 2003.  <u>See</u> Pl. Ex. 40 (p. HAM 2360 – signature line). Therefore, her application was timely.

In any event, Plaintiff fails to point to any evidence that Mr. Burns (the Selecting Official) or Paul Carroll (the Ranking Official) controlled the cut-off date for acceptance of the applications.  Mr. Burns testified that he received the names of the candidates to be interviewed from Ms. Fannie Braswell.  Burns Depo. at 89:4-90:22 (Gov. Reply Exh. 2).  Mr. Burns did what he was told in terms of the interview process.  <u>Id.</u>  In fact, the Personnel Department located in Oakland, California, handled the application process.  Specifically, the Vacancy Announcement required the candidates to send the applications to the "Oakland Personnel Office."  <u>See</u> Gov. Exh. 1 (Vacancy Announcement). Without more, Plaintiff has not shown any impropriety pertaining to the application process.

### 4.    Interviewing For A Different Position.

Plaintiff claims that Ms. Mitchell's vote should not count because Ms. Mitchell (one of three panelists) believed she was interviewing the candidates for a Management Analyst position, not the Safety Manager position.  <u>See</u> Opp. at 19.  This is another red herring.

Both the individual interview "notes" (Pl. Ex. 24-35) and the interview schedule (Gov. Exh. 6) indicate that the interview questions were for a "Safety Specialist" position.  Ms. Mitchell had the interview notes with her during the interview.   Furthermore, the same questions were administered to all of the four candidates.  Def. Mot. at 8.  Therefore, all of the candidates

were subject to the same evaluation by Ms. Mitchell, regardless of whether she thought she was

interviewing them for a Management Analyst position.[7]

### 5.    Plaintiff's Interview Notes.

Plaintiff attempts to create an issue in genuine dispute by arguing that only Plaintiff's

notes were not produced in their entirety.  See Opp. at 20.  Without citing any legal authority,

Plaintiff appears to seek an adverse inference by arguing spoliation of the evidence.  Id. at 20-21.

Plaintiff's attempted argument fails as a matter of law.  Under the law, "the destruction of

notes or other documents purportedly relevant to a case of discrimination has no effect, except

when the circumstances of destruction provide a basis for attributing bad faith."  McIntyre v.

Peters, 460 F. Supp.2d 125, 138 (D.D.C. 2006) (internal quotations omitted).

Here, all of Plaintiff's interview notes were produced, except for the second page of Mr.

Huston's notes of Plaintiff's interview.  See Pl. Ex. 25.  However, Plaintiff has not made, or even

attempted to make, a showing of bad faith regarding Plaintiff's interview notes to mandate an

adverse inference based on the spoliation doctrine.  Indeed, Plaintiff neither moved to compel for

production nor propounded other discovery to determine the status of the second page of Mr.

Huston's notes on Plaintiff.  Without more, Plaintiff's argument is "a tempest in a teapot."

Plaintiff then argues that the panelists' interview notes do not reflect their assessment of

Plaintiff's interview in their declarations.  See Opp. at 21-22.  This is another red herring.

Although the interview notes did not contain specific negative comments about Plaintiff's

interview, all three panelists testified under oath and attested in their declarations that the

---

[7]    Without citing the record, Plaintiff claims that as further support of Ms. Mitchell's mistake, Defendant submitted "two different Job Descriptions."  See Opp. at 19. Plaintiff fails to identify the two job descriptions.

selectee performed better at the interview.  Def. Mot. at 8-10 (citing depositions and declarations).

### 6.     Plaintiff's Evidence of Discrimination.

In two short paragraphs, Plaintiff claims that there is a pattern of discrimination by pointing to three white females who were placed on a detail and later made permanent.  See Opp. at 23.  Plaintiff then argues that Defendant's own statistics show discrimination.  Id. at 24.

Plaintiff appears to use anecdotal evidence to create an impression that African-American males are subject to disparate treatment versus white females.  Id. at 23-24.  This Court has similarly rejected this type of "white washing" allegation.  See Brown, 437 F. Supp.2d at 135-36. Indeed, the Court noted that to use statistical evidence (i.e., white washing), a plaintiff must establish that his or her statistical comparisons are meaningful.  Id. at 136.  In Brown, the Court rejected the plaintiff's "anecdotal evidence" and held that the plaintiff's numbers did not offer a comparison of hiring statistics by an employer based on race.  Id.

