IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY HAMILTON,                          x
                                        :
            Plaintiff,                  :
    vs.                                 : Civil Action
                                        : No. 05-1549
JOHN SNOW, Secretary Department         :
of Treasury,                            :
            Defendant.                  x

Washington, D.C.

Thursday, August 24, 2006

VIDEOTAPED DEPOSITION OF:

GARY HAMILTON,

the plaintiff, was called for examination by counsel

for the defendant in the above-entitled matter,

pursuant to Notice and agreement of the parties as

to time and date, taken at the offices of the

United States Department of Justice, 501 Third

Street, N.W., Washington, D.C., convened at

approximately 10:10 o'clock, a.m., before Catherine B.

Crump, a court reporter and Notary Public in and for

the District of Columbia, when were present on

behalf of the respective parties:


GOVERNMENT EXHIBIT 5

Page 2

1  APPEARANCE OF COUNSEL:
2    On behalf of the Plaintiff:
3      THE GBENJO LAW GROUP
4      BY: ANNE J.A. GBENJO, ESQUIRE
5      8449 West Bellfort, Suite 100
6      Houston, Texas 77071
7      (713) 771-4775
8    On behalf of the Defendant:
9      U.S. DEPARTMENT OF JUSTICE
10     BY: JOHN C. TRUONG, ESQUIRE
11     501 Third Street, N.W., 4th Floor
12     Washington, D.C. 20530
13     (202) 307-0406
14 Also present:
15     David Voigtsberger, the Video Specialist
16           - 0 -

Page 3

1           I-N-D-E-X
2  Witness:                        Page:
3  GARY HAMILTON
4      Examination by Mr. Truong         5
5      Examination by Ms. Gbenjo       168
6      Further examination by Mr. Truong   183
7           - 0 -
8  Exhibits:  (Included in transcript)    Page:
9  HAMILTON EXHIBIT       MARKED FOR IDENTIFICATION
10     No. 1         21
11     No. 2         69
12     No. 3         70
13     No. 4         54
14     No. 5         92
15     No. 6         109
16     No. 7         117
17     No. 8         120
18     No. 9         135
19     No. 10        136
20           - 0 -

Page 4

1           P-R-O-C-E-E-D-I-N-G-S
2       VIDEOGRAPHER: Good morning. This is
3  the video deposition of Gary Hamilton taken by
4  counsel for the defendant in the matter of Gary
5  Hamilton v. John Snow in United States District
6  Court for the District of Columbia, Civil Action
7  05-CV-1549 RWR, held in the offices of the United
8  States Attorney's Office, 501 Third Street,
9  Northwest, Washington, D.C. on this date, August 24,
10 2006 and at the time indicated on the video screen,
11 which is 10:10 a.m.
12      My name is David Voigtsberger. I am the
13 video specialist. The court reporter today is
14 Catherine Crump from the firm of Carol Thomas
15 Reporting.
16      Counsel, please introduce yourselves and
17 who you represent.
18      MS. GBENJO: Good morning. My name is
19 Anne Gbenjo. I represent Mr. Hamilton, the
20 plaintiffs in this case.
21      MR. TRUONG: Good morning. My name is
22 John Truong. I'm the Assistant United States

Page 5

1  Attorney and I represent John Snow in this case.
2       VIDEOGRAPHER: Please swear the witness.
3  Whereupon,
4       GARY HAMILTON,
5  the plaintiff, was called to testify and after having
6  been first been duly sworn by the Notary Public, was
7  examined and testified as follows:
8       EXAMINATION BY COUNSEL FOR THE DEFENDANT
9  BY MR. TRUONG:
10 Q. Good morning, Mr. Hamilton.
11 A. Good morning.
12 Q. I know we met off camera before, but I
13 want to introduce myself. My name is John C Truong.
14 I'm the Assistant United States Attorney
15 representing the defendant in this case, and today,
16 I will be asking you a series of questions and that
17 you will provide answers to those questions.
18      Before we begin, I just want to know
19 have you ever been deposed before?
20 A. Only during the administrative
21 proceeding of this EEO complaint.
22 Q. So was that the only time you've been

Page 54

1  asked or that were posed to you during the
2  interview?
3      A. I don't recall.
4      Q. Do you believe that the interview
5  questions posed to you during the interview were
6  designed to discriminate against you based on your
7  race and gender?
8      A. I don't recall.
9      MR. TRUONG: Mr. Hamilton, what I'm
10 giving you is Exhibit 4, Hamilton Exhibit 4, in this
11 case.
12          [Hamilton Exhibit No. 4 was
13          marked for identification.]
14     MS. GBENJO: Let me see it.
15         [Mr. Troung presents a copy of the
16 exhibit.]
17     MR. TRUONG: For identification
18 purposes, Exhibit 4 has Bates No. HAM 0047 through
19 0048. It is -- the title of the document is called
20 "Questions for Safety Specialists Interviews".
21     BY MR. TRUONG:
22     Q. Now, Mr. Hamilton, I'm going ask you not

Page 55

1  to --
2      MS. GBENJO: This is Exhibit 2?
3      MR. TRUONG: Exhibit No. 4.
4      MS. GBENJO: How come I don't have two
5  and three?
6      MR. TRUONG: I haven't introduced them
7  yet. I will.
8      MS. GBENJO: It's out of order?
9      MR. TRUONG: So this is out of order.
10 That's correct. This is No. 4.
11     BY MR. TRUONG:
12     Q. Now, Mr. Hamilton, I don't want you to
13 be looking at the handwritten notes. That not the
14 point of this line of questioning. I want you to
15 look at the questions, and there are seven questions
16 on this document. Do you see that. Sir?
17     A. I see it has seven.
18     Q. Do you recall that these questions were
19 asked during your interview?
20     A. I don't recall.
21     Q. Let's look at -- do you recall whether
22 these questions -- strike that. Do you know whether

Page 56

1  these questions were designed to discriminate
2  against you based on your gender and your race?
3      MS. GBENJO: Objection. That's an
4  improper question. He will not answer that
5  question. He did not generate this. You would have
6  to ask the author of the document that question.
7      THE WITNESS: You would have to ask
8  whoever prepared this.
9      BY MR. TRUONG:
10     Q. Do you believe that the questions were
11 designed to discriminate against you based on your
12 gender and race?
13     MS. GBENJO: Objection. That calls for
14 a legal conclusion. He's not a lawyer.
15     BY MR. TRUONG:
16     Q. I'm asking for your belief, sir.
17     MS. GBENJO: Objection. It calls for ae
18 legal conclusion.
19     THE WITNESS: I don't recall.
20     BY MR. TRUONG:
21     Q. Okay. We can put Exhibit 4 away. You
22 don't recall or you don't know?

Page 57

1      MS. GBENJO: Objection. He already
2  answered the question. You cannot change his
3  response. That's a mischaracterization of the
4  witness' testimony.
5      BY MR. TRUONG:
6      Q. Let me rephrase that. I am asking for
7  your belief. Do you believe -- I'm asking for your
8  belief now. Do you believe that these seven
9  questions discriminate against you based on your
10 gender and race?
11     A. I don't recall.
12     Q. So you don't recall whether you had that
13 belief or you don't have that belief?
14     MS. GBENJO: Objection. He's already
15 answered the question.
16     THE WITNESS: I don't recall.
17     BY MR. TRUONG:
18     Q. You don't recall whether you have the
19 belief?
20     MS. GBENJO: Objection.
21 Mischaracterization of the witness' testimony. He
22 will not change his response. He's already answer

15 (Pages 54 to 57)

Page 58

1 the question.
2    MR. TRUONG: Counselor, I would greatly
3 appreciate it if you don't coach the witness on the
4 record and instruct the witness how to answer his
5 question. I have been very patient with your
6 speaking objections up so far.
7    MS. GBENJO: You did much worse during
8 the deposition of your witness.
9    MR. TRUONG: Fine. The record reflects
10 differently, but I would appreciate it if you would
11 let the witness answer the question asked.
12    MS. GBENJO: And he's doing that, but
13 you're trying to get him to change his response.
14    MR. TRUONG: I'm just trying to get
15 clarification from Mr. Hamilton.
16    MS. GBENJO: He's already answered the
17 question.
18    BY MR. TRUONG:
19    Q. Mr. Hamilton, do you recall -- strike
20 that. Do you have any belief at all whether the
21 questions discriminate against you based on your
22 gender and race?

Page 59

1    A. I do not recall.
2    Q. And this question is not about your
3 recollection. This is a question about as you're
4 sitting here today. Do you have any belief as
5 you're sitting here today that these questions
6 discriminate against you based on your gender and
7 race?
8    MS. GBENJO: Same objection. He's
9 already answered the question.
10    THE WITNESS: I can't recall.
11    BY MR. TRUONG:
12    Q. I'm asking you as you sit here today,
13 looking at the questions, do you have any belief
14 that the questions discriminate against you based on
15 your race and your gender?
16    MS. GBENJO: Objection. Asked and
17 answered a million times.
18    THE WITNESS: I can't recall.
19    BY MR. TRUONG:
20    Q. Do you believe -- as I understand it,
21 you've testified that you don't remember who the
22 panelists were; is that correct?

Page 60

1    MS. GBENJO: Let him think about the
2 question.
3    THE WITNESS: Yeah. I think I remember
4 Stuart Burns definitely, Paul Carroll.
5    MS. GBENJO: Do you understand the
6 question?
7    THE WITNESS: Can you repeat it, please?
8    BY MR. TRUONG:
9    Q. Sure. Who were the panelists who
10 interviewed you?
11    A. Paul Carroll, Stuart Burns, Tatika
12 Mitchell, and Mr. Houston.
13    Q. Okay. So let me clarify. So you
14 believe that Mr. Carroll, Paul Carroll, Mr. Stuart
15 Burns --
16    A. I'm sorry. That was a mistake. Paul
17 Carroll did not interview.
18    Q. So if I understand you correctly, the
19 three individuals who interviewed you were Mr.
20 Stuart Burns, Ms. Tatika Mitchell, and Mr. Houston;
21 is that right?
22    A. To the best of my recollection, yes.

Page 61

1    Q. Tell me do you have any belief whether
2 Mr. Tatika Mitchell discriminated against you based
3 on your race and gender during the interview?
4    A. I believe that Mr. Burns reeled his
5 authority over the entire advertisement,
6 recruitment, ranking, selection process in a
7 discriminatory motive based on sex and race.
8    Q. Leaving Mr. Burns aside, I'm asking what
9 is your basis or do you have any belief whether
10 Ms. Tatika Mitchell discriminated against you based
11 on your race and gender during the interview?
12    MS. GBENJO: Objection. He's already
13 answered the question.
14    THE WITNESS: Mr. Burns reeled his
15 authority with the interview panel and with the
16 rater.
17    BY MR. TRUONG:
18    Q. Okay. Let's talk about the interview
19 panel first and then we'll talk about the rater.
20 Okay. What kind of influence did Mr. Burns reel, to
21 use your word?
22    A. First, he chose a person to rate that

Page 62

1  violated the Merit Promotion Plan. The Promotion
2  Plan requires a person to be a subject matter
3  expert. Paul Carroll's testimony so far, to my
4  knowledge, he already revealed he's not.
5      Q. I'm asking about panelists. I know Mr.
6  Paul Carroll is the rating and ranking officer.
7  Let's not talk about Mr. Carroll right now. We will
8  talk about that in about five minutes or so. I'm
9  talking about the panelists. What is your basis or
10 facts or information that you have to lead you to
11 believe that Mr. Burns reeled his influence over
12 Ms. Tatika Mitchell?
13     A. Mr. Burns had an affair with
14 Ms. Burrell, and as I already stated, it only came
15 out later in the administrative process.
16 Ms. Burrell did not have sufficient education or
17 specialized experience. I had superior
18 qualification compared to her. I had Federal
19 Executive Leadership experience and training, 17
20 years specialized safety experience in the Federal
21 Government, and she's a white female, and there is a
22 disparate rate of promotion for whites in general

Page 63

1  compared to blacks and vastly disparate between
2  white female and black male.
3      Q. What does that have to do with anything?
4      A. And he had an affair, which only I
5  became knowledgeable of when I went to Dallas last
6  summer, and combine that with his reeling his
7  authority, engineering the makeup of the panel,
8  engineering the whole selection, recruitment,
9  advertisement, that is my basis.
10     Q. So what does that have to do with
11 Ms. Tatika Mitchell?
12     MS. GBENJO: Objection. He's already
13 answered the question.
14     THE WITNESS: I will repeat.
15     BY MR. TRUONG:
16     Q. No. Strike that. Just let me ask the
17 question. Did you observe Mr. Burns's influence, as
18 you said, over Ms. Tatika Mitchell during the
19 interview that you had in front of the panel?
20     A. I can't recall.
21     Q. Did you observe whether Mr. Burns reeled
22 his influence over Mr. Mike Houston during your

Page 64

1  interview with the panel?
2      A. I can't recall.
3      Q. Aside from your testimony about Mr.
4  Burns having an affair with Ms. Burrell, do you have
5  anything else to support your belief that Mr. Burns
6  reeled influence over Ms. Tatika Mitchell?
7      MS. GBENJO: Objection. The question is
8  vague. It is improper. It is overly broad.
9      THE WITNESS: I repeat my previous
10 answer.
11     BY MR. TRUONG:
12     Q. Leaving aside the --
13     A. She was part of the panel, and when I
14 say he reeled his authority, she's included.
15     Q. Okay. Are you done with your answer?
16     A. Yes.
17     Q. Do you know whether Ms. Tatika Mitchell
18 reports to Mr. Burns?
19     A. I don't recall. I don't know.
20     Q. Do you know whether -- strike that.
21 Leaving aside your testimony about the affair, what
22 other information do you have to lead me to believe

Page 65

1  that Mr. Burns reeled his authority or influence
2  over Mr. Mike Houston?
3      A. I would repeat the same question --
4  answer. Mr. Burns reeled his authority to
5  advertise, recruit, select the person for the job.
6      Q. I'm asking --
7      A. He reeled his authority on the panel,
8  and when I say panel, each one individually.
9      Q. How did he do that? How did he reel his
10 authority on the other two panelists?
11     MS. GBENJO: Objection. The statement
12 is self-explanatory. It requires no further
13 explanation.
14     THE WITNESS: His influence was the same
15 with each panel member.
16     BY MR. TRUONG:
17     Q. What influence was that?
18     A. I repeat myself: He reeled his
19 authority to engineer the outcome in a
20 discriminatory motive.
21     Q. What did Mr. Burns do to reel his
22 authority over the other two panelists?

Page 66

1    MS. GBENJO: Objection. Asked and
2 answered. You've already asked that question one
3 million times.
4    THE WITNESS: Mr. Burns engineered the
5 selection, the recruitment, the advertisement, the
6 entire process, selecting the panel members to reel
7 his influence and in such a fashion that was
8 discriminatory.
9    BY MR. TRUONG:
10   Q.  What did Mr. Burns say or do to Mr.
11 Houston --
12   MS. GBENJO: Objection.
13   BY MR. TRUONG:
14   Q.  -- to exhibit that Mr. Burns was
15 influencing Mr. Houston?
16   A.  He reeled his authority.
17   Q.  I'm not talking about the process. I'm
18 just talking about Mr. Houston alone.
19   MS. GBENJO: He's already answered the
20 question.
21   THE WITNESS: As part of the panel, each
22 one, including Mr. Houston, was influenced by Mr.

Page 67

1 Burns to discriminate.
2    BY MR. TRUONG:
3    Q.  Can you describe that influence? What
4 did he do to influence Mr. Houston?
5    A.  I repeat myself: Mr. Burns used his
6 authority, reeled his authority in a fashion and
7 developed -- he actually violated the Merit
8 Promotion Plan as a means to discrimination.
9    Q.  And can you describe to me how he
10 actually did that?
11   MS. GBENJO: Already asked and answered.
12 Objection again. He's answered that same question
13 10 times.
14   MR. TRUONG: I'd appreciate if counsel
15 does not assert a speaking objection.
16   MS. GBENJO: It's not speaking. This is
17 asked and answered a million and one times. He's
18 already answered the question. You asked him how he
19 used his influence. He said he used his authority.
20 He's already answered a million and one times.
21   BY MR. TRUONG:
22   Q.  Mr. Hamilton, please describe how Mr.

Page 68

1 Burns reeled his authority or influence on the other
2 two panelists.
3    MS. GBENJO: Objection again. Asked and
4 answered.
5    THE WITNESS: Mr. Burns reeled his
6 authority in the selection, recruitment,
7 advertisement, advertising the position, the entire
8 process in a discriminatory motive.
9    Q.  When you say in a discriminatory motive,
10 what does that mean?
11   A.  That means he did not hire an African
12 American that was superior qualified as opposed to a
13 white female that he had relations with,
14 extramarital relations with.
15   Q.  Were you present in the room when the
16 three panelists deliberated on the quality of each
17 of the interviewees?
18   A.  No.
19   Q.  Do you know whether Mr. Houston reports
20 to Mr. Burns?
21   A.  I don't recall.
22   Q.  Does Mr. Houston -- did Mr. Houston ever

Page 69

1 report to Mr. Burns?
2    A.  I don't recall.
3    Q.  Do you know where Mr. Houston worked?
4    A.  I don't recall.
5    Q.  Do you know where Ms. Tatika Mitchell
6 worked?
7    A.  I don't recall.
8    Q.  Do you know who Mr. Houston reports to
9 or reported to?
10   A.  I don't recall.
11   Q.  Do you know who Ms. Tatika Mitchell
12 reported to?
13   A.  I don't recall.
14   MR. TRUONG: What I'm showing you, Mr.
15 Hamilton, is Exhibit No. 2.
16        [Hamilton Exhibit No. 2 was
17        marked for identification.]
18   MR. TRUONG: For identification
19 purposes, Exhibit No. 2 is plaintiff's responses to
20 defendant's first set of interrogatories and first
21 request for production of documents. In that vein,
22 I'm going to introduce to you Exhibit No. 3, which

Page 90

1  ago.
2  A. The only thing I might add to that, in
3  addition to what I already said, was that Stuart
4  Burns was allowed to reel his authority to select,
5  to detail, or assignment, when you use the word
6  "assignment" and "detail", what's the difference?
7  They can put it on their resume and say this is
8  qualified experience, one year.
9  Q. Who allowed Mr. Stuart Burns to do that,
10  to reel his authority like you described?
11  A. The agency allowed him to do it.
12  Q. Who in the agency?
13  A. The agency is who I'm suing. They are
14  responsible for the malicious action or
15  discriminatory practices, and, therefore, the agency
16  is who I'm suing because they are the one
17  responsible for letting him do it.
18  Q. Who are these people? Who are the
19  "they" that you're referring to?
20  A. The agency. I'm suing Snow, Secretary
21  Snow.
22  Q. So Secretary Snow is allowing Mr. Stuart

Page 91

1  Burns?
2  A. Yes. He is the defendant in this case.
3  Q. Okay. Aside from Mr. Snow, is there
4  anyone else in the agency who allowed Mr. Stuart
5  Burns to do what you just described?
6  A. I have no -- I don't recall.
7  Q. Do you know who Camille Caraway is?
8  A. Yes, I do know who Camille Caraway is.
9  Q. Did she apply for the position that Ms.
10  Burrell ultimately received?
11  A. Yes.
12  Q. Did she get the job? Obviously not; is
13  that correct?
14  A. It's irrelevant whether she got job
15  because Stuart Burns was having affair with Annette
16  Burrell. So, therefore, it is irrelevant, and also
17  she's a white female and I'm a black male, and my
18  charge is a pattern and practice of gross disparate
19  promotion rate that goes unfettered.
20  Q. Let's talk about that.
21  A. Excuse me. Secretary Snow is the
22  defendant I am suing.

Page 92

1  Q. Okay. Let's talk about the practice and
2  pattern I believe you mentioned. If I may refer you
3  to Exhibit No. 5.
4  MS. GBENJO: Did you give me that?
5  MR. TRUONG: I believe I did, Ms.
6  Gbenjo, but I can check and I have an extra copy I
7  can give to you. I believe I did.
8  [Hamilton Exhibit No. 5 was
9  marked for identification.]
10  MR. TRUONG: For purposes of
11  identification, exhibit 5 has Bates No. HAM 0554
12  through HAM 05062, and it is the unsworn declaration
13  of Mr. Gary Hamilton.
14  MS. GBENJO: Did I get that? Let me see
15  what it looks like to see if I've got that.
16  BY MR. TRUONG:
17  Q. Go ahead and start reviewing the
18  document, sir. I think we can make this very
19  quickly, because I only have a couple of questions
20  about the document. If you flip to page 0560, do
21  you see that, sir?
22  A. One second, please.

Page 93

1  Q. Okay.
2  A. Zero what?
3  Q. 0560.
4  MS. GBENJO: Let me quickly look at that
5  page.
6  BY MR. TRUONG:
7  Q. Is that your signature?
8  A. That is my signature.
9  Q. And flip back to this first page of the
10  document, and this is your declaration that you gave
11  during the administrative process; isn't that right,
12  sir?
13  A. This is the document I gave during my
14  administrative process.
15  Q. Okay. Let's flip to page 0559, and at
16  the bottom of the page where it says AWSS Corporate
17  Workforce Promotion Data, do you see that, sir?
18  A. Um-hum.
19  Q. And I believe the information you
20  provided was in response to Question No. 12 on the
21  document. If you can flip the page over, you'll see
22  that. Is that right, sir?