THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

```
******************************** *
GARY HAMILTON,                  *
Plaintiff                       *
                                *
v.                              *        CASE NO.: 05-cv-1549 (RBW)
                                *
JOHN SNOW,                      *
Defendant                       *
***********************************
```

## PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff, by and through counsel respectfully moves this Court to reconsider its dismissal of Count I of Plaintiff's Complaint and for reasons states that while Plaintiff understands that motions for reconsideration are generally disfavored, he believes that the court should be presented with the opportunity to most carefully weigh its judgment and reconsider its ruling on Count I of this case. No umbrage is intended, it appears however that the court virtually abandoned its role as a neutral and disinterested arbiter and advocated for the Defendant throughout the opinion as it relates to Count I. Likewise, it appears that the Court more than bent over backward to find or create reasons and explanations for the Defendant's conduct or position even in instances where Defendant lacked explanations or reasons and could not counter Plaintiff's arguments in his Opposition to the Defendant's motion. Nonetheless, for the reasons stated below, Plaintiff humbly implore the Court to reconsider its rulings.

### Count I - Plaintiff's Discrimination Claim

**The Court Fails to Recognize The Fact Not Only That Burrell's Untimely Application Should Never Have Been Considered, But Also The Fact That Burrell Did Not Possess The Requisite "Specialized Experience" Under OPM Qualification Standards[1] for General Schedule Positions To Be Placed In The GS-14 Safety Manager Position**

---

[1] REQUIREMENTS FOR GS-0018: SAFETY AND OCCUPATIONAL HEALTH MANAGEMENT SERIES, SECTION IV-B OF THE OPERATING MANUAL FOR QUALIFICATION STANDARDS FOR GENERAL SCHEDULE POSITIONS (P.IV-B-5), UNITED STATES OFFICE OF PERSONNEL MANAGEMENT OPERATING MANUAL, QUALIFICATION STANDARDS FOR GENERAL SCHEDULE POSITIONS.

Plaintiff finds it almost appalling that the Court found that Burrell "supplemented" her application on June 5, 2003.  Specifically, the opinion reads: "the undisputed evidence in the record suggests at most that Burrell submitted her application on May 13, 2003, and supplemented it with her latest performance appraisal on June 5, 2003"  (See opinion at 18).  First of all, the Job Announcement in the instant case requires that application package be submitted by the deadline of May 19, 2003. ***Exh. 16.***[2]  Burrell did not submit a complete package until after the deadline had passed  and yet she was selected for the position. ***Exh. 40; Exh. 4 @ 79: 14- 80- 14***.  The job announcement in this case was specific with respect to what had to be submitted by the deadline and provides no exception for anyone.  Nor is there anything in the   job announcement that allows for supplementing an incomplete application.  However, the Court adopted the Defendant's initial explanation on this issue to the effect that Burrell supplemented her application on June 5, 2003 - despite the Defendant's own testimony to the effect that application packages that are untimely should never be considered. ***Exh. 2 @ 152: 7-10***. .

Even more interesting about this initial explanation is the fact that, in his Response to Plaintiff's Motion to Strike, Defendant withdrew his argument relating to Burrell's ability to supplement her application within ten (10) days as a union member. (Def's Reply @ 16-17; Def's opp to Pla's mtn to strke @1 ).  Specifically, Defendant withdrew that argument  because Plaintiff debunked it by demonstrating that the portion of the Union Agreement on which the Defendant relies does not in any way apply to Burrell's situation.  At that juncture, Defendant changed its argument  (as Plaintiff had predicted), and argued that the panelist played no role in

---

[2]The exhibits referenced herein are those submitted with Plaintiff's Opposition to Defendant's Motion for Summary Judgment or with Plaintiff's Supplemental Opposition to Defendant's Motion for Summary Judgment.

processing the applications. (Def's opp to Pla's mtn to strke @ 4).

Significantly, the Court disregarded the crucial fact that Burrell, by her own admission, did not possess the requisite "specialized experience" to be classified at the GS-018-14 level ( **Pla. Suppl. Opp to Def's Mtn. For Sum Jmt. @ 1-2; Exh. 4 @ 134: 1-15)** as required by the OPM and 5 CFR part 300 referenced in Defendant's IRM.[3]  In contrast to that, Plaintiff satisfies that requirement as he was a GS-13 for over 10 years in the Safety field (**Exh. 39 @ 12-14).** These facts are clear and uncontradicted in the record.  It appears however that the Court did not give appropriate weight to Plaintiff's experience as a Certified Industrial Hygienist, particularly as described under the "Specialized Experience" under the OPM requirements.  The Court would probably have reached a different conclusion if it did.

Notwithstanding that, even if it is actually true that Burns or any of the individuals involved in the selection process knew nothing about the tardiness of Burrell's application package (which is doubtful), since everyone involved in the selection process reviewed and considered the application package, they all or at least most of them should have noticed that Burrell did not qualify to be considered for the position because she did not have the requisite specialized experience required by federal laws.  So far, nothing in the record explains away this critical issue.  Nor is there anything under federal law that provides for an exception under which Burrell falls. None of the authorities on which the defendant or the Court relies stands for the proposition that application packages that miss the deadline or candidates who do not satisfy the requisite specialized experience may be considered for a vacant position.  Thus, Burrell's

---

[3]Plaintiff submits that fairness dictates that the Court have equally taken judicial notice of this regulation even if it has not been included in the briefs at all since the Court was kind or generous enough to take judicial notice of other regulations in its opinion.

application packaged should never have been considered at all.  To contend otherwise would be tantamount to saying that all the people who reviewed the application packages did not pay attention to who did or who did not qualify for the position or qualify to be considered for the position. One would have to assume an incredible set of coincidences to conclude that everyone at the administrative level, ranking and selection level made a mistake in not noticing the tardiness of Burrell's package and that they all also made a mistake in not noticing her ineligibility for consideration for the position. With that sort of conclusion, no discrimination case will ever go to trial. *Aka*   But the Court did not address this issue at all and Plaintiff humbly requests that the Court reconsider its ruling on this count.

## The Court Failed to Consider Other Evidence of Discrimination

In this case, though Plaintiff presents other evidence of discrimination, the Court disregarded them but selectively commented on Plaintiff's statistical evidence.  The uncontradicted evidence of discrimination that Plaintiff presents include the facts that: Plaintiff himself observed three white females ( Annette Burrell, Sabrina Rutland and Charlotte Phillips) placed on detail and eventually made permanent. *Exh. 58; Exh. 9 ¶22*; the Ranking Official's testimony that a white female's (Burrell's) detail helped  her score high in the ranking phase of the selection *Exh. 13 @ 3 (* she made the Best Qualified List, and subsequently a permanent position); Another white female (Camille Caraway) promoted within the first year of her employment. *Exh. 7 @ 32: 16 - 33:10;* Yet another white female, Barbara Goulding selected over Plaintiff to lead the  Revision of the Safety Inspection Program ("RSIP") . **Exh. 9 ¶30;** Burrell, a white female asked to continue a detail that should have been made competitive at the time. *Exh. 4 @ 111: 18 - 112*; a white female, Camille Caraway asked what could be done to make her permanent in the higher position she was detailed to  in 2004. *Exh. 7 @ 10:21 - 11: 1-4.*  Again, these facts are all undisputed in the record.  On the other hand, however, Plaintiff, a black male who

4

consistently expressed interest in a GS-14 position for four years, and several other black females, for example, Bellinda Sellers and Theresa Herbert, who expressed similar interests were overlooked for promotion. ***Exh.9¶ 22; Exh. 58***.  The Court did not opine that these facts are irrelevant or immaterial but has disregarded them totally.  Plaintiff humbly asks that the Court reconsider its ruling on this issue. Reconsideration is in order where, as here, the Division where Plaintiff worked and specifically, the Selecting Official routinely selects white female candidates over Plaintiff, a black male.  He did so with Burrell, Goulding and Carraway, within months - and when Plaintiff has expressed interest in the positions.  Plaintiff submits that the Court is required to construe the totality of the facts of this case and not a selective portion thereof.  In discrimination cases, "the central focus of the inquiry … is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." ***Brown*** citing ***Furnco Constr. Corp. v. Waters,*** 438 U.S. 567, 577 (1978).  Relevant to demonstrating pretext might include a showing that people outside Plaintiff's protected class did not receive the same adverse action received by the plaintiff; facts as to the employer's treatment of the plaintiff during the term of employment; and the employer's practice with respect to employment of minorities. ***Parker v. HUD***, 891 F.2d 316, 322 (D.C.Cir.1989).

Similarly, in ***Czekalski, v. Peters,*** 475 F.3d 360 (D.C. Cir. 2007), the D.C. Circuit gave great weight to Plaintiff's independent evidence of discrimination where the discriminating official harbored discriminatory attitudes toward Plaintiff and people of Plaintiff's protected class despite the defendant's evidence that the same discriminating official selected that Plaintiff for the position of Director, and subsequently recommended that Plaintiff for a Senior Executive Service pay level increase.  The D.C. Circuit concluded that Plaintiff's independent evidence of discrimination was probative evidence and that the defendant's evidence was not sufficient to keep

the case from the jury.

### The Court Addressed The Subjectivity Of The Selection Process In A Footnote

The Court misses Plaintiff's point as it relates to the ranking of the candidates. Plaintiff's point is that, with his background, both technical, educational or otherwise, he is more qualified for the position and should have scored much more than the other candidates, not just Burrell. However, because, among other facts, the Ranking Official was not a subject matter expert in the position announced, he was not properly suited to conduct the ranking and ignorantly ranked the candidates inappropriately - not just that he was "unduly generous in also awarding Burrell a perfect score" as the Court opined. Aside from admitting that he was not a subject matter expert in the safety field, the only explanation the Ranking Official gave was that the ranking was subjective. Evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination, *Fischbach v. D.C. Dep't of Corr.,* 86 F.3d 1180, 1183 (D.C. Cir. 1996) see *Parker v. HUD*, 891 F.2d 316, 322 (D.C.Cir.1989)."

Similarly, despite the Defendant's admission that its selection process, both in pre-interview ranking and at the interview phase was purely subjective *Exh. 3 @ 44:1-3*; *Exh. 2 @ 124: 22- 125:7,* the Court downplays the admission and addresses the subjectivity of the selection process in a footnote. See opinion at 22. Yet in the same opinion, the Court itself cautioned (in dicta) against addressing {substantive} issues in the foot note. Id. at 7. The D.C. Circuit has consistently held that heavy reliance on subjectivity is suspect and could be indicative of discrimination. In all the cases that the Defendant and the Court cited, there were yardsticks against which the candidates were measured and which the D.C. Circuit used in its analysis. For example, in *Jackson v.*

*Gonzalez*, 496 F.3d 703, 707 (D.C. Cir. 2007), the Plaintiff received a total score of 43 while the selected applicant received 73; For another example, in *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), the Plaintiff's score was 70.76 and the selected applicant's score was 77.67.   Likewise, in *Brown v. Small*, 437 F. Supp. 2d 125 (D.D.C. 2006), this particular court considered the fact that the Plaintiff's score was in the 20s while the selected applicant score was in the 40s to 50s; to mention but a few.   In addition to that, each of the cases was specific with respect to what their Plaintiffs' deficiencies were.   The only thing we have in the instant case however is that the   Plaintiff's interview did not go "very well" *(Exh. 10 @ 2)*.   None of the people in the selection process could state specifically how it did not go well or which questions, if any,   Plaintiff had problems answering or which responses of the Plaintiff to their questions, were difficult to follow.   Plaintiff submits that this is akin to the "highly subjective" criteria, such as "interpersonal skills,"  which the D.C. Circuit and others have cautioned against as they could support an inference of discrimination.   Consequently, it is difficult to see or determine  how the Court could have found that the Defendant's reliance on subjective considerations here was other than heavy and absolute given the facts of this case.   While "employers may of course take subjective considerations into account in their employment decisions, courts traditionally treat explanations that rely heavily on subjective considerations with caution." *Aka v. Washington Hospital Center,* 156 F.3d 1284 (D.C. Cir. 1998).

### The Court Played Down Plaintiff's Evidence

In conjunction with the above facts, the court played down virtually all of Plaintiff's evidence.   For example, in his opposition, Plaintiff demonstrates how, during Burrell's deposition, Burrell was unable to answer certain questions relevant and material to the safety

field.  On this point, again in a footnote, the Court opines that "What little relevancy this line of questioning might have had is nullified by the absence of any indication in the record that the plaintiff could have answered these questions extemporaneously, either." Opinion @ 13 fn10. What is clear on the record however, is that Burrell was deposed seven (7) days before Plaintiff. See ***Exhs.1& 4***.  Thus, nothing precluded Defendant from asking Plaintiff much tougher questions on safety at the time of Plaintiff's deposition.  That, for example, would have been a way of testing Plaintiff's knowledge on safety issues or show that he also would not have qualified for the position.  It appears that since Defendant could not counter that point, the Court assisted him to explain it away - after the fact.

Obviously, Defendant chose not to test Plaintiff's knowledge because his background speaks for him.  On the record, Plaintiff's educational background, certification and other qualifications make his credentials more superior for the position than Burrell's.  Though the Ranking Official testified and the Court impliedly adopted his testimony to the effect that no weight be given to the candidates' educational background, Plaintiff humbly submits that this is error.  The dissenters in ***Aka*** gave no weight to ***Aka's*** superior education because there were no educational prerequisites listed in the job description. The ***Aka*** Court  however opined that *reasonable employers do not ordinarily limit their evaluation of applicants to a mechanistic checkoff of qualifications required by the written job descriptions. Obviously, they will take additional credentials into account, if those credentials would prove useful in performing the job*.  Thus, since the position at bar requires, inter alia, advising management on *most complex safety matters* and serving as a technical authority in assignments requiring the application of new theories and development of safety problems not susceptible to treatment by accepted safety

methods and procedures, it is virtually impossible to see how Plaintiff, with his Master's degree
and board certification as an Industrial Hygienist would not have made him more suited for the
position than Burrell, who had just a high school education, never mind the fact that she was not
qualified to be considered for the position in the first place.

Aside from that, the Court found irrelevant or immaterial, inter alia,  Plaintiff's evidence
relating to: (a). The absence of a personnel member at the interview. On this point, it is difficult
to see how the Court concluded that this fact does not change the analysis, especially given the
fact that the sole purpose of having a personnel member at the interview is to remove the
appearance of bias and eliminate discrimination so that the candidates can be given a fair
interview.  (b). A panelist' belief that she was interviewing the candidates for a different position.
By the same token, it is almost impossible to see how the Court concluded that this fact is
irrelevant when the interview panel must consist of no less than three members. Clearly, if a
panelist had a totally different position in mind when she interviewed the candidates, her vote
should not count and there would not have been a quorum for the interview.  (c). The loss of
portion of Plaintiff's interview notes, which the Defendant is supposed to maintain for two years.
On this point, the Court notes that Plaintiff failed to "specify which, if any, agency regulation
compels this policy." See opinion at 24.  This is an indication either that the Court did not read
the entire record or simply overlooked the portion of Plaintiff's exhibit in which the policy is
stated.  This was Plaintiff's Exhibit 43(a) last page.

In **McIntyre v. Peters**, 460 F. Supp. 2d 125, 138 (D.D.C. 2006), the defendant failed to
retain portions of the Plaintiff's interview notes. Though the **McIntyre** Court found that, that fact
alone does not raise and inference of discrimination but concluded that "Nevertheless,

defendant's failure to follow its own policy requiring the retention of employment decision documents ...when viewed in light of plaintiff s other evidence of pretext, raises a credibility question that is properly left to the jury. *See Lathram* **v.** *Snow,* 336 F.3d 1085, 1093 (D.C. Cir. 2003) (holding that an agency's departure from it normal procedure without justification "can justify an inference of discriminatory motive"); *Johnson* **v.** *Lehman,* 679 F.2d 918, 922 (D.C. Cir. 1982) (noting that although "a failure on the part of the ... employer to follow its own regulations and procedures, alone, may not be sufficient to support a finding of... discrimination," such a failure "is a factor that the trier of fact may deem probative ... in determining the true motivation behind the hiring decision." The Defendant in this case has neither contended nor asserted that any of its deviation from procedure is routine or that by so deviating, it committed any error. Neither has the Defendant given any explanation for its deviation from protocol. Similarly, the totality of the flaws, inconsistencies, incongruities and discrepancies identified or proven by Plaintiff in this case altogether make this case one for the jury. (d) The absence of the reasons for Plaintiff's rejection in the panelists' interview notes. In *Aka*, the D.C. Circuit notes that in a jury's eyes, this type of omission might also count as evidence that the panelist' account of the interview was invented after the fact. (e). The numerous contradictions or incongruities in the panelists testimony. It is almost impossible to determine how the Court arrived at giving no weight to the fact that none of the panelists' notes reflect the complaint they had about Plaintiff's interview, especially where the notes in some instances reflect their comments on the candidates' responses to their interview questions. However, the Court concluded inter alia, either that their recollection was simply wrong or that it was a product of Plaintiff's selective use of the record or that they were a product of mistake on the part of the Defendant - though Defendant never argued

10

or asserted he made any mistake of any sort.  Nonetheless, it is impossible to see how the court

could have arrived at these conclusions without engaging in credibility determinations and the

weighing of evidence  - both of which the Court is prohibited from doing at this stage of the

litigation.  Moreover, it is unclear how any party or court could draft a brief or an opinion, citing,

using or referencing the entire record in any one  - as opposed to citing a selection of the record.

 Additionally, in addressing the interview process in this case, the Court  relies heavily on

*Fischbach* which was decided at least two years before *Aka,  v. Washington Hospital Center,* 156

F.3d 1284 (D.C. Cir. 1998) and at least nine years before *Salazar* **v. WMATA,** 401 F.3d 504, 508-

09 (D.C. Cir. 2005). Plaintiff incorporates herein, his argument in his Opposition to Defendant's

Motion for Summary Judgment as to how this case is distinguishable from *Fischbach* **& Small***;*

and how it shares some of the issues in *Salazar* and *Aka*   The more recent cases fully address the

issues in this case and the Court failed to apply the standard in those cases.  For these reasons,

Plaintiff humbly requests that the Court reconsider its ruling on this case.

Above all, "when taken together, the factual issues raised by the plaintiff, any one of

which might well be insufficient by itself, provide sufficient evidence to allow a reasonable juror

to conclude that defendant's proffered reasons for plaintiff's non-selection were pretextual. *See*

*Byrnie* **v.** ***Town of Cromwell Bd. of Educ.**,* 243 F.3d 93, 102, 107 (2dCir. 2001) (holding that a

plaintiff's "mixed bag of evidence" undermining employer's proffered justification for non-

selection ~ including destruction of notes, predominance of subjective hiring criteria, and reliance

on "poor interviewing skills" explanation ~ "is adequate to defeat summary judgment")."

*McIntyre* .

## Conclusion

_____ For the reasons stated herein, Plaintiff prays that this Court reconsiders its position on the ruling issued on April 3, 2008 on the Defendant's Motion for Summary Judgment as it relates to Count I of Plaintiff's Complaint.

Respectfully submitted,

**THE GBENJO LAW GROUP**

_____
/s/
Anne J.A. Gbenjo, Bar #: 447840,
8449 West Bellfort Avenue
Suite 100
Houston, Texas 77071
Phone: 713-771-4775
Fax: 713-771-4784
Counsel for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT, on this 17th day of April 2008, I sent via first class and E-filing a copy of the foregoing Motion to all parties as follows: John C. Truong, Esquire, 555 4th Street N.W. Washington, D.C. 20001

_____
/s/
Anne Gbenjo

12

IN THE UNITED STATED DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

```
*******************************     *
GARY HAMILTON,
Plaintiff                           *
v.
                                    *    CASE NO.: 05-cv-1549 (RBW)

                                    *

JOHN SNOW,                          *
Defendant                           *
*******************************
```

## <u>ORDER</u>

Upon consideration of Plaintiff's Motion for Reconsideration, good cause having been shown, it is this _____ day of _____, 2008, hereby

ORDERED, that this motion is **GRANTED** and the ruling issued on April 3, 2008, on Count I of Plaintiff's Complaint is hereby **RECONSIDERED AND REVERSED**.

_____

JUDGE R.B. WALTON

COPIES TO:

ANNE GBENJO, ESQUIRE

JOHN TRUONG, ESQUIRE.

13