THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

```
********************************* *
GARY HAMILTON,                    *
Plaintiff                         *
                                  *
v.                                *    CASE NO.: 05-cv-1549 (RBW)
JOHN SNOW,                        *
Defendant                         *
***********************************
```

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff, by and through counsel respectfully files his Reply to the Defendant's Opposition to Plaintiff's Motion for Reconsideration and states that, in opposing the Plaintiff's Motion for Reconsideration, Defendant fails to attack Plaintiff's most important reason for requesting the reconsideration and fails to counter the argument that the Court committed error in improperly adopting certain abandoned arguments and improperly adopting certain erroneous testimony in the case. For these reasons, Plaintiff humbly requests that the Court reconsiders its position to prevent manifest injustice in this case.

## BACKGROUND

For historical facts or background, Plaintiff once again, incorporates herein and refers the Court to all the pleadings or documents that form the basis of Plaintiff's Motion for Reconsideration. This includes: Defendant's Motion for Summary Judgment; Plaintiff's Opposition to Defendant's Motion for Summary Judgment; Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment; Plaintiff's Motion to Strike; Defendant's Opposition to Plaintiff's Motion to Strike; Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Strike; Order issued on March 28, 2008; Memorandum and Opinion issued on April 3, 2008; and Plaintiff's Motion for Reconsideration filed on April 17, 2008.

## ARGUMENT

## DEFENDANT FAILS TO ATTACK OR REFUTE THE MOST IMPORTANT BASIS FOR PLAINTIFF'S MOTION FOR RECONSIDERATION

Of all the reasons listed, the most important basis for Plaintiff's Motion for Reconsideration is the Court's failure to address the issue dealing with Burrell's ineligibility for consideration for the position in controversy in Count I of Plaintiff's Complaint. The issue being that Burrell did not possess the requisite "specialized experience" under OPM qualification standards for general schedule positions to be placed in the GS-14 safety manager position. As it already stated, the Defendant completely, woefully and utterly fails to attack this point and provides no justification, mitigation or excuse for its decision. Indeed, not only did the Court omit or fail to address this pivotal, crucial and material issue, the record is patently devoid of any explanation by the Defendant on the issue. It needs no argument therefore, to conclude that the people involved in the selection process reviewed the application packages of the candidates, knew that Burrell did not satisfy the eligibility for consideration requirement, but proceeded to promote her nonetheless.

Consequently, it will be more than strange and contradictory for the Defendant to argue to the contrary, where as here, the Defendant argues that the panelists are experienced; and particularly where a panelist, noted in her affidavit that Plaintiff "has strong skill set" and another panelist, the selecting official noted that Plaintiff is arguably "technically more qualified" than Burrell (***Exhs.10-12***)[1]. By the Defendant's own admission, all these panelists have been with the

---

[1]The exhibits or exhibits numbers referenced herein are those submitted with Plaintiff's Opposition to Defendant's Motion for Summary Judgment or with Plaintiff's Supplemental Opposition to Defendant's Motion for Summary Judgment

government for decade(s).  More than that, in its Responses to Plaintiff's Discovery Request,

Defendant admitted that the panelist reviewed considered the candidates application packages

(***Exh.36)***. These packages clearly show the number of years each candidate held a position and

their grade levels.  Thus, if there was error anywhere, at least one of panelist would have caught

it.  Therefore, the inescapable reason for the Defendant's failure to attack, controvert or refute

this point is simply that there is absolutely nothing to say to the contrary. Essentially, there is

nothing in the record that exempts Burrell from this crucial requirement. Consequently, there is

no reason for the Court to do the same.  Plaintiff once again submits that this is clear error and

the Court should reconsider its position to prevent manifest injustice.

### DEFENDANT FOCUSES EXCESSIVELY ON FORM RATHER THAN SUBSTANCE

_____Rather than attack or focus on addressing the points and arguments in Plaintiff's Motion

for Reconsideration, Defendant expended several pages of its opposition on addressing the

applicability of Federal Rules 54 and 59.  In fact, Defendant took pains to decipher and decode

Rules 59 and Rule 54.  It then argues that since Plaintiff filed his motion within ten days of the

opinion issued in this case, it is arguably a Rule 59(e) motion. Of course the only issue is whether

Plaintiff could file the motion as a matter of right or whether the motion was improperly filed.

Plaintiff submits that the motion was in order. Plaintiff was obviously more concerned with

straightening the record or identifying the errors and omissions in the Memorandum of April 3,

2008 than anything else.[2]   Essentially, Defendant focuses  excessively on technicality rather than

---

[2]By the way, when was the last time the defendant filed a motion for extension of time and cited
Rule 6(b)? It has not done so almost forever because the motion speaks for itself and the rule that applies
is common knowledge. (Defendant's assertion is no less than saying a court's memorandum of opinion
on a motion is invalid unless the court spells out the standard for ruling on the motion therein.)  To be
sure, by no means does this imply or suggest that counsel's obligation to cite the applicable rule when

actuality; and on form rather than substance.

Similarly, in focusing excessively upon form rather than substance in its recitation of the background of this case, Defendant fails to recognize the fact that the Court set a deadline for Plaintiff to amend his Complaint. By so failing, Defendant states "The Court however did not set a deadline for Plaintiff to amend his Complaint." (See Opposition at 3). This is clear indication that Defendant does not pay attention to the facts and consequently the appropriate application of the law in this case. The Memorandum to which the Defendant alludes was preceded by an "ORDER" of March 28, 2008. That Order, inter alia, clearly states that "**ORDERED** that within <u>thirty days of</u> the date on which this order goes into effect the plaintiff shall file {her?} amended complaint, if any {s/he} intends to file, in conformance with the Court's directive in the accompanying memorandum opinion to be issued forthwith." See Order of March 28, 2008 (Dkt. No. 64). Running out of argument while focusing on the wrong rather than right, however, Defendant erroneously states that the Court "did not set a deadline for Plaintiff to amend his Complaint." As a matter of fact, Plaintiff, amended his Complaint within the thirty-day period, in obeisance to that order of March 28, 2008.

Additionally, contrary to the Defendant's assertion, Plaintiff did not merely "regurgitate his opposition to Defendant's motion for summary judgment." Rather, the Motion for Reconsideration was Plaintiff's way of giving the Court an opportunity to reconsider its position on what it previously overlooked, failed to consider or misunderstood. For example, among other things, the Court overlooked Burrell's ineligibility for consideration for the permanent GS-14 position in controversy by failing to address the issue of the "specialized experience"

---

filing a motion is extinguished because the rule is common knowledge.

requirement under the OPM qualification standards[3].  Interestingly, Defendant has neither denied

that the Court failed to address this crucial issue.  Nor has the Defendant advanced, adduced or

proffered any reason to support its decision, as it relates to the OPM requirement. Addressing

that issue, for example will [arguably] prevent manifest injustice wrought upon Plaintiff by the

omission.

### DEFENDANT MISCONSTRUES AND DISTORTS THE RECORD AGAIN

Once again, Defendant distorts the record[4].  In addressing the issue of the timeliness of

Burrell's application package in its opposition to the Plaintiff's motion for reconsideration,

Defendant states "as the Court correctly observed, the June 5, 2003 date has nothing to do with

the date of Ms. Burrell's application. (See Opposition @ 7 last ¶ ).  However, this was the

argument the Defendant itself (not the Court) made in its Reply brief. (See Def's Reply @ 16-

17).  In truth, the Court's Memorandum of April 3, 2008 simply states: "Thus, the undisputed

evidence in the record suggests at most that Burrell submitted her application on May 13, 2003,

and supplemented it with her latest performance appraisal on June 5, 2003." (See Memo. @ 18

first ¶).   As Plaintiff already stated in his Motion for Reconsideration, this particular part of the

Court's opinion, mirror's the exact argument that the Defendant initially made in its Reply brief.

However, when Plaintiff filed his Motion to Strike and exposed the impossibility and

---

[3]For another example, the Court adopted the Defendant's erroneous assertion that Plaintiff raised
the issue about Burrell's year 2002 detail for the first time in his Opposition to Defendant's Motion for
Summary Judgment and that he did not exhaust his administrative remedies on that issue. Yet not only
did Plaintiff made the allegation in his Complaint, Defendant inquired extensively into the issue at
Plaintiff's deposition, and Plaintiff confirmed that he was making that claim in this case - both of which
are evident in the record.

[4]Or should one say Defendant was again not paying attention to the facts and record in this case.

inapplicability of the Defendant's theory on "supplementing" the application,[5] Defendant

withdrew that argument and stated thereafter that the panelists had no control over the

untimeliness of Burrel's application[6].(See Defendant's Opposition to Plaintiff's Motion to Strike

- pg1).  Overlooking this fact, however, the Court adopted in error, the abandoned and withdrawn

argument of the Defendant's, and opined that Burrell "supplemented" her application with her

performance appraisal on June 5, 2003. Id. *Singh v.George Washington Univ*., 383 F. Supp. 2d

99, 101 (D.D.C. 2005)  Errors of apprehension may include [the] Court's failure to consider

controlling decisions or data that might reasonably be expected to alter the conclusion reached by

the Court.

Though Defendant's purported argument in this regard is a distortion of the record, it

appears however that, cognizant of the error on the Court's part, Defendant tries to "perfect" the

record by stating the Court "observed" what the Court clearly omitted. With all of its assertions

on what happened to the application or how it was a "post it" used by someone else, Defendant is

yet to procure an affidavit from all the people it listed were involved. Thus, other than its bald

---

[5]In Section II(D)(3) of its Reply brief, however, Defendant in attempting to explain away the tardiness of Burrell's application package, introduces the Union Agreement (Def's repl. Exh. 4) and argues that, under that Agreement, Burrell had ten days to supplement her application. Likewise, Defendant, incorrectly argues that Burrell "supplemented her application with her performance evaluation" and that "The June 5, 2003 dates (sic) has nothing to do with the date of Ms. Burrell's application." (See Def's Repl @ 16-17). As it turned out, the Union Agreement on which the Defendant relied had no applicability whatsoever to Burrell's situation. Plaintiff explained this in detail in his Motion to Strike (See pgs.3- 4 of Plaintiff's Motion to Strike). As a result, defendant withdrew that argument on "supplementing" the application in its Opposition to Plaintiff's Motion to Strike (See Def's opp to Pla's mtn. to Strike p.1) and changed it to something else - that selecting official or the panelist had no control over the tardiness of the package. Id.

[6] Notably, even the Selecting Official himself testified that any application package which is not complete by the deadline should be rejected - which is to say that he would not have considered such tardy package for an interview even if it was given to him *Exh. 2 @ 152: 7-10*.

assertion, there is no support for its argument.  It is axiomatic that counsel's argument is not evidence.  The only thing on the record explaining the issue of untimeliness of Burrell's application package, is the defense counsel's argument.

Additionally, contrary to the Defendant's assertion, the Court neither touched nor addressed the Selecting Official's habit or pattern and practice of selecting white females over minorities.[7]  Had the Court addressed it, it would have applied *Czekalski v. Peters*[8]*,* 475 F.3d 360 (D.C. Cir. 2007) as the D.C. Circuit did when it found a like habit and pattern in the facts of that case. Once again, the Court omitted it.  However, in support of its opposition, Defendant wrongfully contends that Plaintiff misconstrues the holding in. (See Opposition at 9-10); and that *Czekalski* merely deals with explaining "that the question whether a particular reassignment of duties constitutes a cognizable Title VII adverse is generally one for a jury since such determinations often involve genuine issues of material fact." What a faux pas!

First of all, like the instant case, *Czekalski* is a Title VII discrimination case. The standard used in most Title VII discrimination case was used in *Czekalski*. Specifically, quoting *Stella* **v.** *Mineta,* 284 F.3d 135,145 (D.C. Cir. 2002), the *Czekalski* court listed the elements of a prima facie case stating that a plaintiff makes out a prima facie case of disparate-treatment discrimination 'by establishing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.

---

[7]The only issue the Court addressed relates only to Plaintiff's reference to the  Defendant's own record that shows that white females were promoted at a rate that exceeds their population in the work place. (See Memorandum at 30 - 32).

[8]Interestingly, Defendant does not deny the applicability of *Parker v. HUD*, 891 F.2d 316, 322 (D.C.Cir.1989).

Plaintiff cites this elements in his Opposition to the Defendant's Motion for Summary Judgment. Furthermore, like virtually all discrimination cases, *Czekalski* lists the what evidence must be considered in this type of case stating: "The evidence that must be considered includes (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanations for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment)." citing *Aka*, v. *Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc). Plaintiff likewise used these standard showing and pointing to the evidence in the record that supports his case. See Plaintiff' Opposition to the Defendant's Motion for Summary Judgment.

The *Czekalski* Court then goes on to apply these standards, pointing to the evidence before the court; and then goes on to state the reasoning behind its holding. Again, the application of these standards and the reasoning, as used, are exactly what the instant Plaintiff applied to his case. (See Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Motion for Reconsideration). The instant Plaintiff in his Motion for Reconsideration, points this Court to what the *Czekalski* court did - giving great weight to Plaintiff's independent evidence of discrimination where the discriminating official harbored discriminatory attitudes toward Plaintiff and people of Plaintiff's protected class despite the defendant's evidence that the same discriminating official selected that Plaintiff for the position of Director, and subsequently recommended that

8

Plaintiff for a Senior Executive Service pay level increase.  These standards used in *Czekalski* have been consistently applied across the board in Title VII discrimination cases. Plaintiff in this case points to it because this Court did not address the Selecting Official's habit and pattern of selecting white females to a higher position - an issue considered in *Czekalski.*  Thus, it indeed will not only be ludicrous but also absurd to contend that a plaintiff must limit himself to only one of the issues in a case before citing that case as his/her authority.  In any event, Defendant's contention is without merit.

Once again, in addressing the subjectivity of the selection process, Defendant does not deny the applicability of *Aka.*  Nor does it deny that the quote in the Court's Memorandum of April 28, 2008 was originally used in *Aka.*  Specifically, in addressing the subjectivity of the selection process in a footnote, this Court notes that: "*reasonable employers do not ordinarily limit their evaluation of applicants to a mechanistic checkoff of qualifications required by the written job descriptions. Obviously, they will take additional credentials into account, if those credentials would prove useful in performing the job*"(see Memo @ 22 fn. 14). Rather than Aka however, the Court cites Jackson, Id.   This quote however was previously used in *Aka* only because the Aka Court took issue with the dissenter's contention that it *Aka* gave no weight to *Aka's* superior education because there were no educational prerequisites listed in the job description.  As the dissenters in *Aka,* this Court in error adopted the Ranking Official's testimony to the effect that no weight be given to the candidates' educational background. The qualification issue is at the core and heart of this case.  Thus, if that quote really applies, it should apply to the Plaintiff's favor and not to his detriment, as it is virtually impossible to see how someone with a high school education can be said to be more qualified than or be as qualified as qualified as Plaintiff, a Masters' degree

9

holder with numerous professional certifications.

As already suggested, reconsideration is in order, where, as here, the Court's reliance, reasoning and rationale for its conclusion on the case are in essence, in conflict with OPM regulations. Specifically, the Court Critical Error in determining that "No Gap Exists between Plaintiff and Selectee" rest on the following excerpts from the Memorandum: "That both Plaintiff and Selectee received the highest possible score on his KSAs for the position; Burrell's performance of high-level duties in the IRS's National Office Safety Program while on her 2002 detail; and, Burrel's two year safety experience with the defendant as a GS-12." Yes, they (Plaintiff and Burrell) both scored the highest possible score on the KSAs for the position.[9]  However, under OPM regulations, Burrell should never have been eligible for the detail or in the alternative,  most certainly was not eligible for renewal after the initial detail period of 120 days.[10] Similarly and Significantly, under OPM regulations, Burrell's still would not have satisfied the fifty-two week specialized experience with the two year safety experience with the defendant as a GS-12. Thus, the court's recognition of Burrell's 2 years safety experience with IRS at the GS-12 level for a promotion to the challenged GS-14 position are in essence in conflict with OPM regulations.  Such regulation requires candidate to possess the requisite 52 weeks of specialized safety experience at the next lower grade.  In this case, Burrell did not meet the required specialized safety experience at the GS-13 level.

_____

[9]Plaintiff's already addressed the flaw in the ranking - with his background, both technical, educational or otherwise, he is more qualified for the position and should have scored much more than the other candidates, not just Burrell. (See Motion for Reconsideration p.6) His  employer misjudged his qualifications. ***Fischbach v. D.C. Dep't of Corr.***, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

[10]The Court ordered Plaintiff to file an Amended Complaint relating to this illegal or  wrongful detail.  Plaintiff has done so.

Regarding the remaining issues raised in the Defendant's Opposition to Plaintiff's Motion for Reconsideration, Plaintiff has already addressed them. It is unnecessary to belabor those points at this juncture.

## Conclusion

Via his Motion for Reconsideration, Plaintiff points the Court to the issues omitted or misconstrued in the Court's Memorandum of April 3, 2008. Defendant fails to counter, attack or refute the most important issues raised only because Defendant is disabled from doing so. Likewise, Defendant has not denied certain assertions of the Plaintiff. See supra. The issues omitted are material to this case. Addressing them will prevent manifest injustice. Thus, the Court should reconsider its position and vacate the ruling of April 3, 2008.

Respectfully submitted,

**THE GBENJO LAW GROUP**

_____
/s/
Anne J.A. Gbenjo, Bar #: 447840,
8449 West Bellfort Avenue
Suite 100
Houston, Texas 77071
Phone: 713-771-4775
Fax: 713-771-4784
Counsel for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT, on this 1st  day of June 2008, I sent via first class and E-filing a  copy of the foregoing Reply to all parties as follows: John C. Truong, Esquire, 555 4th Street N.W. Washington, D.C. 20001.

_____
/s/
Anne Gbenjo

11