08/17/06: Hamilton v U.S. Treasury: Depo: Annette Burrell

PAGE 1 TO PAGE 137

NEAL R. GROSS & CO., INC.

(202) 234-4433

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

NEAL R. GROSS & CO., INC.
1323 RHODE ISLAND AVE., NW
WASHINGTON, DC   20005
Phone:   (202) 234-4433



GOVERNMENT EXHIBIT 7

## Page 1

```
(1)            UNITED STATES DISTRICT COURT
(2)            FOR THE DISTRICT OF COLUMBIA
(3)
(4) GARY HAMILTON,
(5)        Plaintiff,
(6) v.                    CASE NO.: 05-1549 (RBW)
(7) JOHN SNOW,
(8)        Defendant.
(9)
(10)           Washington, D.C.
               August 17, 2006
(11)
     DEPOSITION OF:
(12)
               ANNETTE BURRELL
(13)
     called for examination by counsel for the Plaintiff,
(14) pursuant to notice of deposition, in the offices of
     Neal Gross & Co., 1323 Rhode Island Avenue, N.W.,
(15) Washington, D.C., when were present on behalf of the
     respective parties:
```

## Page 2

```
(1) APPEARANCES:
    On Behalf of the Plaintiff:
(2)
    ANNE. J. A. GBENJO, ESQ.
(3) 8449 West Bellfort Avenue
    Suite 100
(4) Houston, Texas 77071
    (713) 771-4775
(5) (713) 771-4784 FAX
(6) On Behalf of the Defendant:
(7) JOHN C. TRUONG, ESQ.
    Assistant United States Attorney
(8) Department of Justice
    555 4th Street, N.W.
(9) Washington, D.C. 20530
    (202) 307-0406
(10) (202) 514-8780 FAX
```

## Page 3

```
(1)                    I-N-D-E-X
(2) WITNESS:     DIRECT CROSS REDIRECT RECROSS
(3) Annette Burrell   4    132    133
(4)               E X H I B I T S
(5) Exh.
    No.      Document Description    Identified
(6)
    1  Application Package                78
```

## Page 4

(1) P-R-O-C-E-E-D-I-N-G-S
(2) 12:00 p.m. (3) Whereupon,
(4) ANNETTE BURRELL (5) was called as a witness by Counsel for the Plaintiff (6) and having been first duly sworn was examined and (7) testified as follows:
(8) DIRECT EXAMINATION
(9) MS. GBENJO:
(10) Q Good afternoon, Ms. Burrell. My name is (11) Anne Gbenjo and I represent Mr. Hamilton in this case. (12) And I'll be asking you a series of questions (13) pertaining to this case. (14) Mr. Hamilton's case, as you know is, a (15) result of the selection for the safety manager (16) position. And I'll be asking you questions related to (17) that case and you are supposed to be giving me verbal (18) responses and not gestures, not shrugging of shoulders (19) or nodding of heads because the recording would not be (20) able to record that.
(21) If you do not understand any questions (22) that I ask you, stop me and tell me to clarify. If

## Page 129

(1) grade 13?
(2) A I think that question needs to be asked of (3) a classification specialist to – to say whether or (4) not I qualified for a grade 13 specialized experience. (5) I mean, that would be my – I would be telling you (6) what my perception was, what I believe. You know, I (7) didn't qualify myself, so –
(8) Q All right. So now let's go back to (9) another topic. I don't understand the explanation.
(10) Now, with the safety inspection program (11) that you had in 2003, you were present at a meeting (12) where Brenda Golden and Stuart Burns were also (13) present. Is that true?
(14) A Yes, there was an initial meeting.
(15) Q Okay. And there was another meeting where (16) Brenda Golden, Mr. Hamilton, Stuart Burns and yourself (17) and some other contractors were present, isn't that (18) true?
(19) A Yes.
(20) Q Okay. At that second meeting in which Mr. (21) Hamilton was present, what was –
(22) MR. TRUONG: Objection. I'm sorry. Go

## Page 130

(1) ahead.
(2) BY MS. GBENJO:
(3) Q At the second meeting in which Mr. (4) Hamilton was present, what was Mr. Burns' instructions (5) to Mr. Hamilton?
(6) MR. TRUONG: Objection to the extent it (7) mischaracterizes the testimony there are two meetings.
(9) MS. GBENJO: Well, speaking objections, (10) you're not going to put words in the witness' mouth. (11) Enough of the coaching because your conduct (12) reprehensible.
(13) BY MS. GBENJO:
(14) Q What was Mr. Burns' instruction at that (15) second meeting in which Mr. Hamilton was present?
(16) A I don't remember and –
(17) Q Okay.
(18) A – thinking about – I'm thinking about (19) one meeting; I'm not aware of two meetings, the one (20) meeting where there was an initial meeting with Gary (21) and Brenda and Stuart and I and Guy Burnett, the (22) contractor.

## Page 131

(1) Q And the record will reflect whether you (2) change your testimony. And that –
(3) A I – I recall saying that earlier.
(4) Q Okay.
(5) A Those were the people. John St. Onge (6) could or could not have been there. I don't recall if (7) he was or not.
(8) Q Okay.
(9) A But I don't – I don't know – I don't (10) remember what Stuart's charge was, or whatever your (11) question was, to remarks to Gary. I don't – I don't (12) remember.
(13) Q Okay. And what were your remarks to Mr. (14) Hamilton at that meeting, that Mr. Hamilton was (15) present?
(16) A I don't recall.
(17) Q Just one more thing.
(18) MR. TRUONG: You promise?
(19) MS. GBENJO: I'm looking for it, so – (20) okay. This will depend on whether we have cross. So (21) go ahead.
(22) MR. TRUONG: You done?

## Page 132

(1) MS. GBENJO: Yes.
(2) MR. TRUONG: Okay.
(3) CROSS EXAMINATION
(4) BY MR. TRUONG:
(5) Q I only have one question for you, Ms. (6) Burrell. I think you testified earlier that Mr. (7) Norris Walker somehow gave you the detail?
(8) A Yes.
(9) MS. GBENJO: No, I'm sorry. I didn't hear (10) the question.
(11) MR. TRUONG: Have her read it back?
(12) MS. GBENJO: Okay. Yes, why don't we read (13) it back?
(14) (Whereupon, the question was played back.)
(15) MS. GBENJO: Objection, mis- (16) characterization of what's on the record. But you can (17) go ahead with your question. There's no such thing on (18) the record, but we'll leave in the question. Okay. (19) Go ahead with your question.
(20) BY MR. TRUONG:
(21) Q Ms. Burrell, who gave you or who (22) appointed you to the detail in August '02?

### Page 133

(1) A Norris Walker.
(2) Q And I believe you saying something to the (3) fact of the detail was only for 120 days and that it (4) was somehow renewed. Who renewed the detail?
(5) A Reggie.
(6) Q Mr. Reggie –
(7) A Reggie McFadden.
(8) Q – McFadden? And what is Mr. Reggie (9) McFadden race?
(10) A Black.
(11) Q Thank you. I have no more.
(12) MS. GBENJO: Okay.
(13) REDIRECT EXAMINATION
(14) BY MS. GBENJO:
(15) Q Now I have to go back to something else. (16) When you were a client services specialist, you were (17) a GS-13, right?
(18) A Yes.
(19) Q What was your grade level after that?
(20) A After the client services specialist job?
(21) Q Yes.
(22) A I – I went to – on a detail for 120 days

### Page 134

(1) at a grade 14.
(2) Q I didn't hear. I didn't – I didn't hear (3) the last part of what you said. You said you went on (4) a detail.
(5) A Yes.
(6) Q And then –
(7) A I went on a detail for 120 days to a grade (8) 14.
(9) Q Okay. So other than the detail, you did (10) not have any GS-13 specialized safety duty experience, (11) did you? In other words, you did not have any safety (12) duties experience on GS-13?
(13) A I was – I had not held – held a grade 13 (14) position in the safety and occupational health (15) position description.
(16) Q Okay. That was the question. And you (17) just said now that, we came on break, your testimony (18) was that Norris Walker gave you that detail of 8/02 to (19) 8/03, right?
(20) A Yes.
(21) Q You also testified earlier that you (22) responded to an e-mail and expressed your interest in

### Page 135

(1) a detail, isn't that true?
(2) A I said it could have been an e-mail. I (3) didn't recall how the communication came out that they (4) wanted somebody to go on a detail.
(5) Q Okay. How many other people expressed (6) their interest when you expressed your interest –
(7) A I –
(8) Q – to go on a detail?
(9) A I don't know.
(10) Q Now how many people did Norris Walker tell (11) you expressed their interest in that detail?
(12) A I – I don't remember having any kind of (13) conversation about that.
(14) Q Who was Reggie McFadden's boss at the time (15) that you were on that detail?
(16) A I don't know who he reported to.
(17) Q I didn't hear.
(18) A I don't know who he reported to.
(19) Q Who was Norris Walker's boss at the time (20) you were on that detail?
(21) A Ron Stephen.
(22) Q What is Ron Stephen's race?

### Page 136

(1) A He's white.
(2) Q What was Ron Stephen's job title at the (3) time you were on detail?
(4) A Director of Real Estate and Facilities (5) Management.
(6) Q You said he was the director of real (7) estate and facilities management?
(8) A Yes.
(9) Q Did you lead teams when you were on the (10) detail?
(11) A Yes.
(12) Q Did you develop programs within the safety (13) division when you were on that detail?
(14) A I don't – I – I don't recall.
(15) Q Okay. But did you receive reports, like (16) accident reports, investigation reports, during that (17) detail?
(18) A I don't recall.
(19) Q Did you receive e-mails from safety field (20) officer during that detail?
(21) A I don't recall.
(22) Q Did you respond to e-mails or receive

Page 137

(1) calls during that detail from special officers?
(2) **A I – I don't recall.**
(3) MS. GBENJO: That's it. (Whereupon, the (4) taking of the testimony in the above-entitled matter (5) was concluded at 2:52 p.m., signature having been (6) waived.)