**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
GARY HAMILTON,                            )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        Civil Action No. 05-1549  (RBW)
                                          )
TIMOTHY F. GEITHNER,                      )
Secretary of Treasury,                    )
                                          )
                    Defendant.            )
_____)

**MEMORANDUM OPINION**

Gary Hamilton, the plaintiff in this civil lawsuit, seeks compensatory damages and injunctive and declaratory relief against Timothy F. Geithner in his official capacity as the Secretary for the Department of Treasury for alleged unlawful discrimination against the plaintiff by the plaintiff's former employer, the Internal Revenue Service (the "IRS"), on the basis of race and sex pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (2000). Civil Complaint (the "Compl.") ¶¶ 1, (i)-(iii).[1] On March 28, 2008, the Court entered an order granting in part and denying in part the defendant's motion for summary judgment and dismissing Counts I and II of the plaintiff's complaint with prejudice. Currently before the Court are the plaintiff's motion for partial reconsideration of that order pursuant to Federal Rule of Civil Procedure 54(b) and his separate motion for leave to file an amended complaint pursuant to

---

[1] The plaintiff's complaint, filed on August 1, 2005, names John Snow, at that time the Secretary of Treasury, as the defendant in this case. The Court has substituted Secretary Geithner as the defendant in lieu of former Secretary Snow pursuant to Federal Rule of Civil Procedure 25(d)(1).

Federal Rule of Civil Procedure 15.[2]  After carefully considering the plaintiff's complaint, the

Court's prior memorandum opinion accompanying its March 28, 2008 order, as well as the

plaintiff's motions and all memoranda of law and exhibits filed in connection with those

motions,[3] the Court concludes that it must deny the plaintiff's motion for reconsideration and

grant his motion for leave to file an amended complaint for the reasons that follow.

## I. Background

The Court has previously recounted the undisputed facts of this case in some detail and

need not repeat them again here.  See Hamilton v. Paulson, 542 F. Supp. 2d 37, 40-42 (D.D.C.

2008) (Walton, J.) (summarizing the undisputed facts pertinent to this case).  Suffice to say, the

plaintiff, an African-American male and former employee of the Real Estate and Facilities

Management department of the IRS, id. at 40, believes that he was not selected for the position

of Safety and Occupational Health Manager ("Safety Manager") in 2003 in favor of a white,

female employee, Annette Burrell, based on his race and gender, id. at 40-41.  He further alleges

that "the IRS retaliated against him for filing an EEO complaint based on his non-selection for

the Safety Manager position" in 2003 when it selected another white female, Camille Carraway,

---

[2]  The plaintiff does not explicitly restrict his motion for reconsideration to any specific count in his complaint, but his arguments relate solely to the plaintiff's non-selection claim, which constitutes only one of the two counts in his complaint subject to dismissal pursuant to the Court's March 28, 2008 order.  The Court therefore construes his motion as one for partial reconsideration.

[3]  In addition to the plaintiff's complaint, his motions, the Court's prior order granting in part and denying in part the defendant's motion for summary judgment and the Court's accompanying memorandum opinion, and all motions, memoranda of law, and exhibits filed previously considered by the Court in reaching that decision, see Hamilton v. Paulson, 542 F. Supp. 2d 37, 40 n.2 (D.D.C. 2008) (listing the documents considered by the Court in reaching its decision on the merits of the defendant's motion for summary judgment), the Court considered the following documents in reaching its decision: (1) Plaintiff's Motion for Reconsideration (the "Pl.'s Reconsideration Mot."), (2) Defendant's Opposition to Plaintiff's Motion for Reconsideration (the "Def.'s Reconsideration Opp'n"), (3) Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Reconsideration (the "Pl.'s Reconsideration Reply"), (4) Plaintiff's Motion for Leave to Amend Complaint (the "Pl.'s Amendment Mot."), (5) Defendant's Opposition to Plaintiff's Motion for Leave to Amend Complaint (the "Def.'s Amendment Opp'n"), and (6) Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Leave to Amend Complaint (the "Pl.'s Amendment Reply").

for a detail as a Safety Manager in January of 2004.  Id. at 41.  Finally, the plaintiff asserted for the first time in his memoranda of law in opposition to the defendant's motion for summary judgment that he was also discriminated against on the basis of race and sex "based on the selection of Burrell for a detail in the National Office Safety Program in August of 2002."  Id.

In a memorandum opinion issued on April 3, 2008, this Court concluded that summary judgment in favor of the defendant was warranted with respect to the plaintiff's 2003 non-selection and 2004 retaliation claims.  Id. at 63.  Regarding the non-selection claim, the Court found that there was "nothing in the record that would permit a reasonable jury to infer that the defendant's explanation for the selection of Burrell over the plaintiff for the Safety Manager position . . . [was] in any way a pretext for discrimination based on gender or race."  Id. at 57.  As for the retaliation claim, the Court held that the plaintiff failed to establish a causal connection between his statutorily protected activity (i.e., the initiation of his EEO complaint) and the alleged adverse action taken against him (i.e., his non-selection for the 2002 Safety Manager detail).  Id. at 57-61.  Finally, the Court declined to rule on the merits of any arguments raised by the defendant with respect to the plaintiff's newly-raised 2002 non-selection claim until the claims were properly alleged in an amended complaint.  Id. at 61-62.  The Court therefore denied without prejudice the defendant's motion for summary judgment with respect to this "claim" and granted the plaintiff leave to file an amended complaint including the plaintiff's non-selection for a Safety Manager detail in 2002 as a basis for relief.  Id. at 62.

The plaintiff filed his motion for reconsideration on April 17, 2008.  In support of this motion, he argues that the Court erred in failing to consider "the crucial fact that Burrell, by her own admission, did not possess the requisite 'specialized experience' to be classified at the [GS-14] level."  Pl.'s Reconsideration Mot. at 3.  The plaintiff also criticizes many aspects of the

Court's memorandum opinion, such as (1) the Court's conclusion that the evidence adduced by the plaintiff failed to establish that Burrell had untimely submitted her application for the Safety Manager position (a conclusion the plaintiff characterizes as "almost appalling"), id. at 2-3, (2) the Court's rejection of the plaintiff's anecdotal evidence that his supervisor has promoted white females in lieu of the plaintiff in the past, id. at 4-6, (3) the Court's holding that the hiring process for the Safety Manager position was not, as described by the plaintiff, "purely subjective," id. at 6-7, (4) the Court's alleged "play[ing] down" of "virtually all of [the p]laintiff's evidence," id. at 7, including Burrell's purported inability "to answer certain questions relevant and material to the safety field," id. at 7-8, "[t]he absence of a personnel member at the interview" for the Safety Manager position, the supposed belief of a panelist at that interview "that she was interviewing the candidates for a different position," "[t]he loss of [a] portion of" the interview notes taken regarding the plaintiff, id. at 9, the lack of any indication as to why the plaintiff was not selected for the Safety Manager position in the interviewers' notes, and the alleged "numerous contradictions . . . in the panelists['] testimony," id. at 10, and (5) the Court's reliance on Fischbach v. District of Columbia Department of Corrections, 86 F.3d 1180 (D.C. Cir. 1996), in light of more recent precedent from the District of Columbia Circuit, id. at 11.

    In his opposition to the plaintiff's motion for reconsideration, the defendant argues that the plaintiff's motion "does precisely what the law prohibits: reargues issues previously considered and rejected by the Court."  Def.'s Reconsideration Opp'n at 13.  He derides the plaintiff's timeliness argument as "a red herring" that is "not supported by the record," id. at 7, argues that it is inappropriate for the plaintiff to rely upon anecdotal evidence of "white washing" in support of his non-selection claim, id. at 8-10, defends the purported subjectivity of

the hiring process for the Safety Manager position in 2003, id. at 11-12, and argues that the Court

should reject the plaintiff's remaining arguments "for the same reasons that the Court rejected

[those same] arguments in [the plaintiff's] opposition to [the d]efendant's motion for summary

judgment," id. at 12.  The plaintiff contests each of these arguments in his reply memorandum,

Pl.'s Reconsideration Reply at 5-11, and points out that the defendant "utterly fails" to refute his

argument that Burrell was not qualified for the Safety Manager position under binding Office of

Personnel Management ("OPM") regulations, id. at 2.

Less than a month after filing his motion for reconsideration, the plaintiff filed a separate

motion for leave to file an amended complaint in conformance with the Court's instructions in its

memorandum opinion.  Pl.'s Amendment Mot. at 1.  Notwithstanding the fact that the Court had

already granted the plaintiff leave to file an amended complaint, the defendant filed an

opposition to that motion on June 2, 2008, arguing that the amendment proposed by the plaintiff

would be futile because the plaintiff has not exhausted the administrative remedies necessary to

raise a viable claim for discrimination based on his non-selection for the Safety Manager detail

in 2002, Def.'s Amendment Opp'n at 4-9, that the relief requested by the plaintiff in his

proposed amended complaint exceeds the scope of the amendment permitted by the Court in its

memorandum opinion, id. at 10, and that the Court erred in concluding that it was required to

permit the plaintiff leave to file an amended complaint pursuant to Wiley v. Glassman, 511 F.3d

151 (D.C. Cir. 2007), Def.'s Amendment Opp'n at 11-14.  The plaintiff disputes each of these

points in his reply.  Pl.'s Amendment Reply at 2-11.

## II. Standard of Review

As the Court previously noted, the plaintiff seeks both partial reconsideration of this

Court's earlier ruling on the defendant's summary judgment motion and leave to amend his

complaint.  Although not explicitly referenced by the plaintiff, Rule 54(b) governs the Court's consideration of his motion for reconsideration because of the interlocutory nature of the Court's March 28, 2008 order,[4] while Rule 15(a) controls his motion for leave to file an amended complaint.  The Court therefore discusses the standard of review under each rule.

A.      Motion for Reconsideration under Rule 54(b)

"[I]nterlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment."  Filebark v. U.S. Dep't of Transp., 555 F.3d 1009, 1013 (D.C. Cir. 2009) (internal citation and quotation marks omitted).  Thus, "[t]he standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)."  Williams v. Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008).  "In particular, reconsideration of an interlocutory decision is available under the standard, 'as justice requires.'"  Judicial Watch v. Dep't of Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006).

"'As justice requires' indicates concrete considerations by the [C]ourt . . . ."  AFL-CIO v. Bullock, Civ. Action No. 03-79 (EGS), 2009 WL 841138, *4 (D.D.C. Mar. 31, 2009).  These considerations "include whether the Court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred."  Isse v. Am.

---

[4]  The defendant suggests that "it is arguable" that the plaintiff's motion is governed by Federal Rule of Civil Procedure 59(e) rather than Rule 54(b) because the Court's March 28, 2008 order "is a final judgment on his non-selection claim."  Def.'s Reconsideration Opp'n at 3.  The defendant is mistaken.  "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to . . . fewer than all[] claims . . . only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  "Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims . . . ."  Id. (emphasis added).  Under the plain terms of Rule 54, then, the Court has not yet entered a final judgment with respect to any of the plaintiff's claims, and the plaintiff's motion for reconsideration is properly considered under Rule 54(b), not Rule 59(e).

Univ., 544 F. Supp. 2d 25, 29 (D.D.C. 2008).  Further, "for justice to require reconsideration, logically, it must be the case that[] some sort of 'injustice' will result if reconsideration is refused.  That is, the movant must demonstrate that some harm . . . would flow from a denial of reconsideration."  Cobell v. Norton, 355 F. Supp. 2d 531, 540 (D.D.C. 2005).

"Even if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so."  Isse, 544 F. Supp. 2d at 29 (internal citation and quotation marks omitted).  However, "while the law of the case doctrine does not necessarily apply to interlocutory orders, district courts generally consider the doctrine's underlying rationale when deciding whether to reconsider an earlier decision."  Malewicz v. City of Amsterdam, 517 F. Supp. 2d 322, 328 (D.C. Cir. 2007).  The Court therefore considers the plaintiff's motion "subject to the caveat that, where litigants have once battled for the Court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  Lemmons v. Georgetown Univ. Hosp., 241 F.R.D. 15, 22 (D.D.C. 2007) (Walton, J.) (quoting Judicial Watch, 466 F. Supp. 2d at 123 (internal citation and quotation marks omitted)).

B.    Motion for Leave to File an Amended Complaint under Rule 15(a)

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires."  As the Supreme Court explained in Foman v. Davis, 371 U.S. 178 (1962):

> In the absence of any apparent or declared reason—such as undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing by virtue of allowance of the amendment, futility of amendment, etc.—leave should, as the rules require, be freely given.

Id. at 182.

"Within these bounds, a district court has discretion to grant or deny leave to amend under Rule 15(a)."  Atchison v. District of Columbia, 73 F.3d 418, 426 (D.C. Cir. 1996). However, "it is an abuse of discretion to deny leave to amend without giving a sufficient reason." Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1083 (D.C. Cir. 1998) (internal citation and quotation marks omitted).  Where the reason for denying leave to amend is futility, the district court must find that "the proposed pleading would not survive a motion to dismiss."  Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 945 (D.C. Cir. 2004).

### III. Legal Analysis

Based upon the positions taken by the parties in their various memoranda of law, the issues before the Court are two-fold: first, whether the Court should vacate in part its March 28, 2008 order dismissing Counts I and II of the plaintiff's complaint for the reasons advanced by the plaintiff in his motion for reconsideration, and second, whether the Court should permit the plaintiff to amend his complaint as indicated in the Court's prior memorandum opinion.  It is clear to the Court that the former issue should be resolved in favor of the defendant.  It is equally clear that the latter issue should not.

A.     Motion to Reconsider the Dismissal of Count I of the Complaint

As noted above, the plaintiff supplies a bevy of arguments in support of his request for reconsideration of the dismissal of his 2003 non-selection claim.  As the defendant correctly points out, the vast majority of these arguments are reformulations of arguments raised by the plaintiff in opposition to the defendant's motion for summary judgment, many of which were explicitly rejected by the Court.  See Def.'s Reconsideration Opp'n at 1 (criticizing the plaintiff for "advanc[ing] the same arguments that the Court previously considered and rejected"). However, the purportedly "most important basis" for reconsideration advanced by the plaintiff—

"that Burrell did not possess the requisite 'specialized experience' under OPM qualification standards for general schedule positions to be placed in the GS-14 safety manager position," Pl.'s Reconsideration Reply at 2—was barely mentioned by the plaintiff in his previous memoranda of law.  See Supplemental Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 1-2 (arguing that "[al]though the Safety Manager position that Burrell occupied around 1992 . . . has the same title as the position in controversy, that was a level 12 [position]," and that as a consequence "[Burrell] did not possess the requisite 'specialized experience' to be classified at the GS-018-14 level").  Consequently, the Court did not address this specific issue in its prior memorandum opinion.  See Hamilton, 542 F. Supp. 2d at 46-47 (noting only Burrell's considerable prior experience as a Safety Manager without addressing her general service ranking when she held that position).

Unfortunately for the plaintiff, his newfound enthusiasm for this argument is misplaced. He posits that because Burrell had never held a permanent position in the field of industrial safety at the GS-13 level, she lacked the "specialized experience" required for the Safety Manager position under certain OPM guidelines incorporated in the Internal Revenue Manual (the "IRM").  Pl.'s Reconsideration Mot. at 3.  The relevant IRM provision provides:

> Developing the Evaluation Process: A comprehensive job analysis must be used in developing the specific evaluation criteria that will provide the basis for the evaluation process.  Vacancies must be analyzed to determine what knowledge, skills, abilities[,] and other personal characteristics (KSA[s]) (i.e., professional certification) are needed and at what level they are required for successful and highly successful job performance.  The result of the job analysis is the development of specific evaluation criteria and standardized instructions for their use.  Guidance on conducting a job analysis can be found in 5 [C.F.R.] [§] 300.

Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary

Judgment (the "Pl.'s Opp'n"), Ex. 43(a) (Excerpt from the Internal Revenue Manual) (the "IRM

Excerpt") § 6.335.1.12.8(1) (emphasis added).

Part 300 to Title 5 of the Code of Federal Regulations, in turn, requires that the

"employment practice" of "individual agencies . . . be based on a job analysis" that identifies

"[t]he basic duties and responsibilities" of the position, "[t]he knowledge[], skills, and abilities

required to perform their duties and responsibilities," and "factors that are important in

evaluating candidates," 5 C.F.R. § 300.103(a) (2007), and further requires "a rational

relationship between performance in the position to be filled . . . and the employment practice

used," id. § 300.103(b)(1).  Another section provides that "[c]andidates for advancement to a

position at GS-12 and above must have completed a minimum of 52 weeks in positions no more

than one grade lower (or equivalent) than the position to be filled."  Id. § 300.604 (emphasis

added).  In other words, the Code of Federal Regulations prohibits multi-step promotions at the

GS-12 level and above.  It in no way limits single-step promotions by "specializ[ation]."

Instead, it requires that individual agencies perform "a job analysis" for a vacant position that

identifies, inter alia, "[t]he knowledge[], skills, and abilities required to perform [the] basic

duties and responsibilities" of the position.  This, of course, is precisely what the IRS did.  See

Hamilton, 542 F. Supp. 2d at 40-41 (describing the application process for the Safety Manager

position).

There is simply no plausible argument to be made that Burrell lacked "the knowledge,

skills, and abilities required to perform" the "duties and responsibilities" of a Safety Manager.  5

C.F.R. § 300.103(a).  As the Court related in its prior memorandum opinion, Burrell had "three

years of prior experience as a Safety Manager."  Hamilton, 542 F. Supp. 2d at 46.  Like the

plaintiff, she "received a perfect score on her KSAs for the Safety Manager position." Id. at 45.

And while on her 2002 detail, Burrell "performed numerous high-level duties in the IRS's

National Office Safety Program." Id. at 46.  She was, in short, an outstanding candidate for the

position of Safety Manager at the time of her selection.  See id. at 47 (noting that Burrell

"received the highest ranking possible in every single category for her 2002-2003 annual

performance appraisal—i.e., the appraisal covering her time on the management detail").

By all accounts, Burrell was ranked as a GS-13 at the time of her selection for the Safety

Manager position in 2003.  See Pl.'s Opp'n, Ex. 4 (Deposition of Annette Burrell, Aug. 17,

2006) (the "Burrell Dep.") 133:15-18 ("Q. Now[,] I have to go back to something else.  When

you were a client services specialist, you were a GS-13, right?  A. Yes.").  And the record

uniformly suggests that Burrell was extremely well-qualified for that position.[5]  Accordingly, the

plaintiff's "most important reason for requesting [] reconsideration," Pl.'s Reconsideration Reply

at 1, is not a valid reason for reconsideration at all.  The Court therefore rejects it.

The plaintiff's remaining arguments require less attention because they merely rehash

issues already addressed in the Court's memorandum opinion.  For example, the Court has

previously explained at length why the plaintiff's anecdotal evidence of hiring trends is

immaterial in the absence of properly calculated statistical evidence, Hamilton, 542 F. Supp. 2d

at 56, why the IRS's applicant review process was not "purely subjective" as the plaintiff insists,

id. at 51 n.14, why the absence in the record of a single page from a single interviewer's notes

cannot give rise to an inference of spoliation absent other evidence of bad faith, id. at 52-53,[6] and

---

[5]  Indeed, as the uncontroverted deposition testimony of Burrell makes clear, her detail as a Safety Manager in 2002
was classified at the rank of GS-14.  Burrell Dep., 133:19-134:7, Aug. 17, 2006.

[6]  The plaintiff chides the Court for failing to find on its own initiative the internal IRS policy that, according to the
plaintiff, requires the IRS to maintain interview notes for two years.  Pl.'s Reconsideration Mot. at 9.  It is not this
Court's obligation to "act as an advocate for the plaintiff and construct legal arguments on his behalf."  Hamilton,
(continued . . . )

why purported "inconsistencies" in the record such as the lack of any reference to the plaintiff's poor communication skills (the putative basis for his non-selection) in the interviewers' notes or minor inconsistencies in the interviewers' deposition testimony were either not inconsistent or irrelevant to determining whether the interviewing panel was impermissibly biased in favor of Burrell on the basis of race or gender, id. at 53-56. The explanations speak for themselves, and do not require repetition.

In a similar vein, the plaintiff persists in his mistaken belief that "a post-it note appended to Burrell's performance appraisal dated June 5, 2003, along with a facsimile transmission date of June 5, 2003, located on the cover page of the performance appraisal" somehow indicates that the plaintiff's application for the Safety Manager position was not submitted by the May 19, 2003 application deadline. Id. at 49; see also Pl.'s Reconsideration Mot. at 2 ("Burrell did not submit a complete package until after the deadline had passed[, yet] she was selected for the position [anyway].").  As the Court explained in its earlier memorandum opinion, "the application itself is dated May 13, 2003, and it is clear that Burrell did not place the incorrect date on her application because the facsimile of the application bears the same transmission date." Hamilton, 542 F. Supp. 2d at 49.  "Thus, the undisputed evidence in the record suggests at most that Burrell submitted her application on May 13, 2003, and supplemented it with her latest performance appraisal on June 5, 2003." Id.

---

542 F. Supp. 2d at 53 n.16.  More important, the policy in question simply states that "[c]omplete promotion files must be maintained for two years from the date final selection is made and the selecting official signs the appropriate selection form."  IRM Excerpt § 6.335.1.12.16(1).  The list of information that must be retained in the "promotion files"—a list omitted from the plaintiff's excerpt of the IRM—does not include interview notes.  See Internal Revenue Manual § 6.335.1.12.16(2), available at http://www.irs.gov/irm/part6/ch07s01.html#d0e9976 (listing fifteen different types of documents that must be maintained in a promotion folder); see also Hamilton, 542 F. Supp. 2d at 52 n.15 (noting that documents maintained on the website of a United States agency are "subject to judicial notice by the Court").  The plaintiff's argument is therefore as factually inaccurate as it is legally irrelevant.

The plaintiff contends that nothing "in the job announcement . . . allows [supplementation of] an incomplete application" after the application deadline. Pl.'s Reconsideration Mot. at 2. But even assuming that this is true,[7] and even assuming that Burrell's application should have been deemed "incomplete" due to the lack of a current performance appraisal as of May 19, 2009, and therefore rejected for consideration, there is no evidence in the record that the official who ranked the candidates' applications or the interview panel, which included the selecting official, knew of this discrepancy.[8] As the Court has previously noted, "[a]n employer's failure to follow its own regulations and procedures, alone, may not be sufficient to support the conclusion that its explanation for the challenged employment action is pretextual." Fischbach, 86 F.3d at 1183 (quoted in Hamilton, 542 F. Supp. 2d at 48). The connection between any impropriety in the submission of Burrell's annual performance review and her selection for the Safety Manager position is simply too attenuated for any reasonable jury to infer pretext on the part of the ranking or selecting official.

The Court also finds unavailing the plaintiff's contention that Burrell was somehow unqualified for the Safety Manager position because she

> could not identify, inter alia, the exact title of the executive order directing the IRS's safety program, . . . the date when the

---

[7] If there is anything in the record definitively establishing that the plaintiff's most recent performance review had to be submitted along with the rest of her application by May 19, 2003, the Court is not aware of any such requirement. The plaintiff points to the announcement for the position, but that form merely establishes that the closing date for the position is May 19 and that applicants will need to provide a "current appraisal with [a] narrative." Pl.'s Opp'n, Ex. 16 (Career Opportunities List Announcement) at 1. Nothing in the job announcement forecloses the submission of a performance appraisal conducted after the closing date, as was the case here. See Pl.'s Opp'n, Ex. 40 (Application of Annette Burrell) at 13 (indicating that the performance appraisal submitted by Burrell was completed on May 22, 2003).

[8] The defendant cites to deposition testimony from the selecting official affirmatively establishing that he "played no role in determining whether to accept or reject an application based on timeliness." Def.'s Reconsideration Opp'n at 8. The Court has searched the record for this testimony in vain. Fortunately for the defendant, the burden of adducing evidence that would permit an inference of knowledge on the part of the ranking and selecting officials that Burrell's application was untimely lies with the plaintiff, and he has failed to meet that burden. Paquin v. Fed. Nat'l Mortgage Ass'n, 119 F.3d 23, 27-28 (D.C. Cir. 1997).

> Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-
> 700 (200[6]) (the 'OSHA') was enacted, . . . the identity of the
> President of the United States of America when the OSHA went
> into effect, . . . or the eight federal agency responsibilities under
> the OSHA.

Hamilton, 542 F. Supp. 2d at 46 n.10 (internal citation and quotation marks omitted).  As the

Court explained in its memorandum opinion, "[w]hat little relevancy this line of questioning

might have had is nullified by the absence of any indication in the record that the plaintiff could

have answered these questions extemporaneously, either."  Id.  The plaintiff protests that

"nothing precluded [the d]efendant from asking [the p]laintiff much tougher questions on safety

at the time of [the p]laintiff's deposition," Pl.'s Reconsideration Mot. at 8, but the burden of

proof in this regard rests with the plaintiff, not the defendant.  See Paquin v. Fed. Nat'l Mortgage

Ass'n, 119 F.3d 23, 27-28 (D.C. Cir. 1997) (noting that summary judgment must be entered

against the plaintiff if he cannot "adduce evidence that could allow a reasonable trier of fact to

conclude that [the defendant's] proffered reason was a pretext for discrimination").  The

impromptu OSHA trivia quiz administered by the plaintiff's counsel at Burrell's deposition does

not advance that inquiry in the slightest.

Finally, the Court does not agree with the plaintiff that this case resembles Aka v.

Washington Hospital Center, 156 F.3d 1284 (D.C. Cir. 1998), or Salazar v. Washington

Metropolitan Area Transit Authority, 401 F.3d 504 (D.C. Cir. 2005), more than Fischbach.  As

the Court explained in its prior memorandum opinion, Fischbach is directly on point with respect

to the narrow question of whether "a reasonable jury could . . . conclude that the composition of

the interview panel" for the Safety Manager interviews "was somehow biased against the

plaintiff" because "the procedures used by the IRS in interviewing candidates for the Safety

Manager position mirror those approved by the District of Columbia Circuit in Fischbach."

Hamilton, 542 F. Supp. 2d at 50.  In contrast, Salazar involved a situation in which evidence was presented that an otherwise racially neural interviewing process was compromised by the questions administered at the interview, which, the evidence suggested, might have been formulated and weighted specifically to disqualify the complainant due to the racial animus of the individuals formulating the questions.  See Salazar, 401 F.3d at 508-12 (finding it "possible that a jury could infer . . . that [the individuals formulating the interview questions] selected an interview agenda which, though facially acceptable, was designed to downplay [the plaintiff's] strengths").  Aka did not turn on the merits of the interview process at all, but rather was decided in the plaintiff's favor based on the marked disparity in the qualifications of the plaintiff as compared to those of the individual selected for the pharmacy technician position at issue in that case as well as other evidence of discrimination.  See Aka, 156 F.3d at 1294-1300 (finding a reasonable inference of impermissible discrimination on the basis of the qualifications of the plaintiff, "a 19-year employee with a good record who had earned two degrees while on the job," as compared to those of the selectee, "an applicant who had worked at the hospital for less than a year as a laundry-folder").  Neither case has anything to do with the propriety of the interviewing process itself, which was the sole purpose for which Fischbach was invoked by the Court.

The Court has expounded at length on the relative parity between the plaintiff and Burrell in terms of their qualifications.  See Hamilton, 542 F. Supp. 2d at 44-48 ("Given Burrell's exceptionally strong resume, the Court discerns no overall gap between her qualifications and those of the plaintiff substantial enough to give rise to an inference of discriminatory motive on the part of [the selecting official].").  And the plaintiff does not suggest that any of the questions administered at the interview for the Safety Manager position were somehow crafted or weighted

unfairly to the plaintiff's detriment, as the evidence suggested in <u>Salazar</u>.  Thus, neither <u>Salazar</u> nor <u>Aka</u> compel a ruling in the plaintiff's favor.

To the contrary, the court in <u>Salazar</u> found the case to be "a close call" despite evidence that the interviewing process was intentionally skewed to discriminate against the complainant due to his race, <u>Salazar</u>, 401 F.3d at 509, and the court in <u>Aka</u> opined that "a reasonable juror who might disagree with the employer's decision, but would find the question close, would not usually infer discrimination on the basis of a comparison of qualifications alone" because "the reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call," <u>Aka</u>, 156 F.3d at 1294.  As to the latter opinion, the court further noted that an employer could "select a candidate who on paper [was] less qualified for other reasons, <u>such as the subjective reactions that emerge in the interview</u>."  <u>Id.</u> at 1294 n.10 (emphasis added).  These observations do not help the plaintiff's case.

The plaintiff's motion for reconsideration is largely redundant and wrong on its merits. Thus, justice neither requires nor permits the reinstatement of the plaintiff's non-selection claim. The Court must and therefore will deny the plaintiff's motion for partial reconsideration.

B.    <u>Motion for Leave to File an Amended Complaint</u>

The plaintiff's motion for leave to file an amended complaint stands on much firmer ground.  In its prior memorandum opinion, the Court noted that the plaintiff had raised a new non-selection claim in its opposition to the defendant's motion for summary judgment based upon the selection of Burrell for a Safety Manager detail in 2002.  <u>Hamilton</u>, 542 F. Supp. 2d at 61.  While recognizing that this Court has traditionally not recognized claims raised in this manner "because [such a claim] was not made in the original complaint or advanced in a motion

to amend," <u>id.</u> (internal citation and quotation marks omitted), the Court held that, in light of the

District of Columbia Circuit's ruling in <u>Wiley</u>, it was compelled to afford the plaintiff at least the

opportunity to assert this claim notwithstanding its procedural infirmity.  <u>Id.</u> (citing <u>Wiley</u>, 511

F.3d at 159.  This conclusion placed the Court in the "unusual procedural posture" of granting

summary judgment in favor of the defendant with respect to all of the plaintiff's properly raised

claims without dismissing the "claim" asserted in his opposition to that very same motion.  <u>Id.</u>

      The Court attempted to resolve this quandary by denying the defendant's motion for

summary judgment without prejudice with respect to the plaintiff's new non-selection claim.  <u>Id.</u>

The Court explained its approach as follows:

> The only solution readily apparent to the Court is to deny the defendant's motion for summary judgment without prejudice with respect to the plaintiff's apparent new claim and grant the plaintiff leave to file an amended complaint asserting a claim for non-selection regarding the 2002 detail and incorporating the facts alleged in the plaintiff's opposition.  Once the plaintiff has filed an amended complaint to that effect, the defendant can renew his motion for summary judgment and the briefing cycle will begin anew.

<u>Id.</u>  In a footnote, the Court "emphasize[d] that it [would] grant the plaintiff leave to file an

amended complaint <u>only</u> with respect to his non-selection claim arising from Burrell's GS-14

detail in 2002," and that any further amendment would require leave from the Court pursuant to

Rule 15.  <u>Id.</u> at 62 n.21.

      The plaintiff's proposed amended complaint conforms to these instructions.  The factual

allegations set forth in the proposed amended complaint concern only the selection of Burrell for

the Safety Manager detail in 2002 and the circumstances attendant to that selection.  <u>See</u> Pl.'s

Amendment Mot., Ex. 1 (Proposed Amended Complaint) (the "Proposed Amended Compl.")

¶¶ 8-17 (alleging the factual details of the circumstances surrounding Burrell's selection for the

Safety Manager detail and the notification to the plaintiff of this selection).  And the two claims included in the proposed amended complaint are both based upon the selection of Burrell for that detail.  Id. ¶¶ 18-23 (claiming that the selection of Burrell for the Safety Manager detail constituted unlawful discrimination on the basis of race and gender); id. ¶¶ 24-28 (claiming that the IRS violated unspecified "laws" "by failing to make the [Safety Manager] detail competitive").

Nevertheless, the defendant opposes the plaintiff's motion for leave to file his proposed amended complaint.  He argues that the proposed amendments to the plaintiff's complaint are futile because the plaintiff did not timely exhaust the applicable administrative remedies.  Def.'s Amendment Opp'n at 4-10.  He further argues that the amended complaint proposed by the plaintiff "essentially attempt[s] to resurrect his GS-14 Safety Manager non-selection claim and to raise a completely new Title VII claim" based upon the "impediment to [the plaintiff's] career advancement" alleged in that proposed amended complaint.  Id. at 10.  Finally, he argues that the Court erred in concluding that Wiley forecloses outright rejection of the plaintiff's 2002 non-selection claim on procedural grounds, id. at 11-14, and that "[i]t would unduly prejudice [the d]efendant to litigate an issue that [the p]laintiff had ample opportunit[y] to raise for the past five years but simply failed to do so," id. at 14.

The defendant's futility argument is incorrect as a matter of law.  The basis for this argument is the alleged failure of the plaintiff to exhaust his administrative remedies prior to raising his 2002 non-selection claim.  Id. at 10.  However, the Court can only deny leave to amend a complaint on futility grounds where "the proposed pleading would not survive a motion to dismiss," Nat'l Wrestling Coaches Ass'n, 366 F.3d at 945, and a defendant may raise an affirmative defense on a motion to dismiss only "when the facts that give rise to the defense are

clear from the face of the complaint," Smith-Haynie v. District of Columbia, 155 F.3d 575, 578

(D.C. Cir. 1998).  Moreover, because "courts typically regard exhaustion as an affirmative

defense in other contexts," they must follow "the usual practice" of treating "exhaustion as an

affirmative defense" even where exhaustion is compelled by statute unless the statute specifies

that exhaustion must be pleaded in the first instance.  Jones v. Bock, 549 U.S. 199, 212 (2007).

Consequently, plaintiffs "are not [ordinarily] required to specially plead or demonstrate

exhaustion in their complaints."  Id. at 216.

      Title VII does not specifically require a plaintiff to plead exhaustion of administrative

remedies in his complaint.  See 42 U.S.C. § 2000e-16(c) (2000) (providing only that a plaintiff

"may file a civil action" if applicable administrative remedies have been exhausted).  And the

plaintiff does not allege any facts that clearly establish his failure to pursue such remedies.  The

defendant's exhaustion argument would therefore be premature at the motion to dismiss stage,

which, in turn, means that his futility argument must be rejected.

      While the defendant's futility argument is legally defective, his argument that the

plaintiff is surreptitiously raising a "backdoor" discrimination claim in the proposed amended

complaint is wrong as a factual matter.  Contrary to the defendant's suppositions, the plaintiff's

allegations that the IRS selected Burrell for the permanent Safety Manager position in 2003

"largely because of the detail that she held or was wrongfully allowed to hold by the [d]efendant

or his agents from the year 2002 to 2003," Proposed Amended Compl. ¶ 20, and that the IRS's

decision not to select the plaintiff for the 2002 Safety Manager detail "impeded his advancement

into a higher position . . . and/or future employment [] opportunities," id. ¶ 22, do not constitute

"a completely new Title VII claim," Def.'s Amendment Opp'n at 10.  Rather, they are

allegations establishing the economic damages purportedly suffered by the plaintiff as a result of

his non-selection for the 2002 Safety Manager detail.  Thus, they are properly included in Count I of the plaintiff's proposed amended complaint.

Finally, the Court rejects the defendant's attempts to re-argue the applicability of <u>Wiley</u> to this case.  <u>Id.</u> at 11.  The defendant is not free to litigate this issue anew, but rather must meet the same criteria for reconsideration of an interlocutory decision as the plaintiff if he is to prevail upon the Court to reconsider its prior decision.  <u>See</u> <u>supra</u> part II.B (discussing the appropriate standard for reconsideration of an interlocutory decision).  Moreover, even if the Court were inclined to reconsider its prior ruling on this point, and even if the Court were to conclude that <u>Wiley</u> is somehow inapposite, it would not change the end result.  The Court still would have denied the defendant's motion for summary judgment without prejudice with respect to the plaintiff's 2002 non-selection claim because, as a technical matter, there was no "claim" to that effect in the plaintiff's complaint that the Court could have dismissed.  And the Court still would have permitted the plaintiff to amend his complaint because, given the fact that the defendant has argued for dismissal of that claim for lack of exhaustion on two occasions, it is apparent that the defendant can renew his motion for summary judgment with respect to the 2002 non-selection claim without "investigating facts that occurred six years ago."  Def.'s Amendment Opp'n at 13.

The Court therefore concludes that "leave should, as the rules require, be freely given" to the plaintiff to amend his complaint.  <u>Foman</u>, 371 U.S. at 182.  Thus, the Court will grant the plaintiff's motion for leave to file an amended complaint and will direct the Clerk of the Court to docket the defendant's proposed amended complaint as his first amended complaint.

### IV. Conclusion

The Court's decision today does little more than restore this case to the status quo that existed following its prior memorandum opinion and order.  Just as the Court was compelled to

reject the plaintiff's assorted arguments in opposition to the defendant's motion for summary judgment due to their lack of merit, so, too, is it compelled to deny the equally groundless arguments advanced in support of the plaintiff's motion for reconsideration.  And just as the Court concluded in its memorandum opinion that this case could not be resolved in its entirety until the plaintiff had been afforded the opportunity to raise his 2002 non-selection in a procedurally proper manner, so, too, does it endorse the efforts of the plaintiff to place his only potentially viable claim in that posture.  The Court therefore concludes that the plaintiff's motion for partial reconsideration must be denied, but that his motion for leave to file an amended complaint should be granted.  The sustainability of the plaintiff's 2002 non-selection claim will have to be deferred until another day.

> **SO ORDERED** this 19th day of May, 2009.[9]

REGGIE B. WALTON
United States District Judge

---

[9]  This memorandum opinion accompanies an earlier order issued by the Court (1) denying the plaintiff's motion for partial reconsideration and granting his motion for leave to file an amended complaint, (2) directing the Clerk of the Court to docket Exhibit 1 to the plaintiff's motion for leave to file an amended complaint as the plaintiff's first amended complaint, (3) directing the defendant to file his answer or responsive motion to the plaintiff's first amended complaint within sixty days of the date on which the order goes into effect, and (4) specifying that the order would be stayed until the Court issues this memorandum opinion.  Thus, the earlier order entered by the Court is no longer stayed as of the date of the issuance of this memorandum opinion.