# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

GARY HAMILTON,            )
                                 )

               Plaintiff,       )
                                 )

          v.             )        Civil Action No. 05-1549 (RBW)
                                 )

TIMOTHY GEITHNER,        )
Secretary of Treasury,        )
                                 )

              Defendant.   )
_____)

## MEMORANDUM OPINION

Gary Hamilton, the plaintiff in this civil suit, seeks compensatory damages as a result of employment practices that he alleges are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17 (2006), and that the agency failed to make competitive a detail that was assigned to Annette Burrell, in violation of the Whistleblower Protection Act, 5 U.S.C. § 2302. Amended Complaint (the "Compl.") at 5. Currently before the Court is a motion to dismiss or, in the alternative, for summary judgment filed by the defendant, Timothy Geithner, in his official capacity as Secretary of the Treasury, arguing that the plaintiff failed to exhaust his administrative remedies as to his Title VII claim, Memorandum of Points and Authorities In Support of Defendant's Motion to Dismiss, Or In the Alternative, Motion for Summary Judgment (the "Def.'s Mem.") at 1, that the agency did not violate Section 2302 of the Whistleblower Protection Act in assigning Burrell to the detail, and that in any event, the plaintiff failed to raise his Section 2302 claim with the Office of Special Counsel, id. at 2. After carefully considering the defendant's motion to dismiss, and all relevant memoranda of law and

exhibits attached thereto,[1] the Court concludes for the reasons below that the defendant is entitled to summary judgment as to the plaintiff's Title VII claim, and that it must dismiss the plaintiff's Whistleblower Protection Act claim for lack of subject-matter jurisdiction.

## I. Background

The plaintiff worked as a Grade 12 Industrial Hygienist at the Internal Revenue Service ("IRS") in the Division of Real Estate Facilities Management ("Facilities Management") of the Agency Wide Shared Services since 2001. Defendant's Statement of Material Facts to Which There is No Genuine Dispute ("Def.'s Facts") ¶ 1. Annette Burrell was employed as a Management and Program Analyst in the same IRS office and division as the plaintiff, and on August 11, 2002, she received a temporary promotion from a Grade 13 to a Grade 14 Management Analyst position.[2] Def.'s Facts ¶¶ 2-3; Pl.'s Facts ¶ 7. Although Burrell's original detail was to last no longer than 120 days, Pl.'s Facts ¶ 8; Def.'s Facts ¶ 2, the detail was renewed

---

[1] In addition to the amended complaint and the Defendant's Motion to Dismiss the Amended Complaint or, in the Alternative, Motion for Summary Judgment and memorandum in support thereof, the Court considered the following documents in reaching its decision: (1) the Defendant's Statement of Material Facts to Which There is No Genuine Dispute (the "Def.'s Facts"); (2) the Plaintiff's Statements of Genuine Issue of Material Facts Necessary to Be Litigated (the "Pl.'s Facts"); (3) the plaintiff's Memorandum in Support of Plaintiff's Opposition to the Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (the "Pl's Opp'n"); and (4) the Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Amended Complaint, or in the Alternative, Motion for Summary Judgment (the "Def.'s Reply").

Additionally, the plaintiff moves strike pages 13-16 from the defendant's reply brief on the grounds that the defendant raised two new defenses that were not raised in his motion to dismiss or, in the alternative, for summary judgment. Specifically, the plaintiff asserts that the defendant raised for the first time in his reply that the detail assigned to Burrell was not a prohibited personnel action under 5 C.F.R. § 335.103(c)(3)(v) and IRM 6.335.1.7(2)(b), Plaintiff's Motion to Strike Pages 13-14 of the Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment at 3, and that he also raised for the first time the argument that the plaintiff was required to seek review of his claim before the Merit System Protection Board (the "MSPB") in order to bring suit in federal court, Plaintiff's Supplemental Motion to Strike Pages 14-16 of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Amended Complaint, or in the Alternative, Motion for Summary Judgment; see also Def.'s Reply at 15 (arguing that the plaintiff was required to exhaust his administrative remedies before the MSPB after seeking review before the Office of Special Counsel). Given the Court's conclusion below that the Court lacks subject-matter jurisdiction due to the plaintiff's failure to raise a proper "mixed case" complaint before the Equal Employment Office (the "EEO"), see infra p. 20, the Court need not address whether the Burrell detail complied with Treasury Department's internal regulations, or whether the plaintiff was required to exhaust his claim before the MSPB. The Court, therefore, denies the plaintiff's motion to strike as moot.

[2] For ease of reference, the Court will refer to Burrell's temporary promotion as the "Burrell Detail."

and Burrell ultimately held the Management Analyst position until July 2003, Pl.'s Facts ¶ 9; Def.'s Facts ¶¶ 4-6.

The IRS advertised a job announcement from May 5, 2003 to May 19, 2003, for a Safety and Occupational Health Manager position. Def.'s Facts ¶ 7; Pl.'s Facts ¶ 13. After interviewing the plaintiff and three other candidates, the IRS selected Burrell for the position. Hamilton v. Paulson, 542 F. Supp. 2d 37, 40-41 (D.D.C. 2008) (Walton, J.). The plaintiff learned that he was not chosen for the Safety and Occupational Health position on August 11, 2003. Id. ¶ 8.

On August 14, 2003, a staff assistant sent an email that congratulated Burrell on her selection for the new Safety Manager position and also noted that she had been on detail to the Facilities Management Headquarters for the one year prior to her promotion. Def.'s Facts ¶ 9; Pl.'s Facts ¶ 24. On August 28, 2003, the plaintiff contacted an Equal Employment Opportunity Commission (the "EEOC") counselor regarding his non-selection for the Safety Manager position. Pl.'s Opp'n at 5. The counselor interviewed the plaintiff on September 2, 2003, Def.'s Facts ¶ 12, during which point he told the counselor that he had not been selected for the Burrell detail, see Pl.'s Facts ¶ 28. Upon completion of the informal counseling process, the plaintiff filed a formal complaint with the defendant on October 21, 2003. Def.'s Facts. ¶ 13; Pl.'s Facts ¶ 29. The defendant confirmed receipt of the plaintiff's complaint in a letter to the plaintiff dated December 17, 2003, and further stated the following:

> Based on our review of the formal complaint and the EEO Counseling Report, the complaint is accepted for processing under the provisions of the Equal Employment Opportunity Commission . . . regulations, 29 CFR [§] 1614. The claim to be investigated is:
>
>> Was the Complainant discriminated against based on his race (African American), color (light skinned) and/or sex (male) when he was not selected on August 11, 2003, for promotion to the position of Safety and

> Health Manager, GS-0018-14, under Vacancy Announcement Number 15-02-OFM03706?
>
> If you disagree with the claim, please notify me in writing within 15 days of the date of this letter. . . . If no response is received, I will assume that you agree with the claims(s) and will proceed with the investigation of the complaint.

Pl.'s Opp'n, Ex. 7 (December 17, 2003 Letter from Jerry Armstrong to Howard Wallace ("Dec. 17, 2003 Letter")), at 1 (emphasis added).

On January 20, 2004, the defendant notified the plaintiff that he was not chosen for another Health and Safety Manager detail position. Def.'s Facts ¶ 15. The position was awarded to a white female named Camille Carraway. Hamilton, 542 F. Supp. 2d at 41. The plaintiff contacted an EEO counselor on February 23, 2004, concerning his non-selection for this second Safety Manager detail (the "Carraway detail"). Def.'s Facts ¶ 16. In his administrative complaint for his non-selection for the Carraway detail, the plaintiff stated that his non-selection was based upon a "[p]lanned, arranged and executed . . . non-competitive selection process of a detail assignment [with] a discriminatory motive," the motivating factors being his race, color and sex. Id. ¶ 17 (second alteration in original). The plaintiff met with an EEO counselor on February 26, 2004, concerning his non-selection for the Carrway detail position, id. ¶ 18, and sent a letter in August 2004 requesting that his original EEO claim be amended to include his new claim for his non-selection for the Carraway detail, id. ¶ 19.

The plaintiff initially filed his complaint in this Court on August 1, 2005, alleging that the defendant engaged in unlawful discrimination by declining to select him for the Health Safety Manager position, and that the defendant retaliated against him by not giving him the opportunity to apply for the Carraway detail. Hamilton, 542 F. Supp. 2d at 41. On August 14, 2007, the defendant filed a motion for summary judgment on both counts of the complaint. Id. at

41.  In opposing the defendant's summary judgment motion, the plaintiff asserted a new claim for race and sex based discrimination based on his non-selection for the Burrell detail.  Id. at 42.  The defendant objected to the Court entertaining this new claim on the grounds that the plaintiff has not exhausted his administrative remedies as to this claim, id. at 62, neglected to assert this claim in his complaint filed in this Court, and that the claim was untimely, id. at 42.  Ultimately, the Court granted the defendant's motion for summary judgment on both counts of the plaintiff's complaint pursuant to Fed. R. Civ. P. 56.  Id. at 57, 61.  However, this Court declined to dismiss the plaintiff's claim of discrimination based on the Burrell detail.  Id. at 62.  Relying on the District of Columbia Circuit's decision in Wiley v. Glassman, 511 F.3d 151 (D.C. Cir. 2007), the Court concluded that dismissal of this new claim, although raised for the first time in the plaintiff's brief filed in opposition to summary judgment, was improper because the defendant "ha[d] not articulated any undue prejudice arising from the consideration of this claim," and that the Court could not "adjudicate the merits of the defendant's exhaustion argument without additional briefing from the parties."  Hamilton, 542 F. Supp. 2d at 61-62.  The plaintiff then amended his complaint to include a claim for discrimination in regards to the Burrell detail, Compl. ¶ 19, while also asserting that the defendant engaged in a prohibited personnel action in violation of 5 U.S.C. § 2302, id. at 5.  Not surprisingly, the defendant filed the motion now before the Court, arguing that the plaintiff's claims should be dismissed for failure to exhaust his administrative remedies.  Def.'s Mem. at 2

## II.  Standards of Review

The defendant moves to dismiss the plaintiff's complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), for failure to state a claim upon which relief can be

granted under Federal Rule of Civil Procedure 12(b)(6), and, in the alternative, the defendamt moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

A.   Federal Rule of Civil Procedure 12(b)(1)

In deciding a motion to dismiss based upon lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a Court is not limited to the allegations set forth in the complaint, but  "may consider materials outside of the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction[.]"  Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Under Rule 12(b)(1), "it is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction, see e.g. Hollingsworth v. Duff, 444 F. Supp. 2d 61, 63 (D.D.C. 2006) (Collyer, J.).

B.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly stated a claim upon which relief may be granted.  Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000).  For a complaint to survive a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a) requires that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a) does not require "detailed factual allegations," a plaintiff is required to provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555 (omission in original).  In other words, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, ___ U.S. at ___, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 547). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). A complaint alleging facts which are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (quoting <u>Twombly</u> 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion under this framework, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice," <u>E.E.O.C. v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted). Although the Court must accept the plaintiffs' factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, ___ U.S. at ___, 129 S. Ct. at 1950. If "the [C]ourt finds that the plaintiff[] has failed to allege all the material elements of [his] cause of action," then the Court may dismiss the complaint without prejudice, <u>Taylor v. FDIC</u>, 132 F.3d 753, 761 (D.C. Cir. 1997), or with prejudice, provided that the Court "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

C.     Federal Rule of Civil Procedure 56

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, this Court must find that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations omitted).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact, and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial."  Anderson, 477 U.S. at 248 (internal quotation and citation omitted) (second omission in original).  Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (citations omitted).

### III.  Legal Analysis

The issues presented to the Court by the defendant's summary judgment motion are several.  First, the Court must decide whether the plaintiff has exhausted all administrative remedies with regards to his allegation that he was discriminated against by being passed over for the Burrell detail.  Second, the Court must determine whether it has jurisdiction to entertain the plaintiff's claim that the defendant committed a prohibited personnel action in violation of 5 U.S.C. § 2302.  Third, if the plaintiff's prohibited personnel action claim is properly before the Court, it must decide whether the defendant did, in fact, engage in a prohibited personnel action in violation of the aforementioned statutory and regulatory provisions.  For the reasons discussed below, the Court concludes that the plaintiff has failed to exhaust his administrative remedies regarding his discrimination claim, and that it need not decide the question of whether the defendant engaged in a prohibited personnel action because the plaintiff has failed to properly pursue administrative review of this claim.

A.  <u>Failure to Exhaust Administrative Remedies Regarding the Title VII Claim.</u>

As an initial matter, the defendant's attempt to have the Court dismiss the plaintiff's complaint is without merit.  <u>See</u> Def.'s Mem. at 1 (moving to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)).  First, the plaintiff's failure to exhaust his administrative remedies under Title VII does not implicate a court's subject-matter jurisdiction and, thus, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) would be inappropriate.  "The word 'exhaustion' . . . describes two distinct legal concepts." <u>Avocados Plus Inc. v. Veneman</u>, 370 F.3d 1243, 1247 (D.C. Cir. 2004).  The first "is a judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court," whereas "[t]he second form of

exhaustion arises when Congress requires resort to the administrative process as a predicate to judicial review." Id. Only the latter concept has jurisdictional implications. See id. (explaining that so-called "jurisdictional exhaustion" is "rooted ... in Congress' power to control the jurisdiction of the federal courts"). Moreover, a district court must "presume [that] exhaustion is non-jurisdictional unless Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." Id. at 1248 (internal quotation marks and citation omitted). As the Court has already held in this case, an exhaustion of administrative remedies challenge raised in the Title VII context is an affirmative defense that is not jurisdictional in nature. See Hamilton v. Geithner, 616 F. Supp. 2d 49, 61-62 (D.D.C. 2009) (Walton, J.) (noting that 42 U.S.C. § 2000e-16(c) provides only that a plaintiff "may file a civil action" if the requirements of the statute are met). Thus, the defendants cannot invoke Rule 12(b)(1), which authorizes dismissals for lack of subject-matter jurisdiction, as a basis for the dismissal of the complaint.

The defendant also cannot rely on Rule 12(b)(6) as a basis for dismissing the complaint for the failure to exhaust all administrative remedies. Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to provide a short and plain statement setting forth the plaintiff's grounds for relief, and in his amended complaint, the plaintiff asserts that he "timely filed his formal charges of discrimination . . . with [the] Equal Employment Opportunity [Commission]," Compl. ¶ 6, and that "[t]he condition precedent to this suit has been satisfied," id. ¶ 7. While it is true that, as a general matter, legal "conclusions[] are not entitled to the assumption of truth," Iqbal, ___ U.S. at ___, 129 S. Ct. at 1950, here the requirement that a party must exhaust all available administrative remedies is a condition precedent to bringing a Title VII claim in federal court, Million v. Frank, 47 F.3d 385, 389 (10th Cir. 1995), and thus, the plaintiff may allege that this

condition has been satisfied, see Fed. R. Civ. P. 9(c) (stating that "it suffices to allege generally that all conditions precedent have occurred or been performed" (emphasis added)). The only possible procedural mechanism available to the defendant to raise his exhaustion of administrative remedies defense at this stage of the proceedings, therefore, is Federal Rule of Civil Procedure 56.

The Court should note that the defendant has moved for summary judgment before any discovery has been conducted in response to the amended complaint. To be sure, a district court faced with a summary judgment motion pre-discovery must be cognizant that the parties are "allow[ed] . . . both a reasonable opportunity to present all material made pertinent to such a motion by Rule 56 and a chance to pursue reasonable discovery." Taylor, 132 F.3d at 765 (internal quotation marks and citation omitted). Nonetheless, a district court can consider a summary judgment motion when it "is satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete and dispositive." Smith v. United States, 518 F. Supp. 2d 139, 154 (D.D.C. 2007) (Walton, J.) (internal quotation marks and citation omitted); see also Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 592 (2d Cir. 1993) (finding no error in district court's conversion of motion to dismiss under Rule 12(b)(6) to motion for summary judgment without prior notice to parties where both parties submitted evidence in support of their positions). In this instance, the Court finds it appropriate to address the motion in light of the fact that both parties have submitted briefings and have fully discussed the factual issues surrounding the administrative exhaustion issue. Furthermore, while the parties have not conducted discovery in regards to the claims set forth in the plaintiff's amended complaint, the parties did engage in discovery in regards to the plaintiff's original complaint, and neither party has requested the need

for additional discovery in order to resolve the claims now before the Court. Accordingly, neither party would be deprived of the benefit of uncovering new information in discovery regarding the exhaustion issue as they have had adequate opportunity to conduct discovery concerning this matter, and the exhaustion issue has been extensively discussed in the briefings by both parties.

As noted above, the defendant's assertion that the plaintiff failed to exhaust his administrative remedies before filing this action is considered an affirmative defense that does not have jurisdictional implications. Pearsall v. Holder, 610 F. Supp. 2d 87, 95 (D.D.C. 2009) (Friedman, J.). As an affirmative defense, the defendant bears the burden of raising and producing evidence that evidences the plaintiff's failure to satisfy all of the procedural requirements regarding his discrimination claim for not receiving the Burrell detail. Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). If the defendant satisfies this burden, then the plaintiff must either rebut the defendant's evidence or rely upon an equitable doctrine such as tolling, waiver, or estoppel to avoid dismissal. Id.

"It is well-established that a federal employee may assert a Title VII claim in federal court only after a timely complaint has been presented to the agency involved." Nurriddin v. Goldin, 382 F. Supp. 2d 79, 92 (D.D.C. 2005) (Bates, J.). Thus, a "federal employee filing a Title VII action must exhaust his . . . administrative remedies before seeking judicial review." Rhodes v. Napolitano, 656 F. Supp. 2d 174, 179 (D.D.C. 2009) (Sullivan, J.) (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 832-33 (1976)). Specifically, a federal employee must initiate contact with an EEO counselor within forty-five days of the date of the event believed to be the discriminatory or retaliatory action. 29 C.F.R. § 1614.105(a)(1) (2010). With regard to personnel actions, contact with the EEO counselor must occur within forty-five days of the

effective date of the personnel action. Id. The EEO counselor must then conduct a final interview within thirty days of the employee's contact with the EEO counselor, otherwise, the counselor is required to notify the employee of his right to file an administrative complaint within fifteen days of the notice. Id. § 1614.105(d). And, the administrative complaint may be amended at any time prior to the conclusion of the agency's investigation. Id. § 1614.106(d). An employee may bring a civil action within ninety days of receipt of notice of the EEO counselor's final action, id. § 1614.407(a), or 180 days from the filing of the complaint if no appeal or final action has occurred, id. § 1614.407(b). See also 42 U.S.C. § 2000e-16(c).

These administrative requirements have been consistently recognized by the District of Columbia Circuit as being prerequisites for instituting a Title VII action in the district court. See Bowden, 106 F.3d at 437 (holding that the plaintiff in fact failed to timely exhaust his administrative remedies before filing a Title VII claim, but later held that the doctrine of waiver applied and the claim was not dismissed). The purpose of these requirements is to give the agency notice of the allegations that it faces and allow it the opportunity to internally investigate and resolve the matter. Pearsall, 610 F. Supp. 2d at 98; see also Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) (Lamberth, J.). By forgoing or circumventing this administrative process, the defendant agency is stripped of the opportunity to reach an internal resolution regarding the matter. Pearsall, 610 F. Supp. 2d at 98. Additionally, administrative exhaustion works to preserve the court's time and resources by authorizing only the presentation of claims that have been "diligently pursued" by the plaintiff. See Romero-Ostolaza, 370 F. Supp. 2d at 149 (quoting Velikonja v. Mueller, 315 F. Supp. 2d 66, 74 (D.D.C. 2004) (Huvelle, J.), rev'd on other grounds sub nom. Velikonja v. Gonzales, 466 F.3d 122, 123 (D.C. Cir. 2006)) (observing that among the purposes of exhaustion is to "'ensure[] that only claims [the] plaintiff

has diligently pursued will survive'"). These procedures cannot go unfulfilled unless the Court finds that the equitable doctrines of either waiver, estoppel or tolling applies. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see also Bowden, 106 F.3d at 437.

Most importantly, an employee must exhaust the administrative process above for each discrete action for which he or she seeks to bring a claim. See Morgan, 536 U.S. at 113; Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 137 (D.D.C. 2004) (Friedman, J.) In assessing whether an administrative claim has been timely filed, the Supreme Court in Morgan noted that "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114. The Court in Coleman-Adebayo further elaborated that

> [t]he key to determining whether a claim must meet the procedural hurdles of the exhaustion requirement itself, or whether it can piggy-back on another claim that has satisfied those requirements, is whether the claim is of a 'discrete' act of discrimination or retaliation or, instead, of a hostile work environment. 'Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire' are individual acts that 'occur' at a fixed time. Accordingly, plaintiffs alleging such discriminatory action must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.

Coleman-Adebayo, 326 F. Supp. 2d at 137-38 (quoting Morgan, 536 U.S. at 114). Therefore, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."[3] Morgan, 536 U.S. at 114.

The facts of this case call for the conclusion that the non-selection for the Burrell detail was a discrete incident. Indeed, neither party disputes this point. Instead, the plaintiff argues

---

[3] The Supreme Court has recognized that an employee need not file a complaint for every single discriminatory act where the employee has been subjected to an "unlawful employment practice," Morgan, 536 U.S. at 115, which did not occur at any particular moment, but instead occured over a period of time, i.e., "over a series of days or perhaps years," id. at 103. This is distinguishable from a discrete act because in those instances "a single act . . . may not be actionable on its own." Id. Therefore, "[s]uch claims are based on the cumulative effect of individual acts." Id. at 115 This exception to the general rule that a plaintiff must exhaust his administrative remedies for each discrete action is inapplicable here, however, because the plaintiff does not (nor could he) dispute that the alleged discrimination in regards to the Burrell detail was a discrete act and not an ongoing practice.

that he followed all of the required administrative steps in pursuing his discrimination claim concerning the Burrell detail. Pl.'s Opp'n at 7. In support of his position, the plaintiff relies on the EEO counselor's report that memorialized the informal investigation that occurred in this case, in which the counselor provided the following brief summary of the allegedly discriminatory actions that led the plaintiff's request for counseling:

> The AP (Plaintiff) alleges discrimination based on race – African American, color- black, and [] sex – male, with the issue being non selection when management:
> - Selected a Caucasian female with observably/demonstrably less qualifications than [the plaintiff]
> - Planned, arranged and executed with a discriminatory motive to give the same white woman preferential treatment by giving a detail (for 12 months) into the position.
> - Planned, arranged and executed the selection process using an evaluation process with a discriminatory motive that is subjective in nature to form an otherwise (pretext) defensible legitimate selection process.

Pl.'s Opp'n at 6. The plaintiff asserts that the EEO counselor's report reflects that one purpose of the meeting and initial contact with the EEO counselor was to assert a discrimination claim for the Burrell detail. Id. at 6-7. The defendant, on the other hand, argues that the reference to the Burrell detail in the EEO's counseling report is nothing more than "background information" that places his allegations regarding the discriminatory selection of the Health Safety Manager position "in context." Def.'s Mem. at 8. In other words, the defendant argues that the reference to the Burrell detail in the EEO counselor's summary reflects "one of three contributory factors that [the p]laintiff believed led to his non selection for the Safety Specialist position, and nothing more." Id.

While a plain and isolated reading of the EEO counselor's description of the plaintiff's complaint can harbor both interpretations proffered by the parties, a review of the entire report drafted by the EEO counselor, together with the other documents in the record, leaves the Court

with the unmistakable impression that the plaintiff failed to pursue a separate claim for discrimination based on the Burrell detail. In the EEO counselor's summary description of the complaint, the plaintiff asserted that "he was not selected for the . . . Safety Specialist" position, even though his qualifications were superior to Burrell's qualifications. Id., Ex. 7 (EEO Counselor's Report) at 4. The plaintiff then went on to state that "he ha[d] twenty-one years in the field of [o]ccupational [s]afety [and h]ealth, a[n undergraduate] degree in [i]ndustrial [h]ygiene, [and] a [m]asters degree in [p]ublic [h]ealth" and that he had been promoted from positions at the "entry level, to journeyman, to policy," unlike Burrell, who "does not have a degree, and does not have [twenty-one] years of experience." Id., Ex. 7 (EEO Counselor's Report) at 5. The plaintiff did mention the Burrell detail, but he never asserted that he was more qualified than Burrell for the detail; rather, he simply states that "[t]he detail assignment for the white female was used to give her preferential treatment" for the Safety Specialist position. Id. Thus, when the initial interview is considered in context, it is apparent that the plaintiff invoked the Burrell detail only to suggest that it was a pretext to justify awarding the Safety Specialist position to Burrell, and not that he should have been selected for the detail.

The Court's conclusion concerning the EEO counselor's summary is further buttressed by the remaining portions of her report, where she memorializes her findings from her informal investigation. For example, the Selection Official conveyed to the EEO counselor that the plaintiff "did not answer the questions clearly" during his interview for the Safety Specialist position, and that the panel unanimously agreed that his "interview [did not] go as well as the other candidates." Id. Moreover, as for the counselor's own investigative efforts, she "developed a graphic comparative analysis . . . for the candidates who applied for the position of Safety Specialist," and that based on this information, she did not believe that the plaintiff's non-

selection was due to discrimination.  Id.  Nowhere in these summaries, however, is there any mention of the Burrell detail.  In sum, there is nothing in the EEO counselor's report that denotes any communication by the plaintiff that he even complained of being passed over for the Burrell detail, let alone that he was discriminated against by not being selected for the position.

More compelling evidence regarding the plaintiff's failure to raise a complaint regarding the Burrell detail is actually disclosed by the events that occurred after the EEO counselor completed her informal investigation.  After receiving the notice of his right to file a formal EEO complaint on October 9, 2003, see id., Ex. 7 (EEO Counselor's Report), at 4, the plaintiff filed a formal complaint with the Department of Treasury on October 21, 2003, id., Ex. 6 (Hamilton EEO Complaint), at 1.  In that complaint, the plaintiff was asked to designate the title and grade of the position he was denied due to unlawful discrimination.  Id.  In response, the plaintiff does not list the Burrell detail; rather, the only position he identifies is the Safety Specialist position.  In fact, upon receipt of the plaintiff's formal EEO complaint, the defendant confirmed that "[t]he claim to be investigated is" whether the plaintiff was "discriminated against based on his race . . . , color[,] and/or sex . . . when he was not selected . . . for promotion to the position of Safety and Health Manager."  Id., Ex. 8 (Dec. 17, 2003 Letter), at 1.  The letter does not reference the Burrell detail, and certainly if the plaintiff believed that this claim was inadvertently or inappropriately omitted from the charges he wanted to be investigated, he certainly had the opportunity (and informed responsibility) to apprise the agency of its error.  See id. ("If you disagree with the claim, please notify me in writing within [fifteen] days of the date of this letter.").  Accordingly, the plaintiff's formal complaint, and his subsequent silence upon receiving the confirmation letter, confirms the conclusion that the plaintiff had no intention at the

agency stage to pursue a discrimination claim based on the Burrell detail, and that he did not, in fact, pursue such a claim with the agency.[4]

Furthermore, none of the equitable defenses available to a Title VII plaintiff—equitable tolling, estoppel, or waiver—excuse the plaintiff's failure to exhaust his administrative remedies. To be clear, the doctrines of equitable estoppel or tolling have no application here, as the plaintiff does not seek to toll the limitations period, see Currier v. Radio Free Europe/Radio Liberty, Inc., 159 F.3d 1363, 1367 (D.C. Cir. 1998) ("Both equitable estoppel and equitable tolling operate, in a practical sense, to toll a limitations period."); indeed, he is asserting that his claim regarding the Burrell detail was timely submitted to the EEO counselor, see Pl.'s Opp'n at 6 (asserting that the plaintiff "definitely" and "clearly" submitted his claim of discrimination regarding the Burrell detail "in a timely fashion"). As to whether the need to exhaust was waived, the plaintiff appears to allude to this defense by stating the following in his opposition memorandum:

> Defendant himself asked Plaintiff twice during discovery, via interrogatories and deposition, whether Plaintiff wished to pursue his discrimination claim on the non-selection for the detail, and he answered in the affirmative. (emphasis added). Additionally, Defendant also asked . . . whether Plaintiff believed he qualified for the detail that Burrell got.
>
> If Defendant's assertion were truly sincere, then it would not have made the type of inquiries it made of Plaintiff during discovery. . . . The purpose of discovery is to enable parties to obtain the factual information needed to prepare their cases for trial.

Pl's Mem. at 7-8 (citation omitted). To the extent that the plaintiff believes that these allegations merit a waiver determination, his is mistaken. The waiver doctrine applies where an agency has accepted, investigated, and decided the merits of a plaintiff's claim, despite the plaintiff's failure to strictly comply with all of the administrative requirements for pursuing a Title VII claim in district court. Bowden, 106 F.3d at 438-39; see also Saltz v. Lehman, 672 F.2d 207, 208 (D.C.

---

[4] Additionally, the record is devoid of any additional documentation establishing that the plaintiff filed a separate EEO formal complaint based on the Burrell detail.

Cir. 1982).  There is nothing in the record to support a finding that the defendant accepted this new discrimination claim during discovery, that it conducted the type of internal investigation that is at the heart of the administrative exhaustion requirement, or that, more importantly, it issued a decision on the merits of a claim regarding the Burrell detail.  Simply stated, none of the equitable principles that would excuse the plaintiff's failure to timely exhaust his administrative remedies as to the Burrell detail have any applicability based on the facts in this case.  Thus, the Court must grant summary judgment to the defendant on this claim.

      B.   Failure to Exhaust Administrative Remedies for Prohibited Personnel Action Claim

With regards to the plaintiff's claim that the defendant engaged in a prohibited personnel action in violation of 5 U.S.C. § 2302 when Ms. Burrell received the detail, the Court must turn to provisions of the Civil Service Reform Act, Pub. L. No. 95-454, Stat. 1111 (codified in various sections of Title 5 of the United States Code), which "provides the exclusive set of remedies for claims brought" under Section 2302.  See Harris v. Bodman, 538 F. Supp. 2d 78, 82 (D.D.C. 2008) (Robertson, J.) (citing Richards v. Kiernan, 461 F.3d 880, 885 (7th Cir. 2006)).  As a general matter, a party seeking to challenge a prohibited personnel action must first present such a claim to the Office of Special Counsel.  5 U.S.C. § 1214 (2006).  Here, however, the plaintiff alleges that not only did the defendant engage in discrimination when Burrell was assigned the detail, but that the defendant engaged in prohibited personnel action when he did so.  See Pl.'s Opp'n at 24 ("In addition to this discriminatory detail, there is prohibited personnel action.").  Thus, the plaintiff argues that this is a "mixed case" suit involving a discriminatory and non-discriminatory action, and therefore "this type of case is to be treated as a unit[] and [can] be brought before the . . . [C]ourt."  Pl.'s Opp'n at 24 (citing Ikossi v. Dep't of the Navy, 516 F.3d 1037 (D.C. Cir. 2008)).

The plaintiff is correct that a complainant who pursues a "mixed case" need not first present his claim to the Office of Special Counsel. As the District of Columbia Circuit has recognized, 29 C.F.R. § 1614.302 (2010) allows a complainant to choose between filing a "mixed case complaint" with the EEO office and filing a "mixed case appeal" directly with the MSPB. Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999). However, a plaintiff must choose one procedural mechanism; recovery under both avenues is not available. See 29 C.F.R. § 1614.302 ("An aggrieved person may initially file a mixed case complaint with an agency . . . or an appeal on the same matter with the MSPB . . . but not both."). Regardless of whether a complainant seeks to solely challenge a prohibited personnel action before the Office of Special Counsel, or in a "mixed case" before the EEO office or MSPB, one of these administrative remedies must be exhausted before suit can be heard in federal court. See Weaver v. U.S. Info. Agency, 87 F.3d 1429, 1433 (D.C. Cir. 1996) ("Under the [Civil Service Reform Act], exhaustion of administrative remedies is a jurisdictional prerequisite to suit.").

Here, there is no evidence that the plaintiff exhausted his administrative remedies before either the EEO office or the MSPB. Indeed, as noted above, the plaintiff insists that he sought review of his claim regarding the Burrell detail before the EEO office, and thus, by negative inference, he did not seek a direct "mixed case appeal" with the MSPB. Furthermore, the Court has already concluded that the plaintiff failed to pursue a claim of discrimination in regards to the Burrell detail in the proceedings before the EEO office, and thus the plaintiff could not be said to have filed a "mixed case" complaint before that office. Based on the record before the Court, the plaintiff's prohibited personnel action claim must be dismissed due to his failure to seek relief through the appropriate administrative procedures.

## IV. Conclusion

"One of the fundamental purposes of any exhaustion requirement is to ensure that the agency has notice of a claim 'and the opportunity to handle it internally.'" Pearsall, 610 F. Supp. 2d at 98 (quoting Velikonja, 315 F. Supp. 2d at 74). With regards to the Burrell detail, the plaintiff made no attempt to exhaust any administrative remedies that were available to him, regardless of whether it was pursued under Title VII or the Whistleblower Protection Act. Thus, he deprived the defendant of the opportunity to conduct an internal investigation and to possibly resolve this matter informally. By failing to comply with the appropriate administrative procedures before filing suit in this forum, the Court has no choice but to grant summary judgment to the defendant with regards to the Title VII claim, and to dismiss the complaint for lack of subject-matter jurisdiction as to the prohibited personnel action claim.

**SO ORDERED** this 13th day of October, 2010.[5]

REGGIE B. WALTON
United States District Judge

---

[5] A final order will be issued contemporaneously with this memorandum opinion (1) denying the defendant's motion to dismiss the plaintiff's Title VII claim pursuant to Federal Rule of Civil Procedure 12(b)(1), (2) granting the defendant's motion to dismiss the plaintiff's Whistleblower Protection Act claim pursuant to Rule 12(b)(1), (3) denying the defendant's motion to dismiss the plaintiff's Title VII claim pursuant to Federal Rule of Civil Procedure 12(b)(6), (4) denying as moot the defendant's motion to dismiss the plaintiff's Whistleblower Protection Act claim pursuant to Rule 12(b)(6), (5) granting the defendant's motion for summary judgment as to the plaintiff's Title VII claim, (6) denying as moot the defendant's motion for summary judgment as to the plaintiff's Whistleblower Protection Act claim, (7) denying as moot both the Plaintiff's Motion to Strike Pages 13-14 of the Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and the Plaintiff's Supplemental Motion to Strike Pages 14-16 of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Amended Complaint, or in the Alternative, Motion for Summary Judgment, and (8) closing this case.