## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
GARY HAMILTON,                                )
)
                        Plaintiff,              )
            v.                                    )          Civil Action No. 05-1549 (RBW)
)
JACOB LEW,[1]                                  )
Secretary of the Department of the Treasury,   )
)
                        Defendant.              )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff in this civil suit, Gary Hamilton, seeks compensatory damages as a result of

alleged employment discrimination during the course of his employment with the Internal

Revenue Service ("IRS"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e-2, -3 (2006), and the Civil Service Reform Act, 5 U.S.C. § 2302.  <u>See generally</u>

Complaint ("Compl."); Amended Complaint ("Am. Compl.").  The District of Columbia Circuit

affirmed this Court's grant of summary judgment in favor of the defendant, the Secretary of the

Department of the Treasury, on the plaintiff's Civil Service Reform Act claim regarding his

temporary detail, reversed this Court's grant of summary judgment on the plaintiff's Title VII

discriminatory promotion claim and remanded that claim for trial, and remanded the plaintiff's

Title VII retaliation claim based on its conclusion that the plaintiff had established a <u>prima facie</u>

case of retaliation.  <u>See</u> <u>Hamilton v. Geithner</u> (<u>Hamilton IV</u>), 666 F.3d 1344, 1347 (D.C. Cir.

_____

[1] The plaintiff's complaint, filed August 1, 2005, names John Snow, at that time the Secretary for the Department of the Treasury, as the defendant.  The Court has substituted Secretary Jacob Lew as the defendant in lieu of former Secretary Snow pursuant to Federal Rule of Civil Procedure 25.

2012).  The Circuit explained that it was remanding the retaliation claim in order for this Court

"to determine in the first instance whether a reasonable jury could conclude that the Secretary's

proffered explanation [for the action being challenged by the plaintiff] was pretext for

retaliation."  Id. at 1359.  Upon consideration of the parties' submissions,[2] the Court concludes

for the reasons stated below that a reasonable jury could not conclude that the defendant's

proffered explanation was pretext for retaliation, and that the defendant must be granted

summary judgment as to the plaintiff's retaliation claim.

## I.  BACKGROUND

The circumstances underlying this action are set forth in several memorandum opinions

issued by this Court, see Hamilton v. Paulson (Hamilton I), 542 F. Supp. 2d 37, 40-42 (D.D.C.

2008) (Walton, J.); Hamilton v. Geithner, (Hamilton II), 616 F. Supp. 2d 49, 52-54 (D.D.C.

2009) (Walton, J.); Hamilton v. Geithner (Hamilton III), 743 F. Supp. 2d 1, 3-5 (D.D.C. 2010)

(Walton, J.), as well as by the Circuit, see Hamilton IV, 666 F.3d at 1347-49, and so the Court

will not recount all of the facts again here.  In brief, "the plaintiff, an African-American male and

former employee of the Real Estate and Facilities Management department of the IRS, . . .

alleges that the IRS retaliated against him for filing an EEO complaint based on his non-selection

for the Safety Manager position in 2003 when it selected a[] white female, Camille Carraway, for

a detail as a safety manager in January of 2004."  Hamilton II, 616 F. Supp. 2d at 52 (internal

---

[2] This Court ordered the parties to file a joint status report proposing a schedule for supplemental briefing on the issue of pretext.  See July 2, 2012, Minute Order.  However, upon receipt of the plaintiff's July 4, 2012, and July 18, 2012, objections to supplemental briefs on the basis that it would permit the defendant the opportunity to present new argument and would be contrary to the Circuit's directive, the Court agreed that the issue must be decided on the basis of the arguments presented in the summary judgment briefing previously filed with the Court.  See August 30, 2012, Order, ECF No. 106 at 1-2.  Accordingly, in addition to the filings already identified, the Court considered the following submissions in rendering its decision:  (1) the Defendant's Motion for Summary Judgment, ECF No. 42 ("Def.'s Mot."); (2) the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, ECF No. 42 ("Def.'s Mem."); (3) the Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 51 ("Pl.'s Mem."); (4) the Supplemental Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 52 ("Pl.'s Supp. Mem."); and (5) the Defendant's Reply in Support of Motion for Summary Judgment, ECF No. 56 ("Def.'s Reply").

quotation marks omitted); see also Hamilton I, 542 F. Supp. 2d at 41 (summarizing the plaintiff's

retaliation allegations).  The defendant argues that he has articulated a legitimate, non-retaliatory

reason for offering Ms. Carraway the detail and that he is therefore entitled to summary

judgment on the plaintiff's retaliation claim.  Def.'s Mem. at 18.

## II.  STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. Pro. 56(a).  To determine which facts are "material," a court must look to the substantive

law on which each claim rests.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

"genuine issue" is one whose resolution could establish an element of a claim or defense and,

therefore, affect the outcome of the action.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

Anderson, 477 U.S. at 248.

When ruling on a motion for summary judgment, the Court must view the evidence in the

light most favorable to the non-moving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir.

2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  The Court

must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the

nonmoving party's evidence as true.  Anderson, 477 U.S. at 255.  The non-moving party,

however, cannot rely on "mere allegations or denials of the adverse party's pleading," Burke v.

Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248), and "must do

more than simply show that there is some metaphysical doubt as to the material facts,"

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

Simply put, "conclusory allegations unsupported by factual data will not create a triable issue of

fact."  Pub. Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal

quotation marks and citations omitted).  To survive a properly supported motion for summary

judgment, the non-moving party must show that a genuine factual issue exists by "citing to

particular parts of materials in the record . . . or . . . showing that the materials cited do not

establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  Any factual

assertions in the moving party's affidavits will be accepted as true unless the opposing party

submits his own affidavits or other documentary evidence contradicting the assertions.  Neal v.

Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (citation omitted).

### III.LEGAL ANALYSIS

#### A.  The Defendant's Proffered Explanation

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the

employer to articulate a legitimate, non-discriminatory reason for its actions.  Pardo-Kronemann

v. Donovan, 601 F.3d 599, 603 (D.C. Cir. 2010) (citing McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973)).  The employer's burden is one of production.  Texas Dep't of Cmty Affairs v.

Burdine, 450 U.S. 248, 254-55 (1981).  The employer "need not persuade the court that it was

actually motivated by the proffered reasons.  [Rather, i]t is sufficient if the defendant's evidence

raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Id. at 254.

The defendant here argues that he has articulated a legitimate, non-retaliatory reason for

offering Ms. Carraway the temporary detail and not selecting the plaintiff.  Def.'s Mem. at 18.

Specifically, the defendant relies on the testimony of the selecting official, Stuart Burns, who

stated that

> there was no formal announcement seeking volunteers [for the temporary detail]
> from the field.   The decision to select Ms. Carraway was based upon the
> relationship of the Safety Program needs at the time and her skills and abilities.
> Ms. Carraway had demonstrated interest, experience and aptitude in this area in
> the past.   She had participated, along with other Safety Officers, in the
> development of training for the Safety Advisory Committee (SACs).

Additionally, she had voiced her ideas about standardization of training and development of the Safety Officers in the Safety Officer conference calls.

Def.'s Mem. at 17 (quoting Def.'s Mem., Exhibit ("Ex.") 13 (October 2004 Declaration of Stuart

Burns ("Oct. 2004 Burns Decl.") at 2).  Mr. Burns further recounted discussions with two other

IRS employees, Barbara Cohen and Edward Crandall, which he relied upon in making his

decision:

> Ms. Barbara Cohen [] suggested that Ms. Carraway would be an excellent choice to lead the training/mentoring program.  That staff member indicated Ms. Carraway had been very helpful to [the] National Office on other projects and she had skills and interest in Safety Officer training and development.  In a separate conversation, another staff member, Mr. Edward Crandall, shared information about Ms. Carraway's frustration with her current work situation.  Knowing that the senior leadership in our organization had previously advocated field details as a good method for obtaining temporary resources needed by the National Office and given the other information that I had, I asked Ms. Carraway to discuss a proposed detail.  After having a conversation with her and hearing her ideas, I was confident that she was an appropriate choice for the project.

Id. at 18 (quoting Def.'s Mem., Ex. 13 (Oct. 2004 Burns Decl.) at 3).  The defendant further

states that "after speaking with Ms. Cohen and Mr. Crandall, Mr. Burns did not even consider

anyone else, including [the p]laintiff, for the detail."  Id. (citing Deposition of Stuart Burns at

137:28-138:10).

In light of the defendant's assertion that Ms. Carraway was chosen for the position based

on her skills, abilities, and demonstrated interest in the position, and not because the plaintiff had

filed a complaint, the Court finds that the defendant has proffered a sufficiently non-retaliatory

reason for his selection of Ms. Carraway and non-selection of the plaintiff.  Cf. Fischbach v.

Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (stating that a court "may not second guess

an employer's personnel decision absent demonstrably discriminatory motive" (internal

quotation marks and citation omitted)).

**B.  Whether the Defendant's Proffered Explanation is Pretextual**

"[O]nce an employer offers a nondiscriminatory reason for its action, 'to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all the evidence that the adverse employment decision was made for a discriminatory [or retaliatory] reason.'"  Geleta v. Gray, 645 F.3d 408, 413 (D.C. Cir. 2011) (alteration in original) (citation omitted).  Although temporal proximity between a protected activity and an adverse employment action can be sufficient to establish the causal connection necessary for a plaintiff to state a prima facie case of retaliation, Hamilton IV, 666 F.3d at 1357-58, "'positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine,'" id. at 1359 (quoting Woodruff v. Peters, 482 F.3d 521, 530 (D.C. Cir. 2007)).  The plaintiff's burden is one of persuasion, and can be met "either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Burdine, 450 U.S. at 256.

The plaintiff here presents three arguments.  First, he contends that Mr. Burns' reliance on discussions with Ms. Cohen and Mr. Crandall as forming part of his reason for choosing Ms. Carraway "is nothing but a subterfuge," because the evidence suggests that Ms. Carraway was offered the temporary detail in July 2003, at the same time that she and the plaintiff were not selected for the permanent Safety Manager position.  Pl.'s Mem. at 38.  He further argues that, like Ms. Carraway, he possessed the requisite skills and experience, and had expressed interest in the position.  Id. at 41.  Finally, the plaintiff points to the "history or pattern of [Mr. Burns'] selection of white females over [him]."  Id. at 41-42.  The plaintiff's reasons do not rise to the level of the positive, persuasive evidence required to defeat the presumption that the defendant's explanation is genuine.

First, in arguing that Ms. Carraway was promised the temporary detail at the same time that she was turned down for the permanent Safety Manager position in July 2003, the plaintiff has undermined the temporal proximity giving rise to his prima facie claim of retaliation.  If the decision to offer Ms. Carraway the temporary detail had been made in July 2003, then that decision would have come before both the plaintiff's initial EEO counseling session in August 2003 and the filing of his formal EEO complaint on October 21, 2003.  And if the decision preceded the counseling session and the filing of the complaint, then the decision could not have been made in retaliation for the plaintiff's exercise of statutorily protected activity.

Second, the fact that the plaintiff and Ms. Carraway were both qualified for the position and had both expressed interest in it is not enough to overcome the defendant's proffered explanation.  The plaintiff has offered neither direct nor circumstantial evidence that the defendant's decision to choose Ms. Carraway was retaliatory.  He offers no statements or circumstantial evidence suggesting that Ms. Carraway was chosen because the plaintiff had initiated EEO counseling or had filed a complaint alleging discrimination.  See generally Pl.'s Mem. at 38-40.  Nor does he contend that Ms. Carraway was unqualified for the position, and that there was thus no valid reason for offering her the temporary detail instead of offering it to him.  See id.

As noted above, it is not this Court's function to review an employer's personnel decision unless there is evidence of an improper discriminatory, or here, retaliatory, motive in making that decision.  Fischbach, 86 F.3d at 1183.  However, it is true that "'qualifications evidence may suffice, at least in some circumstances,' to show that an employer's proffered explanation is pretext," Hamilton IV, 666 F.3d at 1351 (quoting Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006)).  A court "must assume that a reasonable juror who might disagree with the employer's

decision, but would find the question close, would not usually infer discrimination [or retaliation] on the basis of a comparison of qualifications alone." Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (citation and quotation marks omitted).  Thus, "differences in qualifications that merely indicate a 'close call' do[] not get [a plaintiff] beyond summary judgment." Stewart v. Ashcroft, 352 F.3d 422, 430 (D.C. Cir. 2003) ("This Court will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that race played a part in the decision.").  "A disparity in qualifications, standing alone, can support an inference of discrimination [or retaliation] only when the qualifications gap is 'great enough to be inherently indicative of discrimination'—that is, when the plaintiff is 'markedly more qualified,' 'substantially more qualified,' or 'significantly better qualified' than the successful candidate." Hamilton IV, 666 F.3d at 1352 (citation omitted); see also Rios v. Rossotti, 252 F.3d 375, 380 (5th Cir. 2001) ("In order to be probative on the issue of retaliation, 'the qualifications [must be] so widely disparate that no reasonable employer would have made the same decision.'") (alteration in original) (citation omitted)).

Here, a reasonable jury could not find that Ms. Carraway's qualifications were so disparate from the plaintiff's as to indicate a retaliatory motive on the part of the defendant. Specifically, Ms. Carraway obtained a bachelor's degree in biological sciences in 1977, and also pursued a PhD, though she did not ultimately obtain the PhD because she did not write the required dissertation.  Pl.'s Mem., Ex. 7 (Deposition of Camille Carraway ("Carraway Dep.") at 18:10-19:5.  She also "[p]repared and published peer reviewed scientific articles" and "[t]aught microbiology and general biology [at] the college level."  Pl.'s Supp. Mem., Ex. 42 (Camille Carraway Application for Promotion/Reassignment) at 12-13.  For nine years, she owned and

operated her own industrial hygiene consultation business.  Pl.'s Mem., Ex. 7 (Carraway Dep.) at

17:17-18-10.  She also worked with the Federal Emergency Management Agency prior to

working with the IRS, id. at 17:15-20, and, overall, had "20 years['] experience as a safety and

health professional," Pl.'s Mem., Ex. 21 (Individual Rating Sheet for Camille Carraway) at 1.

By contrast, the plaintiff had "approximately nineteen years of experience working in industrial

hygienist and safety professional positions within the federal government . . . , [a] bachelor's

degree in industrial hygiene, . . . as well as a master's degree." Hamilton IV, 666 F.3d at 1353.

Given that both Ms. Carraway and the plaintiff had post-secondary degrees, extensive experience

in safety and health, and maintained the requisite certifications, Def.'s Mem., Ex. 13 (Oct. 2004

Burns Decl.) at 4, no reasonable juror could conclude that the plaintiff was "'markedly more

qualified,' 'substantially more qualified,' or 'significantly better qualified,'" Hamilton IV, 666

F.3d at 1352, than Ms. Carraway.  Thus, the differences in their qualifications are not such that

the decision to offer her the temporary detail could give rise to an inference of retaliation.

  Finally, the plaintiff's assertion that the defendant "repeatedly considers white females

[for positions] to the [p]laintiff's detriment," id. at 41, does not at all address whether Ms.

Carraway was hired instead of the plaintiff because of the plaintiff's decision seek EEO

counseling or to file a discrimination complaint.  Rather, his arguments go to the defendant's

general purported discriminatory hiring practices.  Thus, even if the allegation is true, it raises a

question separate from the issue of whether the specific decision to hire Ms. Carraway was

retaliatory.

## IV.  CONCLUSION

  For the foregoing reasons, the Court finds that a reasonable jury could not conclude that

the defendant's proffered explanation was a pretext for retaliation.  Therefore, there is no

genuine issue of material fact as to the plaintiff's retaliation claim, and the Court must grant summary judgment in favor of the defendant on that claim.[3]

      **SO ORDERED** this 30th day of April, 2013.

REGGIE B. WALTON
United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with the Memorandum Opinion.