Similar to the plaintiff in Brown, Plaintiff has offered nothing more than a few isolated anecdotal examples of promotions involving white females, without providing any significant statistical comparison (i.e, the applicant pool) to support an inference of discrimination.  See Harris v. Chao, 480 F. Supp.2d 104, 111 (D.D.C. 2007) (rejecting plaintiff's statistical evidence because plaintiff failed to present evidence of the applicant pool for these promotions).  In any event, the D.C. Circuit has cautioned against using statistical disparities as evidence of discrimination under Title VII because it could result in "the imposition of de facto quotas." Lutheran Church-Missouri Synod v. FCC, 154 F. 3d 487, 494 (D.C. Cir. 1998).

### 7.     Plaintiff Fails To Show Pretext.

As the Court correctly observed, "The employer is not required to support [its] reason with objective evidence sufficient to satisfy the 'preponderance of the evidence' standard." See Brown, 437 F. Supp.2d at 131 (Walton, J.) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). At all times, the plaintiff retains the ultimate burden of persuasion to demonstrate that he was in fact the victim of intentional discrimination. Burdine, 450 U.S. at 252-53.

Here, Plaintiff conclusorily argues that he has "produced, sufficient attacks on Defendant's credibility." See Opp. at 24. In fact, when asked for evidence of discrimination, Plaintiff repeatedly testified that he does not "recall" any evidence. For instance, Plaintiff testified to the following:

> Q.    I'm asking you as you sit here today, looking at the [interview] questions, do you have any belief that the questions discriminate against you based on your race and your gender?
>
> A.    I can't recall.

Hamilton Depo. at 59:12-18 (Gov. Reply Exh. 5).

In another instance, Plaintiff testified that Mr. Burns reeled his influence over the other two panelists but failed to describe the basis for that testimony. Hamilton Depo. at 59-69 (Gov. Reply Exh. 5). Later, when asked who allowed Mr. Burns to reel his authority over the other two panelists, Plaintiff testified that it was John Snow, the former Secretary to the Department of the Treasury:

> Q.   Who allowed Mr. Stuart Burns to do that, to reel his authority like you described?
>
> A.   The agency allowed him to do it.
>
> Q.   Who in the agency?

A.   The agency is who I'm suing.  They are responsible for the malicious action or discriminatory practices, and, therefore, the agency is who I'm suing because they are the one responsible for letting him do it.

Q.   Who are these people?  Who are the "they" that you're referring to?

A.   The agency.  I'm suing Snow, Secretary Snow.

Q.   So Secretary Snow is allowing Mr. Stuart Burns?

A.   Yes.  He is the defendant in this case.

Q.   Okay.  Aside from Mr. Snow, is there anyone else in the agency who allowed Mr. Stuart Burns to do what you just described?

A.   I have no -- I don't recall.

Hamilton Depo. at 90:9-91:6 (Gov. Reply Exh. 5).

In any event, the D.C. Circuit has admonished that "given the dynamic nature of the hiring process . . .[courts] will not second-guess how an employer weighs particular factors in the hiring decision." Jackson, 496 F. 3d at 709.  Here, Defendant relied upon the candidates' responses to the interview questions as a basis to make a hiring decision.  As explained in Defendant's Motion, after interviewing all four best qualified candidates for the position, the panel recommended Ms.Burrell and Ms. Carraway for the position.  Def. Mot. at 9-10.  Plaintiff was not even in the picture at the end of the interview process because the panelists uniformly believed that he did not perform well at his interview.  Def. Mot. at 8.  Mr. Burns, the selecting official, ultimately chose Ms. Burrell. Id. at 10.  Plaintiff has not pointed to any evidence in the record to controvert this legitimate, business reason of his non-selection.

21

**III.    Conclusion**.

For the foregoing reasons and those stated in Defendant's Motion for Summary

Judgment, the Court should grant summary judgment in Defendant's favor and dismiss this case

with prejudice.

Dated: November 13, 2007.                    Respectfully Submitted,


　　  /s/   Jeffrey A. Taylor　　　　　　　　
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


　　  /s/   Rudolph Contreras　　　　　　　　　
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

　　  /s/   John C. Truong　　　　　　　　　
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant